## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

M.M.V.; A.A.M., a minor; S.L.V.; M.F.L., a minor; )
J.G.G.; E.G.G., a minor; J.G.O.; I.M.G., a minor;   )
A.O.V.; J.S.O.; M.R.A.; L.C.R., a minor;   )
A.L.V.; I.G.L, a minor; A.G.L., a minor; L.O.R.;   )
A.P.O., a minor; N.P.; R.D.P., a minor; M.D.E.;   )   Case No. 1:19-cv-2773
A.G.D., a minor; M.M.B.; N.M.M., a minor;   )
D.C.V.; S.V.C., a minor; L.A.C.; B.A.G., a minor;   )
M.G.V.; A.R.G., a minor; R.P.F.; J.F.P., a minor;   )   **COMPLAINT FOR**
S.T.T.; E.T.T., a minor; R.G.R.; B.B.G., a minor;   )   **DECLARATORY AND**
D.B.G., a minor; J.M.R.; C.G.M., a minor; M.R.A.; )   **INJUNCTIVE RELIEF**
V.A.R., a minor; H.M.M.; T.A.M., a minor; J.S.M., )
D.M.S., a minor; Y.U.; F.G.U., a minor; I.F.L.;   )
R.F.L., a minor; R.C.C.; D.L.C., a minor; N.M.L.;   )
A.R.M., a minor; M.C.D.; E.E.C., a minor; Y.O.T.;   )
D.L.O., a minor; V.L.O., a minor; M.A.A.; A.R.A.,   )
a minor; C.A.A., a minor; M.C.M; S.M.C., a minor; )
I.A.D.; C.L.A.; a minor; C.C.N.; B.S.C., a minor;   )
C.P.G.; M.B.P., a minor; L.P.E.; C.C.P., a minor;   )
D.C.P., a minor; L.H.H.; Y.F.H., a minor; A.A.T.;   )
C.A.T., a minor; V.O.V.; E.H.O., a minor; I.H.O., a )
minor; W.P.R.; J.C.P., a minor; H.C.P., a minor;   )
D.M.G.; N.E.M, a minor; A.B.C.; E.C.B.; a minor;   )
P.A.; I.A., a minor; G.A.Q.; N.A.Q., a minor;   )
A.A.Q., a minor; S.G.H.; A.G.H., a minor; M.S.M.; )
C.C.S., a minor; I.S.R.; J.A.S., a minor; J.S.P.;   )
M.A.S., a minor; N.C.A.; M.P.C., a minor; J.L.C., a )
minor; M.A.M.; G.M.A., a minor; D.V.R.; A.V.R.,   )
a minor; D.S.P.; V.V.P., a minor; D.G.A.; E.P.G., a )
minor; M.P.G., a minor; K.P.P.; M.P.P., a minor;   )
I.P.P., a minor; M.G.P.; M.U.G., a minor; J.A.L., a )
minor; F.G.; I.G., a minor; J.T.; Y.J.T., a minor;   )
M.V.C.; E..P.V., a minor; K.N.E; and E.A.N., a   )
minor; M.H.; J.M.H., a minor.   )
                Plaintiffs,   )
                              )
v.                            )
                              )
WILLIAM P. BARR, Attorney General of the   )

United States;  JAMES MCHENRY, Director,       )
Executive Office for Immigration Review; KEVIN )
K. MCALEENAN, Acting Secretary, United States )
Department of Homeland Security; MARK          )
MORGAN, Acting Commissioner, United States    )
Customs and Border Protection; MATTHEW T.     )          JURY TRIAL DEMAND
ALBENCE, Acting Director, United States         )
Immigration and Customs Enforcement;           )
KENNETH T. CUCCINELLI, Purported Acting       )
Director, United States Citizenship and Immigration )
Services; and ANDREW DAVIDSON, Acting        )
USCIS Asylum Division Chief,                    )
                                               )
Defendants.                                    )

## INTRODUCTION

1.      On July 16, 2019, the Administration published new and immediately effective "Asylum Eligibility and Procedural Modifications." 84 FR 33829. The legality of the July 16, 2019 regulation is currently at issue in separate litigation.[1] However, subsequent to that announcement, Defendants have eviscerated the "credible fear" process and have implemented ever-shifting directives, guidance and procedures that place parents and children in immigration detention at risk of wrongful deportation, persecution, and death.

2.      Upon reason and belief, since July 16, 2019 the credible fear passage rates at the South Texas Family Residential Center in Dilley, Texas—the largest family detention center in the United States with a bed and crib capacity of 2,400 for asylum seeking mothers and children—have diminished from approximately 97% of credible fear applicants, to fewer than 10% of applicants.

---

[1] *See Barr v. East Bay Sanctuary Covenant*, 588 U.S. ___ (Sept. 11, 2019).

3.      On information and belief, since July 16, 2019, the Defendants have implemented new regulations, directives, guidance and/or procedures concerning the evaluation of "credible fear" in people seeking protection from persecution and torture.

4.      On information and belief, said regulations, directives, guidance and/or procedures are written and have not been made public; however, each of the Plaintiffs have been subjected to written decisions that confirm said changes concerning the evaluation of "credible fear." Presumably, written guidance has been disseminated by the Defendants to their agents and employees conducting these "credible fear" evaluations. As a result of these new regulations, directives, guidance and/or procedures, the immigration authorities summarily rejected Plaintiffs' claims of fear.

5.      Plaintiffs challenge the new regulations, directives, guidance and/or procedures concerning the evaluation of "credible fear,"[2] and seek declaratory and injunctive relief finding the application of new credible fear standard(s) to them unlawful, barring further application of such policies and procedures to them, and requiring the government Defendants to reprocess their fear claims under the prior existing and established policies, directives, guidance and procedures.

6.      DHS failed to follow appropriate notice and comment requirements, and in addition, the new regulations, directives, guidance and/or procedures concerning the evaluation of "credible fear" are arbitrary, capricious and contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2).

---

[2] This Complaint does *not* challenge the legality of 84 FR 33829, which is being addressed in other litigation. Instead, this Complaint challenges the legality of the Defendants' additional regulations and directives created as a result of 84 FR 33829 to modify the credible fear review process.

## JURISDICTION

7.      This case arises under the United States Constitution; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. and its implementing regulations; and the Convention Against Torture ("CAT"), *see* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

8.      The Court has jurisdiction under 8 U.S.C. § 1252(e)(3).  Section 1252(e)(3) is a provision of the INA that provides exclusive jurisdiction in the United States District Court for the District of Columbia over systemic challenges to "the validity of the [expedited removal] system," including regulations and "written" policies regarding expedited removal.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction with a waiver of sovereign immunity pursuant to the Administrative Procedure Act, 5 U.S.C. §701 et seq.); and 28 U.S.C. § 1346 (United States as defendant).  Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

9.      8 U.S.C. § 1252(e)(3)(B) requires that suit be brought within sixty days of the date of implementation of "the challenged section, regulation, directive, guideline, or procedure." The policies in question arose as a result of the Department of Homeland Security's rule issued on July 16, 2019. 84 FR 33829. On information and belief, guidance on credible fear adjudication was issued by the Attorney General on or after this date. Sixty days elapsed on Saturday, September 14, 2019.  However, as per F.R.C.P. 6(a)(1)(C), because the last day of the sixty-day time period was a Saturday, the time period for filing to challenge the regulation

extended to "the next day that is not a Saturday, Sunday, or legal holiday" - Monday, September 16, 2019. Plaintiffs' challenge to all subsequent directives, guidelines and procedures is thus also timely.

## VENUE

10.     Venue is proper in this District because 8 U.S.C. § 1252(e)(3)(A) requires that all 8 U.S.C. § 1252(e)(3) actions be brought in the United States District Court for the District of Columbia.

11.     Venue in the District of Columbia is further proper pursuant to 28 U.S.C. § 1391(e), as the location where the government Defendants reside and where a substantial part of the events giving rise to the claims occurred.

## PARTIES

12.     Plaintiffs are mothers and children detained at the South Texas Texas Family Residential Center who have been issued negative credible fear determinations.

13.     Plaintiffs M.M.V. and her minor son A.A.M. are Salvadoran nationals who seek protection from persecution and torture in the United States. M.M.V. and A.A.M. were placed in credible fear proceedings on or around August 22, 2019 attended their initial credible fear interview on August 29, 2019 and were served with negative credible fear determinations on August 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

14.     Plaintiffs S.L.V. and her minor daughter M.F.L. are Salvadoran nationals who seek protection from persecution and torture in the United States. S.L.V. and M.F.L. were placed in credible fear proceedings on or around August 22, 2019 attended their initial credible fear

interview on August 29, 2019 and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

15.    Plaintiffs J.G.G. and her minor daughter E.G.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. J.G.G. and E.G.G. were placed in credible fear proceedings on or around August 24, 2019 attended their initial credible fear interview on August 29, 2019 and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

16.    Plaintiffs J.G.O. and her minor son I.M.G. are Honduran nationals who seek protection from persecution and torture in the United States. J.G.O. and I.M.G. were placed in credible fear proceedings on or around August 24, 2019 attended their initial credible fear interview on August 29, 2019 and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

17.    Plaintiffs A.O.V. and her minor son J.S.O. are Honduran nationals who seek protection from persecution and torture in the United States. A.O.V.. and J.S.O. were placed in credible fear proceedings on or around August 25, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

18.     Plaintiffs M.R.A. and her minor daughter L.C.R. are Honduran nationals who seek protection from persecution and torture in the United States. M.R.A. and L.C.R. were placed in credible fear proceedings on or around August 28, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

19.     Plaintiffs A.L.V. and her minor sons I.G.L. and A.G.L. are Honduran nationals who seek protection from persecution and torture in the United States. A.L.V., I.G.L., and A.G.L. were placed in credible fear proceedings on or around August 28, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

20.     Plaintiffs L.O.R. and her minor son A.P.O. are Honduran nationals who seek protection from persecution and torture in the United States. L.O.R. and A.P.O. were placed in credible fear proceedings on or around August 16, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

21.     Plaintiffs N.P. and her minor daughter R.D.P. are Honduran nationals who seek protection from persecution and torture in the United States. N.P. and R.D.P. were placed in credible fear proceedings on or around August 16, 2019 attended their initial credible fear interview on August 27, 2019 and were served with negative credible fear determinations on

August 29, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

22.     Plaintiffs M.D.E. and her minor son A.G.D. are Salvadoran nationals who seek protection from persecution and torture in the United States. M.D.E. and A.G.D. were placed in credible fear proceedings on or around August 21, 2019 attended their initial credible fear interview on August 29, 2019 and were served with negative credible fear determinations on August 29, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

23.     Plaintiffs M.M.B. and her minor daughter N.M.M. are Nicaraguan nationals who seek protection from persecution and torture in the United States. M.M.B. and N.M.M. were placed in credible fear proceedings on or around August 21, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on August 31, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

24.     Plaintiffs D.C.V. and her minor son S.V.C. are Guatemalan nationals who seek protection from persecution and torture in the United States. D.C.V. and S.V.C. were placed in credible fear proceedings on or around August 22, 2019 attended their initial credible fear interview on August 27, 2019 and were served with negative credible fear determinations on August 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

25.     Plaintiffs L.A.C. and her minor child B.A.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear

proceedings on or around August 20, 2019, attended their initial credible fear interview on August 23, 2019, and were served with negative credible fear determinations on August 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

26.     Plaintiffs M.G.V. and her minor child A.R.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

27.     Plaintiffs R.P.F. and her minor child J.F.P. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 26, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

28.     Plaintiffs S.T.T. and her minor child E.T.T. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 27, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

29.     Plaintiffs R.G.R. and her minor children B.B.G. and D.B.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations

on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

30.     Plaintiffs J.M.R. and her minor child C.G.M. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 20, 2019, attended their initial credible fear interview on August 27, 2019, and were served with negative credible fear determinations on August 29, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

31.     Plaintiffs M.C.M. and her minor daughter S.M.C. are Honduran nationals who seek protection from persecution and torture in the United States. M.C.M. and S.M.C. were placed in credible fear proceedings on or around August 26, 2019 attended their initial credible fear interview on September 2, 2019 and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

32.     Plaintiffs P.A. and her minor daughter I.A. are Romanian nationals who seek protection from persecution and torture in the United States. P.A. and I.A. were placed in credible fear proceedings on or around August 31, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

33.     Plaintiffs G.A.Q. and her minor son N.A.Q. are Salvadoran nationals who seek protection from persecution and torture in the United States. G.A.Q. and N.A.Q. were placed in credible fear proceedings on or around September 4, 2019 attended their initial credible fear

interview on September 5, 2019 and were served with negative credible fear determinations on September 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

34.     Plaintiffs S.G.H. and her minor child A.G.H. are Salvadoran nationals who seek protection from persecution and torture in the United States. S.G.G.H. and A.G.H. were placed in credible fear proceedings on or around August 30, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

35.     Plaintiffs M.S.M. and her minor daughter C.C.A. are Honduran nationals who seek protection from persecution and torture in the United States. M.S.M. and C.C.A. were placed in credible fear proceedings on or around August 27, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

36.     Plaintiffs I.S.R. and her minor son J.A.S. are Honduran nationals who seek protection from persecution and torture in the United States. I.S.R. and J.A.S. were placed in credible fear proceedings on or around August 16, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

37.     Plaintiffs J.S.P. and her minor son M.A.S. are Honduran nationals who seek protection from persecution and torture in the United States. J.S.P. and M.A.S. were placed in credible fear proceedings on or around August 16, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

38.     Plaintiffs N.C.A. and her minor children M.P.C. and J.L.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 27, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

39.     Plaintiffs M.A.M. and her minor daughter G.M.A. are Honduran nationals who seek protection from persecution and torture in the United States. M.A.M. and G.M.A. were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

40.     Plaintiffs D.V.R. and her minor son A.V.R. are Honduran nationals who seek protection from persecution and torture in the United States. D.V.R. and A.V.R. were placed in credible fear proceedings on or around August 22, 2019 attended their initial credible fear interview on August 29, 2019 and were served with negative credible fear determinations on

September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

41.     Child J.A.L. is a Guatemalan national who entered the United States accompanied by his mother, who was placed in reasonable fear proceedings. J.A.L. was placed in credible fear proceedings on or around August 30, 2019 attended an initial credible fear interview on September 10, 2019 and was served with a negative credible fear determination on September 12, 2019.

42.     Plaintiffs D.S.P. and her minor son V.V.P. are Salvadoran nationals who seek protection from persecution and torture in the United States. D.V.S.P. and V.M.V.P. were placed in credible fear proceedings on or around August 28, 2019 attended their initial credible fear interview on September 10, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

43.     Plaintiffs D.G.A. and her minor children M.P.G. and E.P.G. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 4, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

44.     Plaintiffs K.P.P. and her minor children I.P.P. and M.P.P. are Ecuadorean nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around September 9, 2019 attended their initial credible

13

fear interview on September 12, 2019 and were served with negative credible fear determinations on September 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

45.     Plaintiffs M.G.P. and her minor daughter M.U.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. M.G.P. and M.U.G. were placed in credible fear proceedings on or around September 7, 2019 attended their initial credible fear interview on September 11, 2019 and were served with negative credible fear determinations on September 13, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

46.     Plaintiffs M.V.C. and her minor son E.P.V. are Guatemalan nationals who seek protection from persecution and torture in the United States. M.V.C. and E.P.V. were placed in credible fear proceedings on or around August 22, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 16, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

47.     Plaintiffs K.N.E. and her minor son E.A.N. are Honduran nationals who seek protection from persecution and torture in the United States. K.N.E. and E.A.N. were placed in credible fear proceedings on or around September 8, 2019 attended their initial credible fear interview on September 12, 2019 and were served with negative credible fear determinations on September 16, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

48.     Plaintiffs F.G. and her minor child I.G. are Romanian nationals who seek protection from persecution and torture in the United States. F.G. and I.G. were placed in credible fear proceedings on or around September 4, 2019 attended their initial credible fear interview on September 10, 2019 and were served with negative credible fear determinations on September 16, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

49.     Plaintiffs J.B.T. and her minor daughter Y.J.T. are Indian nationals who seek protection from persecution and torture in the United States. J.B.T. and Y.J.T. were placed in credible fear proceedings on or around August 16, 2019 attended their initial credible fear interview on August 23, 2019 and were served with negative credible fear determinations on August 27, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

50.     Plaintiffs I.A.D. and her minor daughter C.L.A. are Ecuadorian nationals who seek protection from persecution and torture in the United States. I.A.D. and C.L.A. were placed in credible fear proceedings on or around August 24, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on September 4, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

51.     Plaintiffs C.C.N. and her minor son B.S.C. are Salvadoran nationals who seek protection from persecution and torture in the United States. C.C.N. and B.S.C. were placed in credible fear proceedings on or around August 27, 2019 attended their initial credible fear interview on September 4, 2019 and were served with negative credible fear determinations on

September 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

52.     Plaintiffs C.P.G. and her minor son M.B.P. are Guatemalan nationals who seek protection from persecution and torture in the United States. C.P.G. and M.B.P. were placed in credible fear proceedings on or around August 20, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on September 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

53.     Plaintiffs L.P.E. and her minor sons C.C.P. and D.C.P. are Honduran nationals who seek protection from persecution and torture in the United States. L.P.E, C.C.P., and D.C.P. were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 10, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

54.     Plaintiffs L.H.H. and her minor daughter Y.F.H. are Honduran nationals who seek protection from persecution and torture in the United States. L.H.H. and Y.F.H. were placed in credible fear proceedings on or around August 25, 2019 attended their initial credible fear interview on September 2, 2019 and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

55.     Plaintiffs A.A.T. and her minor son C.A.T. are Salvadoran nationals who seek protection from persecution and torture in the United States. A.A.T. and C.A.T. were placed in

credible fear proceedings on or around August 28, 2019 attended their initial credible fear interview on September 4, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

56.     Plaintiffs V.O.V. and her minor children E.H.O. and I.H.O. are Honduran nationals who seek protection from persecution and torture in the United States.V.O.V., E.H.O., and I.H.O. were placed in credible fear proceedings on or around August 25, 2019 attended their initial credible fear interview on September 3, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

57.     Plaintiffs W.P.R. and her minor children J.C.P. and H.C.P. are Salvadoran nationals who seek protection from persecution and torture in the United States.W.P.R., J.C.P., and H.C.P. were placed in credible fear proceedings on or around August 21, 2019 attended their initial credible fear interview on August 30, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

58.     Plaintiffs D.M.G.. and her minor daughter N.E.M.. are Honduran nationals who seek protection from persecution and torture in the United States. D.M.G. and N.E.M. were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 5, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

59.     Plaintiffs A.B.D. and her minor daughter E.C.B. are Salvadoran nationals who seek protection from persecution and torture in the United States. A.B.D. and E.C.B.. were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 4, 2019 and were served with negative credible fear determinations on September 11, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

60.     Plaintiffs M.H. and her minor son J.M.H. are Honduran nationals who seek protection from persecution and torture in the United States. M.H. and J.M.H. were placed in credible fear proceedings on or around August 29, 2019 attended their initial credible fear interview on September 4, 2019 and were served with negative credible fear determinations on September 6 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

61.     Plaintiffs M.R.A. and her minor child V.A.R. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 14, 2019, attended their initial credible fear interview on August 26, 2019, and were served with negative credible fear determinations on August 29, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

62.     Plaintiffs H.M.M. and her minor child T.A.M. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 29, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

63.     Plaintiffs J.S.M. and her minor child D.M.S. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

64.     Plaintiffs Y.U. and her minor child F.G.U. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 23, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

65.     Plaintiffs I.F.L. and her minor child R.F.L. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 24, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

66.     Plaintiffs R.C.C. and her minor child D.L.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

67.     Plaintiffs N.M.L. and her minor child A.R.M. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear

proceedings on or around August 28, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on or about September 5, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

68.     Plaintiffs M.C.D. and her minor child E.E.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 13, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on or about September 5, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

69.     Plaintiffs Y.O.T. and her minor children D.L.O. and V.L.O. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 5, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

70.     Plaintiffs M.A.A. and her minor children A.R.A. and C.A.A. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 4, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

71.     Plaintiffs M.C.M. and her minor child S.M.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 26, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

72.     Defendant William P. Barr is the Attorney General of the United States and the head of the United States Department of Justice ("DOJ"). Defendant Barr is responsible for advising the government Defendants on the lawful administration and enforcement of the immigration laws and policies, including the execution of any new policies or procedures for asylum seekers, pursuant to 8 U.S.C. § 1103. Defendant Barr has ultimate authority over the Executive Office for Immigration Review ("EOIR"), the agency within DOJ responsible for the immigration court system. He is sued in his official capacity.

73.     Defendant James McHenry is the Director of the Executive Office for Immigration Review "EOIR," the federal agency within the DOJ that includes immigration judges, the immigration courts, and the Board of Immigration Appeals ("BIA").  EOIR is responsible for conducting administrative adjudicative proceedings, including adjudicating applications for asylum, withholding of removal, and relief under the Convention Against Torture, bond redeterminations, custody redeterminations, and hearings to determine appropriate restrictions on liberty for individuals detained by ICE. He is sued in his official capacity.

74.     Defendant Kevin K. McAleenan is the Acting Secretary of the Department of Homeland Security ("DHS"), the Department of the Executive Branch of the United States government that oversees the component agencies responsible for enforcing the immigration

laws of the United States. Those component agencies include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS"). Defendant McAleenan directs and is responsible for the administration and enforcement of the immigration laws in the United States. He is sued in his official capacity.

75.     Defendant Matthew T. Albence is the Acting Director of ICE, the agency within DHS that is responsible for carrying out removal orders, oversees enforcement and removal operations, and is responsible for the detention of noncitizens throughout the United States. Defendant Albence has direct authority over all ICE policies, procedures and practices relating to the detention and deportation of noncitizens.  He is sued in his official capacity.

76.     Defendant Mark Morgan is the Acting Commissioner of CBP, the agency within DHS that is responsible for the initial processing and detention of noncitizens apprehended near the United States Border. In that capacity, Defendant Morgan has direct authority over all CBP policies, procedures and practices relating to the apprehension of asylum seekers. He is sued in his official capacity.

77.     Defendant Kenneth T. Cuccinelli is purportedly the Acting Director of USCIS,[3] the agency within DHS that is responsible for the adjudication of immigration benefits to noncitizens in the United States, including all functions of the Asylum Office. In that capacity, Defendant Cuccinelli has direct authority over all USCIS policies, procedures and practices relating to benefits adjudication. He is sued in his official capacity.

---

[3] A complaint for declaratory and injunctive relief was filed in federal district court for the District of Columbia on September 6, 2019, alleging that Mr. Cuccinelli does not satisfy the legal requirements to serve as the director under Federal Vacancies Reform Act ("FVRA") and the Constitution. That lawsuit is ongoing.

78.     Defendant Andrew Davidson is the Acting USCIS Asylum Division Chief, the division within USCIS that is responsible for conducting credible fear interviews, reasonable fear interviews, and asylum interviews for affirmative asylum applicants. In that capacity, Defendant Davidson has direct authority over all USCIS policies, procedures and practices relating to "credible fear" screening procedures for persons seeking protection from persecution or torture. He is sued in his official capacity.

## FACTS

**A.     U.S. Obligations to Provide Safe Harbor to Persons Fearing Persecution or Torture**

79.     The current asylum system was enacted in 1980, as part of the Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102, and was intended to bring U.S. law into conformity with our obligations under the United Nations Convention Relating to the Status of refugees and 1967 United Nations Protocol Relating to the Status of Refugees.  Consistent with international law, the definition of "refugee" does not require a showing of *certain* harm.  Instead, individuals can establish eligibility for asylum based on a "well-founded fear of persecution."  The Supreme Court has explained that a showing of a 1 in 10 chance of persecution is sufficient to satisfy that standard.  *See INS v. Cardozo-Fonseca*, 480 U.S. 421, 430, 440 (1987).

80.     Defendants purport to have exercised discretion in constructing the new July 16, 2019 regulation to bar Plaintiffs from applying for asylum pursuant to 8 U.S.C. § 1158. However, even if Plaintiffs are barred from asylum relief as a matter of discretion (which they do not concede), the Defendants must still comply with the non-refoulement obligations of the United States (withholding of removal and relief under the Convention Against Torture).

81.     The principle of non-refoulement was first articulated in Article 33 of the 1951

Convention Relating to the Status of Refugees ("Refugee Convention") as follows:

> No Contracting State shall expel or return (refouler) a refugee in any manner whatsoever
> to the frontiers of territories where his [or her] life or freedom would be threatened on
> account of his [or her] race, religion, nationality, membership of a particular social group
> or political opinion.

82.     The Defendants' non-refoulement obligations are found in Article 33 of the

Refugee Convention,[4] and also Article 3 of the Convention Against Torture ("CAT") and the

domestic statutes that implement these two treaties.

83.     As part of the Refugee Act of 1980, Congress enacted the withholding of removal

statute, codified at 8 U.S.C. § 1231(b)(3), to "implement the principles agreed to" in the Refugee

Convention, with the specific intent to ensure that the United States does not "expel or return"

noncitizens to any place where they face likelihood of persecution.  I.N.S. v. Aguirre-Aguirre,

526 U.S. 415, 427 (1999).  And as part of the Foreign Affairs Reform and Restructuring Act of

1999 ("FARRA"), Congress implemented Article 3 of CAT in the INA, making explicit the

prohibition against refoulement:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the
> involuntary return of any person to a country in which there are substantial grounds for
> believing the person would be in danger of being subjected to torture . . . .

FARRA § 2242(a), Pub. L. No. 105-207, Div. G. Title XXI, 112 Stat. 2681 (codified at 8 U.S.C.

§ 1231 note).

---

[4] Although not a party to the 1951 Refugee Convention, the United States adopted the 1967
Protocol Relating to the Status of Refugees, which incorporates the Refugee Convention's
non-refoulement prohibition.  See 1967 Protocol Relating to the Status of Refugees, art. 1(1) &
7(1) (stating that signatories "undertake to apply articles 2 to 34 inclusive of the [Refugee]
Convention" without reservation).

84.     Therefore, as adopted and statutorily codified, the non-refoulement guarantees in both the Refugee Convention and CAT provide procedural safeguards that prohibit removal or return of non-citizens to countries where their life or liberty may be threatened.  *See generally I.N.S. v. Stevic*, 467 U.S. 408, 426 (1984) (recognizing non-citizens' statutory "entitlement" to withholding under § 1231(b)(3)); *Khouzam v. Attorney General*, 549 F.3d 235, 256–57 (3d Cir. 2008) ("[T]he basic dictates of due process must be met . . . where, as here, mandatory statutory relief [is] at issue.").

**B.  The Pre-July 16, 2019 Expedited Removal and Credible Fear Process**

85.     Prior to 1996, noncitizens were generally entitled to a full hearing in immigration court before they could be removed, whether they were seeking admission at the border or had already entered the country.  They were also entitled to administrative appellate review before the BIA and judicial review in federal court.

86.     In 1996, Congress enacted legislation that established a highly truncated removal mechanism called "expedited removal" that could be used for certain noncitizens seeking admission. Noncitizens subject to expedited removal are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

87.     Congress, however, was careful to carve out an exception for individuals who express a fear of return to their home countries.  *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30(f).

88.     If an individual indicates a fear of returning to his or her home country or intention to apply for asylum, the immigration officer must refer the individual for an interview with an asylum officer, called a "credible fear" interview.  8 U.S.C. §§ 1225(b)(1)(A)(ii),

1225(b)(1)(B); 8 C.F.R. § 235.3(b)(4); *see also* 8 C.F.R. § 208.30.  If the noncitizen is referred to

an asylum officer, the officer conducts (with the assistance of an interpreter if necessary) a

rudimentary "credible fear interview" which is designed "to elicit all relevant and useful

information bearing on whether the applicant has a credible fear of persecution or torture."  8

C.F.R. § 208.30(d).  The asylum officer must "conduct the interview in a non-adversarial

manner."  *Id.*  Further, in determining whether credible fear is satisfied, the officer must

"consider whether the alien's case presents novel or unique issues that merit consideration in a

full hearing before an immigration judge."  8 C.F.R.  208.30(e)(4).

89.     At the conclusion of the interview, if the asylum officer makes a negative credible

fear determination, the officer must provide a written record of the determination that "shall

include . . . the officer's analysis of why, in light of [the] facts, the alien has not established a

credible fear of persecution."  8 U.S.C. § 1225(b)(1)(B)(iii)(II).

90.     Upon the individual's request, the agency must provide for prompt review of the

asylum officer's negative credible fear determination by an immigration judge.  8 U.S.C. §

1225(b)(1)(B)(iii)(III); *see also* 8 C.F.R. § 208.30(g)(1). ["shall include an opportunity to be

heard and questioned by the immigration judge," but "shall be concluded as expeditiously as

possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days."

Id. § 1225(b)(1)(B)(iii)(II).]  In conducting that review, the immigration judge has access to

"[t]he record of the negative credible fear determination."  8 C.F.R. § 208.30(g)(2).  The

immigration judge's decision is administratively "final and may not be appealed."  8 C.F.R. §

1208.30(g)(2)(iv)(A).  Noncitizens undergoing credible fear review before immigration judges

are still in expedited removal proceedings, and do not get the full panoply of rights available in regular immigration court removal proceedings.

91.     Noncitizens who receive a negative credible fear determination are issued an expedited removal order, which comes with significant consequences, beyond removal itself. Noncitizens who are removed pursuant to expedited removal orders are subject to a five-year bar on admission to the United States.  8 U.S.C. § 1182(a)(9)(A)(i).

92.     To ultimately prevail on an asylum claim the applicant need only establish that there is a 10% chance that he or she will be persecuted on account of one of the five protected grounds for asylum.  To prevail at a credible fear interview, however, the applicant need only show a "significant possibility" of asylum eligibility—i.e., a "significant possibility" of a 1 in 10 chance of persecution, or a *fraction* of 10%.  *See* 8 U.S.C. §1225(b)(1)(B)(v) (defining credible fear as "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum[.]").

93.     If a noncitizen is found by the asylum officer to have a "credible fear," the individual is taken out of the expedited removal process and referred for a regular removal hearing before an immigration judge.  At that hearing, they will have the opportunity to develop a full record before the judge, and they may appeal an adverse decision to the BIA and federal court of appeals.  8 C.F.R. § 208.30(f); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

94.     The reason for the low threshold at the credible fear stage is straightforward.  An asylum claim is highly fact-specific and often will take significant time, resources and expertise to develop, including expert testimony and extensive evidence about country conditions.  It may

also involve complex legal questions.  In the expedited removal system, however, abbreviated credible fear proceedings occur within days of arrival, with little or no preparation or assistance by counsel, little to no knowledge of asylum law by the applicant, and no opportunity to examine witnesses or gather evidence, while the individual is detained.  It is thus highly unrealistic for applicants in the expedited removal system to present a fully developed asylum claim. Accordingly, Congress established a low threshold at the credible fear stage to ensure that potentially valid asylum claims could be developed properly in a full trial-type hearing before an immigration judge.  Congress viewed this credible fear process as an essential safeguard to ensure bona fide asylum seekers would not be summarily removed.

95.     The threshold safeguards in place for applicants seeking protection from persecution or torture have now been eliminated. As a result of Defendant's changes in policies, practices, directives and guidance, no longer can a parent or child demonstrate a significant likelihood of success in asylum proceedings – now that mother and child carry a much higher burden. Such a high burden will result in many applicants, including vulnerable children, being returned to persecution or torture.

**C.     Current Expedited Removal, Credible Fear and Reasonable Fear Process**

96.     On July 16, 2019, the government Defendants published a regulation that purports to ban asylum applications from any asylum seekers who passed through any third country on the way to the United States without applying for protection (the "Asylum Ban"). That policy is not challenged here.[5] Rather, subsequent to the new Asylum Ban, the government Defendants have radically changed their handling of procedures to evaluate migrants in expedited removal

---

[5] *Barr v. East Bay Sanctuary Covenant*, 588 U.S. ___ (Sept. 11, 2019), is pending class action litigation challenging the Asylum Ban.

for asylum, withholding of removal and relief under the Convention Against Torture. These changes in procedure and policy are chaotic, and do not comport with existing federal law, regulations and agency policies in violation of the APA and the *Accardi* doctrine.

97.     In the new regulations, if the government determines during initial screening that an alien subject to expedited removal is barred from asylum eligibility, the alien is issued a negative credible fear determination.   The alien is then placed in proceedings to determine if a *reasonable* fear of persecution exists for withholding of removal or Convention Against Torture (CAT) protection.   If the alien does not establish a reasonable fear of persecution during the interview, the asylum office issues a written notice of decision, subject to immigration judge review under the higher standard of reasonable fear.

98.     While the regulation purports to not change the credible fear standard, it states that aliens subject to the asylum bar are categorically unable to establish a significant possibility of asylum eligibility, and prevents further screening from taking place under the credible fear standard.

**D.     Impact of the New Process on the Plaintiffs**

99.     Since July 16, 2019, Plaintiffs have been subjected to a series of policy changes at the South Texas Family Residential Center, located in Dilley, Texas. Defendants have unilaterally eliminated procedural protections proscribed to each Plaintiff by statute and regulation in order to frustrate their ability to successfully seek protection from persecution and torture in the United States.

100.    In the aggregate, Defendants' new regulation and changes to directives, guidelines, policies and procedures eliminate access to safe harbor for families seeking

protection from persecution and torture. While some of the policy changes implemented by the Defendants flow from the application of the new "Asylum Ban," other recent changes are independent, yet serve the same purpose: to prevent access to legal protections in the United States.  Upon reason and belief, since July 16, 2019 the credible fear passage rates at the South Texas Family Residential Center have diminished from approximately 97% of credible fear applicants, to fewer than 10% of applicants.

101.    Prior to the initiation of their credible fear screenings, Plaintiffs (who are wholly comprised of mothers and their children) completed dangerous and arduous journeys to the United States, subsequent to incidents of sexual and physical violence, or threats of violence, that triggered their flights from their home countries. As a consequence of this past trauma, many of the Plaintiffs suffer from symptoms of post-traumatic stress disorder ("PTSD"), anxiety, and depression.

102.    After completing the journey to the United States – which lasted for more than a month for some Plaintiffs – all of the Plaintiffs were apprehended and placed in CBP custody, where they remained for days in cages and/or cement cells, without access to privacy, showers, beds, telephones, pillows, hot meals, or adequate medical attention.

103.    Against this backdrop, while in CBP custody, Plaintiffs were placed in proceedings under Section 235 of the INA and issued an Order of Expedited Removal.

104.    Despite the fact that there has been no change to the Defendants' treaty or statutory obligations, in the last 60 days, the Defendants have issued a series of ever-changing regulations, directives, guidelines, policies and procedures and have applied these constantly shifting standards in the Plaintiffs' credible fear screenings.

105.    The chaotic and changing credible fear paradigm has wrought havoc on the Plaintiffs' credible fear process. The legal standard applied to the Plaintiffs' cases has changed unexpectedly and without meaningful explanation to the Plaintiffs throughout each part of their process. For many Plaintiffs, the law that dictated the outcome of their case was different when they were placed into proceedings, different at the time of their first interview, different when they had a second interview, and different at the time of their final follow-up interview. And it will be different yet again, when they present in front of the immigration judge to seek review of their negative credible fear determinations.

106.    The dramatic instability in the credible fear screening process since July 16, 2019 has prejudiced Plaintiffs, more than half of whom are children. Since their proceedings began, Plaintiffs have experienced a constant state of confusion because they have been denied the opportunity to understand the basis on which their fear would be evaluated. Plaintiffs have a right to a legal orientation in advance of their credible fear interviews. The Defendants' failure to appropriately and meaningfully orient the Plaintiffs in advance of their interview – and throughout the interview in accordance with the changing process and standard to which they were subjected – has effectively denied them their right to be oriented to the credible fear process, as established in 8 C.F.R § 235.3(b)(4)(i). Defendants' "*Failure to Meaningfully Orient Proper Legal Standard Policy*"[6] has denied Plaintiffs their right to understand and participate in their proceedings and to meaningfully understand what laws are applicable to them in the threshold screening process.

---

[6] In the absence of official policy directive names (prior to the discovery process), this complaint presents alternative policy names for the purposes of clarity.

107.    Defendants have also implemented a new policy of proceeding with fear interviews absent necessary training and direction for the asylum officers charged with conducting them. Upon information and belief, Defendants have conspired to limit the information they put forth in writing, impeding necessary training opportunities and direction for front-line adjudicators. This policy, the "*Proceed Before Training and Written Guidance Policy*," has impacted the integrity and consistency of credible fear interviews conducted by the asylum office. Each variation of the changing policies and practices has been implemented inconsistently and haphazardly to the detriment of each Plaintiff. Asylum officers did not receive training relevant to the proper application of the Asylum Ban, including training regarding the trafficking exception and how to assess whether or not the Asylum Ban applies to a given credible fear applicant, in advance of Plaintiffs credible fear interviews. During some interviews, supervisors interrupted the interview after an interview had already begun to announce in English to the officer, "apply the bar," subsequent to discovery of a new court order.

108.    Defendants' "*Eliminate Supervisory Review and Concurrence of Credible Fear Determination Directive*" has compounded Defendants' "Proceed Before Training and Written Guidance Directive". Subsequent to July 16, 2019 the asylum office has eliminated supervisory review of credible fear determinations in violation of 8 C.F.R. §§ 208.30(e)(7), 235.3(b)(2), (b)(7).    Based upon this new directive, interviewing asylum officers unilaterally denied Plaintiffs' credible fear claim, and announced their determination, prior to completion of supervisory asylum officer review and concurrence.

109.    Many Plaintiffs were interviewed not once, but three or more times on three separate dates, over a timespan of several weeks or more. The delay in final adjudication of each

Plaintiffs' claims prejudiced each Plaintiff's ability to recall what was discussed at their prior interview, and to participate meaningfully in their interview. This impacted Plaintiffs' ability to access counsel during each separate meeting with the asylum office, which occurred without sufficient or any advance written notice.

110.    A credible fear interview is psychologically demanding and difficult. It requires the asylum seeker to describe the circumstances that gave rise to their fear of persecution. Asylum seekers must present deeply personal, stigmatizing, and traumatizing details. Frequently, these details have never been relayed to another person, and their disclosure brings the asylum-seeker shame, fear, and/or renewed trauma.  Credible fear applicants must also answer complicated and nuanced follow-up questions. Extending the interview process over a long period of time impacted the Plaintiffs by prolonging their detention in government custody, which exacerbated the negative consequences they have experienced as a result of their ongoing detention.

111.    Being subjected to repeated interviews, without thoughtful and accessible explanation through the statutorily required orientation process, limited Plaintiffs' meaningful participation in their credible fear proceeding.

112.    The application of Asylum Ban has impeded Plaintiffs' right to a non-adversarial interview, in accordance with the new "*Declare a Negative Decision in the Middle of the Screening Directive*."  Subsequent to July 16, 2019 the asylum office implemented a policy of having the interviewing asylum officer announce a negative credible fear decision to the applicant, directly, in the middle of their credible fear interview. Previous to this new policy, negative decisions were never announced during an interview itself, but made subsequent to the

entirety of the interview process, after all testimony was solicited in support of the asylum-seekers claim during a non-adversarial interview. This new policy violates each Plaintiff's right to a non-adversarial interview and creates a hostile interview environment that chills the testimony of credible fear applicants. *See* 8 C.F.R. § 208.30(d). As an outcome of this policy, Plaintiffs believed at the outset of their interview that their deportation was certain. Many Plaintiffs report feeling paralyzed, overwhelmed, intimidated and confused the moment they were informed their credible fear interview was denied. Other Plaintiffs report giving up before their interview had ever truly begin, believing their case was a lost cause.

113.    Defendants have also implemented a new "*Limit Fact-Finding Relevant to a Significant Possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture Directive*." This Directive encourages asylum officers to limit questioning that solicits testimony necessary to evaluate an asylum-seeker's eligibility for asylum, withholding of removal, and protection against the Convention Against torture under the "significant possibility" standard required for credible fear proceedings. Based upon this new policy, Defendants fail to adequately evaluate whether or not an asylum-seeker merits a positive credible fear finding based upon eligibility and erroneously issue negative credible fear findings.

114.    While Defendants have stripped Plaintiffs of procedural protections required in credible fear proceedings, they have simultaneously denied Plaintiffs the benefit of mandatory procedures available to individuals seeking protection under Withholding and the CAT. The policy of subjecting Plaintiffs to a higher burden in threshold fear screening violates mandatory obligations to ensure that no applicant is returned to a country where they will be subjected to persecution or torture. Defendants have heightened the burden on Plaintiffs unlawfully, and at

the same time, have failed to provide procedural safeguards normally present in heightened fear proceedings.

115.    Individuals placed in reasonable fear proceedings under section 241 of the INA have a right to (1) advance written notice of their reasonable fear interview, (2) in-person orientation to their reasonable fear proceeding by an asylum officer at least 48 hours in advance of their interview, and (3) access to counsel during their reasonable fear proceeding. Although Plaintiffs were placed in credible fear proceedings under INA 235, Defendants' application of the procedural protections available in reasonable fear proceedings while evaluating Plaintiffs' under the heightened reasonable fear standard, or "*RFI Standard Without RFI Protections Directive*" defies the law under both credible and reasonable fear proceedings.

116.    Defendants' have also implemented a new policy directive of rejecting the most favorable case law in credible fear proceedings, when assessing an asylum-seekers eligbility for withholding of removal and relief under the Convention Against Torture. The "*Failing to Apply Most Favorable Precedent in CFI Proceedings Directive*" ignores the permanent injunction issued in *Grace v. Whitaker*, 344 F. Supp. 3d 96,  (D.D.C. 2018) which requires the asylum officer to apply the most favorable circuit court precedent in credible fear proceedings, regardless of where an asylum-seeker is detained.

117.    In addition to new directives related to the application of the Asylum Ban and applied to each individual Plaintiff, Defendants have also established three additional policies to ensure the smallest percentage of families placed in credible fear proceedings obtain positive credible fear proceedings.

118.   Upon information and belief, USCIS has implemented a "*Mandatory Concurrence Review by the Fraud Detection Unit Directive.*" This new directive requires any and all cases that have received a positive fear finding by the interviewing asylum officer, and positive fear concurrence by the supervisory asylum officer, to be reviewed by USCIS's Fraud Detection and National Security Directorate. Upon information and belief, this new procedure —which applies only to asylum-seekers slated to be issued positive credible fear findings—has resulted in mandatory rescission of the overwhelming majority of cases sent for review subsequent to a follow-up interview conducted in response to guidance provided by the Fraud Detection unit.

119.   Relatedly, the asylum office has a new policy of "*Withholding Facts Relied Upon in Issuing the Credible Fear Determination.*" The asylum officer is required to create a written record of his or her determination, including a summary of all material facts as stated by the applicant, and any additional facts relied upon by the officer, in issuing the credible fear determination. 8 CFR 208.30(e)(1). In conflict with this regulatory mandate, the asylum office now withholds critical information relied upon when issuing a negative fear determination.

120.   The asylum office has also implemented a new policy abandoning child-sensitive treatment in credible fear proceedings, including the "*Telephonic Interview Directive*" for families detained at the South Texas Family Residential Center. Since the inception of the South Texas Family Residential Center, asylum officers have conducted in-person interviews with mothers and children who are detained in Dilley, Texas. This practice allowed asylum officers to apply child-friendly procedures during the interview process, and to provide protections necessary to mothers, who are required to proceed with their credible fear interview while tasked

with caring for their child. Prior policy allowed asylum officers to ensure mothers who did not feel comfortable providing testimony in the presence of their children were able to leave their children in daycare, and to build trust and rapport with a child in-person prior to questioning the child regarding their history of persecution. Some plaintiffs were deprived necessary accommodations related to their age and status as asylum-seekers traveling in a family unit in conflict with long-standing asylum office practice.[7]

121. Plaintiffs reserve the right to amend this Complaint to rename the above directives as the official designations become known through discovery, and to add other unlawful directives as they become known through the discovery process.

122. The *Accardi* doctrine stands for the unremarkable proposition that an agency must abide by its own regulations. Thus, an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.

**D.    Defendants' Public Statements Regarding Their Goal to Undermine Asylum Protections**

123. Rather than comply with our asylum laws, Defendants have been open about their desire to weaken asylum protections, particularly for vulnerable immigrant children and families from Central America.  Indeed, Defendants have repeatedly expressed their hostility towards the asylum claims of such children and families and urged higher credible fear screening standards in order to speed the removal of such individuals.  The new policies seek to advance these goals.

---

[7] USCIS Asylum Division. Asylum Officer Basic Course: Guidelines for Children's Asylum Claims (Mar. 21, 2009).  *Available at* https://cliniclegal.org/sites/default/files/AOBTC_Lesson_29_Guidelines_for_Childrens_Asylum_Claims_0.pdf (last visited September 16, 2019).

124.    Thus, the unlawful efforts to heighten the credible fear standard evinced in the Defendants' new credible fear policies culminated from Defendants' expressed desire to change that standard.  But none of the Defendants have the power to change the credible fear standard, which can be changed only by Congress.

**E.  The New Credible Fear Policies Place Plaintiffs in Grave Danger**

125.    Under the correct legal standards, each of the Plaintiffs should have easily passed their credible fear interview or reasonable fear interview, and would have been referred for regular removal proceedings to seek asylum and other relief from removal.  Instead, because of the new credible fear policies, they were each issued a negative credible fear determination.

126.    Many other *bona fide* asylum applicants who meet the credible fear standard similarly have received and will receive negative credible fear determinations based on the new policies.

127.    Defendants' new policies are depriving Plaintiffs their right to pursue potentially meritorious claims for protection.  Indeed, immigration service providers across the country have already reported that the new credible fear policies are causing a dramatic increase in the proportion of asylum seekers who receive negative credible fear determinations.

128.    The result of these policies is that children and their mothers have been and will be sent back to countries that have been cited for their pervasive and widespread violence against women and childen, including domestic violence, rape, and beatings, and other abuse by gangs. For example, it has been widely recognized, including by the U.S. State Department in 2018, that El Salvador has one of the highest homicide rates in the world, and Amnesty International has described El Salvador as "one of the most dangerous countries to be a woman."  Numerous other

reports, including by UNHCR, have documented that gender-motivated killings and other murders of women in El Salvador, Honduras and Guatemala are commonplace, and that Central American gangs perpetrate "pervasive, pernicious, and often uncontrollable violence and disruption in the region." Human rights reports have also widely documented the systemic failures in state protection in Central American countries.

129.    Indeed, numerous migrants from Central American who were deported from the United States have suffered brutal harms, including death, after returning to their home countries. For example, one study documented that up to 83 individuals deported to Northern Triangle countries between 2014 and 2015 have been killed.

130.    Without judicial intervention the Defendants will be able to effectively rewrite the expedited removal scheme and substantive asylum law to achieve the policy goal of eliminating the ability of Central American children to seek safety in the United States.

## FIRST CLAIM FOR RELIEF
### (Refugee Act, Immigration and Nationality Act, Administrative Procedures Act)

131.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

132.    Pursuant to 8 U.S.C. § 1252(e)(3), judicial review is available before the Court regarding whether "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement [8 U.S.C. § 1252(b)] is not consistent with applicable provisions of [Subchapter II of the INA] or is otherwise in violation of law."

133.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A)

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

134.    The new policies related to expedited removal proceedings violate the INA and the Refugee Act and are arbitrary and capricious and contrary to law under the APA for multiple reasons.  Among other reasons, the new policies conflict with the definition of "refugee," *see* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A); conflict with the credible fear standard at 8 U.S.C. § 1225(b)(1)(B)(v); represent a departure from the agency's longstanding policy without an acknowledgment of or a reasoned explanation for that departure; are illogical and irrational; and deprive applicants of a meaningful opportunity to establish their potential eligibility for asylum, withholding of removal, and CAT relief pursuant to 8 U.S.C. §§ 1158(b)(1), 1225(b)(1)(B), and 1231.

135.    In determining whether an alien is eligible for protection under the Convention Against Torture, the threshold determination at an interview is whether or not the alien has demonstrated a "significant possibility that he or she is eligible for...deferral of removal under the Convention Against Torture."  8 C.F.R. §208.30(e)(3).

136.    The newly promulgated regulations have mandated that aliens deemed ineligible for asylum are to be assessed under a "reasonable possibility" threshold, rather than the lower threshold "significant possibility" requirement.

137.    Upon information and belief, this assessment is conducted without assessing whether aliens fall under exceptions to the newly promulgated regulations, such as human trafficking exceptions.  This assessment also denies aliens protections associated with reasonable

fear interviews, such as access to counsel, advance notice of their interviews, and an in-person orientation by an asylum officer.

138.    Defendants' application of the procedural protections available in reasonable fear proceedings while evaluating Plaintiffs' under the heightened reasonable fear standard, or "RFI Standard Without RFI Protections Directive" defies the law under both credible and reasonable fear proceedings.

139.    As a result, the new asylum procedures/policies are contrary to law. *See* 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF
**(Separation of Powers, Immigration and Nationality Act, Administrative Procedure Act)**

140.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

141.    The doctrine of separation of powers is embodied in the U.S. Constitution.  The Constitution establishes the paramount authority of the Judiciary to interpret the law—"to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)—and to render decisions that bind the other branches of government in our constitutional system.  The Executive Branch—like Congress—is bound by the decisions issued by the federal courts.  Respect for the controlling authority or judicial opinions and judgments is a fundamental component of the rule of law.  The new policies and regulations violate the separation of powers; violate the INA, including the credible fear standard at 8 U.S.C. § 1225(b)(1)(B)(v); and are arbitrary and capricious and contrary to law under the APA.

## THIRD CLAIM FOR RELIEF
**(Due Process Clause of the Fifth Amendment to the United States Constitution)**

142.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

143.    Plaintiffs have protected interests in applying for asylum, withholding of removal, and Convention Against Torture relief upon a showing that meets the applicable standards, and in not being removed to a country where they face serious danger and potential loss of life.

144.    Plaintiffs are entitled under the Due Process Clause to a fair hearing of their claims, and a meaningful opportunity to establish their potential eligibility for asylum and related relief from removal.

145.    The new policies and regulations have violated Plaintiffs' right to due process in numerous respects, including by foreclosing their claims regardless of their individual facts or merits; by applying an unlawful, more burdensome legal standard to Plaintiffs' claims; and by depriving them of a meaningful opportunity to establish their potential eligibility for asylum and related relief.

### FOURTH CLAIM FOR RELIEF
### (Administrative Procedure Act)

146.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

147.    The Administrative Procedure Act ("APA") requires notice and opportunity for comment prior to the promulgation of a rule. 5 U.S.C. § 553(b), (c).

148.    The government Defendants' nondiscretionary procedures for screening for threshhold credible fear as the first step in evaluatint the Plaintiffs' eligibility for asylum and related relief, as well as for determining whether an individual is more likely than not to face persecution or torture in a specific country, and thus precluded from being returned to that

country during the pendency of removal proceedings, constitutes a rule that requires notice-and-comment rulemaking.

149.    The government Defendants did not promulgate a rule or engage in notice-and-comment rulemaking before implementing their new procedures for evaluating fear for asylum, withholding of removal and relief under the Convention Against Torture.

150.    The APA requires that a substantive rule be published "no less than 30 days before its effective date." 5 U.S.C. § 553(d).

151.    The government Defendants failed to appropriately publish its new asylum, withholding and CAT fear screening procedures, and related guidance 30 days before their effective date.

## FIFTH CLAIM FOR RELIEF
### (Administrative Procedure Act)

152.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

153.    The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 702, 706(2)(A). The policies and procedures of ICE, CBP and USCIS are binding upon those agencies pursuant to the Accardi doctrine, and the APA grants the Plaintiffs the right to challenge the failure of those agencies to comply with their own rules, regulations, and guidance. *See, e.g.,  Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.C. Dist. Court 2018) (stating "[i]t has long been settled that a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated," *citing Mass. Fair Share v. Law Enf't Assistance Admin.*, 758 F.2d 708, 711, 244 U.S. App. D.C. 388 (D.C. Cir. 1985)).

154.     The *Accardi* doctrine is enforced via the mechanism of § 706(2) of the APA. *See, Damus v. Nielsen*, 313 F. Supp. 3d at 335-341; *see also, Torres v. U.S. Dep't of Homeland Sec.*, 2017 U.S. Dist. LEXIS 161406, 2017 WL 4340385, at *5-6 (S.D. Cal. Sept. 29, 2017) (holding that the failure of DHS to follow its own Operating Procedures governing  Deferred Action for Childhood Arrivals, or DACA, in terminating the plaintiff's status was properly framed as a claim that the agency's actions were 'arbitrary, capricious, and an abuse of discretion' pursuant to the APA).

155.     The government Defendants' new regulation, directives, guidance, policies and procedures are arbitrary, capricious, and contrary to law, in that they do not comport with established agency directives, policies and procedures for determining whether individuals face a "credible fear," or a likelihood of persecution or torture, and as such, they are presumptively invalid.

156.     Moreover, the government Defendants have not articulated a reasoned explanation for their decision to adopt these new procedures; have failed to consider relevant factors; have relied on factors Congress did not intend to be considered; and have offered explanations for their decision that are counter to the evidence before the agency.

### SIXTH CLAIM FOR RELIEF
**(Immigration and Nationality Act, Withholding of Removal, and
Administrative Procedure Act)**

157.     All of the foregoing allegations are repeated and realleged as if fully set forth herein.

158.     The 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees, to which the United States is party, requires that the United States not "expel or return

('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." United Nations Convention Relating to the Status of Refugees, art. 33, July 28, 1951, 189 U.N.T.S. 150; *see also* Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267.

159.    The Refugee Convention prohibits the return of individuals to countries where they would directly face persecution on a protected ground as well as to countries that would deport them to conditions of persecution.

160.    Congress has codified these prohibitions in the "withholding of removal" provision at INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), which bars the removal of an individual to a country where it is more likely than not that he or she would face persecution.

161.    Pursuant to regulation, only an immigration judge can determine whether an individual faces such a risk of persecution and is entitled to withholding of removal after full removal proceedings in immigration court. 8 C.F.R. § 1208.16(a).

162.    The new agency regulation, directives, guidance, policies and procedures regarding fear screening adopted pursuant to the Asylum Ban provide none of these safeguards to ensure the critical protection against *nonrefoulement* and therefore violates Section 1231(b)(3) and its implementing regulations.

### SEVENTH CLAIM FOR RELIEF
### (Immigration and Nationality Act, and Administrative Procedure Act)

163.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

164.    The INA provides, with certain exceptions, that "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1).

165.    The APA provides that courts "*shall . . . hold unlawful and set aside agency action*" that is "*in excess of statutory jurisdiction, authority, or limitations, or short of statutory right*." 5 U.S.C. § 706(2)(C).

166.    The APA provides that courts "*shall . . . hold unlawful and set aside agency action*" that is "*without observance of procedure required by law*." 5 U.S.C. § 706(2)(D).

167.    The following laws require access to immigration judicial review of the conditions under which noncitizens are detained or released:

    a.    19 U.S.T. 6223, art. 33 § 1 provides that the United States will not "expel or return ('*refouler*')" refugees to any country that may subject them to persecution itself, or transfer refugees to a third country that may subject them to persecution;

    b.    8 U.S.C. § 1231(b)(3) as implemented by 8 C.F.R. 1208.16(a) provides for review of *nonrefoulment* decisions by an immigration judge;

168.    Because the new procedures are "not in accordance with law" and should therefore be held unlawful and set aside under 5 U.S.C. § 706(2)(C)-(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

a) Declare the new regulation, directives, guidance, policies and procedures contrary to law;

b) Enter an order vacating the new regulation, directives, guidance, policies and procedures;

c) Enter an order enjoining Defendants from continuing to apply the new regulation, directives, guidance, policies and procedures to credible fear determinations, reasonable fear determinations, interviews, or hearings issued or conducted by asylum officers or immigration judges;

d) Enter an order staying the application of the new regulation, directives, guidance, policies and procedures to each of the Plaintiffs;

e) Enter an order enjoining Defendants from issuing and/or executing expedited removal orders with regard to the Plaintiffs;

f) Enter an order enjoining Defendants from removing the Plaintiffs without first providing each of them with a new credible fear process or reasonable fear process (as appropriate) under correct legal standards or, in the alternative, full immigration court removal proceedings pursuant to 8 U.S.C. § 1229a;

g) Enter a Temporary Restraining Order and a Preliminary Injunction maintaining the status quo by requiring the government Defendants to reprocess the Plaintiffs' fear claims under the accepted prior policies;

h) Order Defendants to pay Plaintiffs' litigation costs and reasonable attorney fees pursuant to the Equal Access to Justice Act; and

i)  Order all other relief that the Court deems just and proper to ensure that the

government Defendants act according to law.

Respectfully submitted this 16th day of September, 2019.

Respectfully Submitted,

Dated: September 16, 2019          By:   /s/ Hassan Ahmad
Hassan M. Ahmad (D.D.C Bar: MD16049)
The HMA Law Firm, PLLC
7926 Jones Branch Dr., Suite 600
McLean, VA 22102
Phone: (703) 964-0245
Fax: (703) 997-8556
E-mail: hma@hmalegal.com

Dated: September 16, 2019          By:   /s/ Bridget Cambria
* Bridget Cambria (PA Bar No. 205271)
Cambria & Kline, P.C.
532 Walnut Street
Reading, PA 19601
Phone: (484) 926-2014
Fax: (484) 926-2032
E-mail: bridget.cambria@cambriaklinelaw.com

Dated: September 16, 2019          By:   /s/Amy Maldonado
* Amy Maldonado (IL Bar No. 6256961)
Law Office of Amy Maldonado
333 Albert Avenue, Suite 610
East Lansing, MI 48823
Phone: (517) 803-2870
Fax: (888) 299-3780
E-mail: amy@amaldonadolaw.com

Dated: September 16, 2019          By:   /s/ Elora Mukherjee
* Elora Mukherjee (NY Bar No. 4427233)
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street
New York, NY 10027
Phone:  (212) 854-2603

48

Fax:  (212) 854-3554
E-mail:  emukherjee@law.columbia.edu

Dated: September 16, 2019            By:   /s/ Humza Kazmi
                                          * Humza Kazmi (DC Bar No. 1032240)
                                          The HMA Law Firm, PLLC
                                          7926 Jones Branch Dr., Suite 600
                                          McLean, VA 22102
                                          Phone: (703) 964-0245
                                          Fax: (703) 997-8556
                                          E-mail: hak@hmalegal.com


                                          ATTORNEYS FOR THE PLAINTIFFS

                                          *Motion pro hac vice forthcoming