**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| M.M.V., *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, in his official capacity as Attorney General of the United States, *et al.*,<br><br>               Defendants. | Civil Action No. 19-2773 (ABJ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs in this action mothers and children seeking asylum in the United States. Plaintiffs ask this Court to issue a Temporary Restraining Order ("TRO") barring the government from removing Plaintiffs from the United States in light of Plaintiffs' collective challenge to the governments' "regulations, directives, guidance and/or procedures [that] are written [but] have not been made public" and that, according the Plaintiffs, have unlawfully altered the credible-fear determination process. *See* Compl. (ECF No. 1) ¶¶ 4-6. Specifically, Plaintiffs allege that these regulatory actions have been implemented following the issuance on July 16, 2019, of a rule imposing a new restriction on asylum eligibility, Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019) ("the July 16 Rule"). *See* Compl. ¶ 1.

Plaintiffs' TRO motion should be denied because this Court lacks jurisdiction to grant the equitable relief that Plaintiffs seek. As an initial matter, only a subset of Plaintiffs have received final removal orders and thus, are subject to removal from the United States. The remaining Plaintiffs are currently awaiting review of their negative credible fear determination by

immigration judge ("IJ") or have received a Notice to Appear ("NTA") before an IJ and are not subject to removal until those proceedings conclude.  Thus, interim injunctive relief for the remaining group of Plaintiffs should not issue pending the completion of such review.

For those Plaintiffs with final removal orders, Plaintiffs' stay request improperly asks this Court to enjoin the effectuation of those orders and review their negative credible-fear determinations.  The Immigration and Nationality Act ("INA") bars this Court from doing either of those things.  This Court is barred under 8 U.S.C. § 1252(a)(2)(A) from reviewing Plaintiffs' negative credible-fear determinations.  And two separate statutory provisions—8 U.S.C. §§ 1252(e) and 1252(g)—each independently bar this Court from granting a stay of removal.  Accordingly, the Court should deny the motion on this basis alone.

Even without those threshold jurisdictional obstacles, Plaintiffs could not satisfy the requirements to obtain a stay of removal.  Plaintiffs are not likely to prevail on the merits as they have failed to identify any policy that is inconsistent with the INA or its implementing regulations.  Further, their motion relies primarily on conclusory assertions regarding alleged policies that Plaintiffs have not identified with sufficient particularity.  Further, Plaintiffs are unable to show that they are likely to be irreparably harmed where they have received credible fear reviews by asylum officers and have not been found to have a credible fear of persecution or torture and had those determinations reviewed de novo by an IJ.  Finally, the balance of the equities tips in the government's favor.  Plaintiffs' motion should therefore be denied and the administrative stay should be lifted.

## I.     Procedural Background.

On September 16, 2019, Plaintiffs filed the complaint in this action.  Soon after Plaintiffs filed their complaint, Defendants filed a notice requesting the Court to categorize this action as

related to two pending cases directly challenging the legality of the July 16 Rule —*Capital Area Immigrants' Rights Coalition v. Trump*, Civil Action No. 19-2117 (TJK) (D.D.C.), and *I.A. et al. v. Barr*, Civil Action No. 19-2530 (TJK) (D.D.C.).  *See* ECF No. 3; ECF No. 4.  Plaintiffs disputed the designation of this case as related.  *See* ECF No. 5.

In an Order dated September 25, 2019, the Court concluded that Defendants had failed to demonstrate that the instant case was related to those challenging the July 16 Rule.  *See* ECF No. 15 at 3.  The Court considered the question to be a "close call" but highlighted the fact that Plaintiffs' Complaint expressly stated that they do not challenge the July 16 Rule.  *Id.* at 2 (citing Compl. ¶¶ 5 n.2, 96).  Accordingly, this case was sent to the Court's Calendar and Case Management Committee for random assignment.  *Id.* at 4.

In a subsequent Order dated September 25, 2019, the Court issued a temporary stay to preserve the status quo in this case.  *See* ECF No. 16.  The Court noted that the Order was "not a decision on the merits."  *Id.* at 1 n.1.  Specifically, the Court granted Plaintiffs' TRO motion that prevents their deportation pending "(1) the reassignment of this matter to another judge, and (2) that judge's determination of whether or not temporary injunctive relief is warranted."  *Id.* at 16. This case has since been reassigned, and now the Court may consider the merits of Plaintiffs' TRO motion.

## II.     Expedited Removal.

Congress has authorized the Department of Homeland Security ("DHS") to summarily remove from the United States certain inadmissible aliens who are arriving in the United States or who recently illegally entered the country without inspection and admission and who have no legal basis to remain here.  *See* 8 U.S.C. § 1225(b)(1); Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67

Fed. Reg. 68,924, 68,925 (Nov. 13, 2002); Designating Aliens for Expedited Removal, 69 Fed

Reg. 48,877 (Aug. 11, 2004).  Under this summary-removal mechanism—known as "expedited

removal"—an alien "who is arriving in the United States" or "certain other aliens" as designated

by the Secretary of Homeland Security, who has not been admitted or paroled into the United

States and who lacks valid entry documentation or makes material misrepresentations shall be

"order[ed] . . . removed from the United States without further hearing or review unless the alien

indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of

persecution."  8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7).

If an alien makes no such indication, a final order of expedited removal can be entered

against the alien.  *See id.* § 1225(b)(1)(A)(i).  But if the alien "indicates an intention to apply for

asylum" or expresses a fear of persecution or torture, the immigration officer inspecting the alien

must "refer the alien for" an interview conducted by an asylum officer.  *Id.* § 1225(b)(1)(A)(ii).

By regulation, aliens are also screened for eligibility for withholding of removal and protection

under the regulations implementing U.S. obligations under Article 3 of the Convention Against

Torture ("CAT").  8 C.F.R. §§ 208.30(e)(2), and (3), 235.3.  In such an interview, an asylum

officer assesses whether the alien has a "credible fear of persecution."  8 U.S.C.

§ 1225(b)(1)(B)(v).  A "credible fear of persecution" means "that there is a significant

possibility, taking into account the credibility of the statements made by the alien in support of

the alien's claim and such other facts as are known to the officer, that the alien could establish

eligibility for asylum under [8 U.S.C. § 1158]."  *Id.* § 1225(b)(1)(B)(v).  A credible-fear

interview thus assesses whether the alien has a plausible basis to pursue asylum, which would

allow the alien to temporarily remain in the United States for that purpose despite his

inadmissibility.  *See id.*; *id.* § 1158.

If the asylum officer determines that the alien "has a credible fear of persecution," or torture, the officer refers the alien to removal proceedings under 8 U.S.C. § 1229a. *Id.* § 1225(b)(1)(B)(ii). Removal proceedings under section 1229a provide more extensive procedures than those available in expedited removal. *Compare, e.g.*, *id.* § 1229a *with id.* § 1225(b)(1). In section 1229a removal proceedings, an alien may apply for asylum or other relief or protection from removal. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). An alien can also appeal an adverse decision to the Board of Immigration Appeals ("Board") and can, in turn, obtain judicial review of an adverse Board decision by filing a petition for review within the relevant U.S. Court of Appeals. 8 U.S.C. § 1252(a)(1).

If, however, the interviewing asylum officer (after review by a supervisor) determines that the alien does not have a credible fear of persecution or torture, the alien is not entitled to be placed into section 1229a removal proceedings. However, the alien may seek review of the negative credible-fear determination before an IJ. *Id.* § 1225(b)(1)(B)(iii)(I), (III). If, after review, the IJ concludes that the alien has established a credible fear, the IJ will vacate the asylum officer's negative determination and DHS will place the alien in section 1229a removal proceedings for adjudication of the alien's asylum claim (and any other removal-related claims the alien chooses to bring). 8 C.F.R. § 1003.42(f). If the IJ agrees with the asylum officer's determination that the alien lacks a credible fear, however, the alien may be "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The INA precludes further review by the Board or any court of the credible-fear determination. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

III.     **Factual Background for Plaintiffs**

Plaintiffs are mothers and children that have traveled from their home countries to the United States claiming to escape "incidents of sexual and physical violence, or threats of violence[.]"  Compl. ¶ 101.  Plaintiffs were apprehended and placed in custody by U.S. Customs and Border Protection ("CBP") immigration officers, placed into expedited removal proceedings, and given credible fear determinations on various dates in August and September of 2019.  *Id.* ¶¶ 12, 102-103.

Plaintiffs generally fall within three categories.[1]  The first category consists of Plaintiffs who have received a Notice to Appear ("NTA") before an IJ and, as a result, are no longer in expedited removal proceedings.  The second category consists of Plaintiffs whose negative credible fear determinations are currently pending IJ review, and their hearings before the IJ were either not conducted, continued, or on-going as of the date of this filing.  These Plaintiffs will not be removed unless and until the IJ affirms the negative credible fear finding.  Finally, the third category consists of Plaintiffs who have received a final order of removal after de novo reviews and affirmances of their negative credible fear determination by IJs.[2]

---

[1] Given the expedited briefing schedule and the large number of Plaintiffs in this matter, Defendants did not have sufficient time to prepare a declaration summarizing the current status of all Plaintiffs for this filing.  Defendants have located the "Record of Negative Credible/Reasonable Fear Finding" for each Plaintiff and are currently gathering the final removal orders for each Plaintiff.  Rather than burden the Court with a large number of documents, Defendants would seek to file these records under seal should the Court determine that a review of such records would be useful.

[2] Based on current Department of Homeland Security and Department of Justice records, these Plaintiffs include the following individuals: N.C.A.; M.P.C.; J.M.R.; C.G.M.; J.S.P.; M.A.S.; L.O.R.; A.P.O.; C.P.G.; M.B.P.; M.D.E.; A.G.D.; L.H.H.; Y.F.H.; S.G.H.; A.G.H.; G.A.Q.; N.A.Q.; A.A.Q.; M.M.V.; A.A.M.; S.L.V.; M.F.L.; W.P.R.; H.C.P.; J.C.P.; Y.U.; F.G.U.; R.C.C.; D.L.C.; J.S.M.; D.M.S.; M.M.B.; N.M.M; D.G.A.; E.P.G.; M.P.G.; M.A.M.; G.M.A.; M.C.D.; E.E.C.; R.P.F.; J.F.P.; Y.O.T.; V.L.O.; D.L.O.; J.G.G.; E.G.G.; I.F.L.; R.F.L.; A.O.V.; J.S.O.; A.L.V.; I.G.L.; A.G.L.; A.A.T.; C.A.T.; A.B.C.; E.C.B.; M.G.V.; A.R.G.; M.R.A.;

Therefore, only some of the Plaintiffs in this matter (*i.e.*, those in the third category) are subject to valid final orders of expedited removal.

## IV.     Plaintiffs' Motion for Emergency Stay

On September 25, 2019, Plaintiffs filed the instant motion for a stay of removal, requesting that this Court stay their removal until the Court decides the merits of their case. *See* Pls.' Mem. In Support of Pls.' Mot. for TRO ("Pls.' Mot.") at 1. Plaintiffs argue that they will be irreparably harmed absent a stay because they will be persecuted in their home countries. *Id.* at 32-33.

## ARGUMENT

This Court should deny the Plaintiffs' motion for a stay. Under *Nken v. Holder*, 556 U.S. 418, 426 (2009), requests for stays of removal are governed by a four-factor test: (1) whether the applicant for the stay "has made a strong showing that he is likely to succeed on the merits"; (2) whether the applicant will be "irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Id.* at 434. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* This is a demanding standard, and "courts should not grant stays of removal on a routine basis." *Id.* at 438 (Kennedy, J., concurring). And it is impossible for Plaintiffs to satisfy "the most critical" first factor where this Court has no jurisdiction to grant stays of removal. *Id.* at 434 (majority op.).

Here, the Court lacks jurisdiction to enter a stay. Furthermore, Plaintiffs cannot show a likelihood of success on the merits. They also cannot show that they will be irreparably injured absent a stay because they have been interviewed by asylum officers to determine whether they

---

L.C.R.; D.S.P.; V.V.P.; N.M.L.; and A.R.M.

could establish a credible fear of persecution or torture, and they were unable to make that showing.  A supervisory asylum officer has upheld that negative finding, and Plaintiffs have exhausted their right to de novo review before an IJ such that their orders of removal are final. The government and the public have a strong and weighty interest in enforcing the laws.

I.     **Individual Aliens Without a Final Removal Order Provide No Basis For a TRO.**

At present, many of the individual Plaintiffs in this matter are no longer subject to expedited removal proceedings or a final removal order.  Indeed, several Plaintiffs have been issued NTAs, or have received positive credible fear determinations from an IJ, and will thus have the opportunity to present their asylum claims in immigration court under section 1229a. Other Plaintiffs are waiting further review of their credible fear determinations in pending expedited removal proceedings before an IJ.  Thus, they are not currently subject to removal. Therefore, only the Plaintiffs with final removal orders provide any possible basis for a TRO in this matter.

II.     **The Court Lacks Jurisdiction to Enter Any Stay.**

Most fundamentally, Plaintiffs' TRO motion fails because this Court lacks jurisdiction to grant the stay relief that they request.  First, Plaintiffs are challenging the validity of their negative credible-fear determinations in requesting a stay pending resolution of the merits of this case, yet this Court is barred under 8 U.S.C. § 1252(a)(2)(A)(i)-(iv) from reviewing those negative credible-fear determinations.  Second, two other statutory provisions—8 U.S.C. §§ 1252(e) and 1252(g)—each independently bar this Court from granting Plaintiffs a stay of removal.

8 U.S.C. § 1252(a)(2)(A).  In arguing that they are likely to face persecution in their home countries, Plaintiffs implicitly request that the Court review their negative credible-fear

determinations in order to find irreparable harm and issue a stay.  The Court lacks jurisdiction to do this, and in any case, their claims would fail.

To begin, to demonstrate a credible fear of persecution Plaintiffs must show "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title."  8 U.S.C. § 1225(b)(1)(B)(v).  But Plaintiffs here can make no such showing by virtue of the July 16 rule—because they did not apply for asylum while in transit, they are categorically ineligible to apply for asylum, 84 Fed. Reg. 33,829, and by definition can have no significant possibility of showing an eligibility for asylum, as they categorically cannot to do so.  Plaintiffs thus have no plausible basis to argue that they are entitled to a stay of removal simply because they believe they might be eligible for asylum—the rule makes clear they are not.

Regardless, the INA and its implementing regulations unambiguously provide that there is no further review of negative credible-fear determinations, from either the Board or federal courts.  8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii); 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").  Title 8 U.S.C. § 1252(a)(2)(A) provides that no court shall have jurisdiction to review: (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of" an order of expedited removal, (2) "a decision by the Attorney General to invoke the provisions of" section 1225(b)(1) (governing expedited removal), (3) "the application of such section to individual aliens," including the credible fear determination, and (4) "procedures and policies adopted by the Attorney General to implement the provisions of" section 1225(b)(1).  *See* 8 U.S.C. § 1252(a)(2)(A)(i)-(iv).  Notably, while sections

1252(a)(2)(A)(i), (ii), and (iv) note that there is no further review *except as provided* in section

1252(e) (and, as discussed below, that further review does not permit this Court to enter the stay

relief Plaintiffs seek), section 1252(a)(2)(A)(iii) does not refer to any other section or permit any

further review, and thus is completely clear that there is no further review of "the application of"

section 1225(b)(1) "to individual aliens," period.  Thus, there can be no review of the application

of section 1225(b)(1) to Plaintiffs—in other words, the decision to place Plaintiffs in expedited

removal, the result of their credible-fear screening, and their final order of expedited removal are

not reviewable in this Court at all.

8 U.S.C. § 1252(e).  On top of that threshold problem, this Court also lacks jurisdiction to

enter the relief—a stay of removal—that Plaintiffs seek.  Section 1252(e)(1) provides "without

regard to the nature of the action or claim and without regard to the identity of the party or

parties bringing the action, no court may" "enter declaratory, injunctive, or other equitable relief

in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of

this title except as specifically authorized in a subsequent paragraph of this subsection."  That

prohibition on granting "injunctive" or "other equitable" "relief" bars this Court from issuing a

stay because no "subsequent paragraph" of section 1252(e) authorizes courts to enter a stay of

removal.

Section 1252(e)(2) provides for habeas corpus review of expedited removal orders, but

permits review of only three issues: "(A) whether the petitioner is an alien; (B) whether the

petitioner was ordered removed under [the expedited removal statute, 8 U.S.C. § 1225], and (C)

whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien

lawfully admitted for permanent residence, has been admitted as a refugee . . . , or has been

granted asylum[.]"  8 U.S.C. § 1252(e)(2)(A)-(C).  And "[i]n determining whether an alien has

been ordered removed under" the expedited removal provisions, "the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. *Id.* § 1252(e)(5). Plaintiffs invoke none of those bases for jurisdiction. That dooms their motion because federal courts lack jurisdiction to consider any collateral challenge to an expedited removal order beyond these three permissible bases. *See Garcia de Rincon*, 539 F.3d 1133, 1140 (9th Cir. 2008) (petitioner's challenge "does not contest her expedited removal order on any of the enumerated permissible grounds in § 1252(e)—this court therefore has no jurisdiction to hear it." (collecting cases)).

Section 1252(e)(3) does provide for review of so-called "systemic challenges" to the expedited removal system. But section 1252(e)(3) does not authorize the court to enter a stay of removal pending resolution of a challenge under that provision. Section 1252(e)(3) is silent on this point, so it cannot be read to affirmatively authorize what section 1252(e)(1) explicitly forbids. Indeed, Congress' clear intention through section 1252(e)(3) was to provide review of the written "procedures and policies" "implement[ing]" the "system" as a whole, or any new such procedures and policies issued at a later time, not review of the propriety of all individual removal orders issued during a systemic challenge's pendency. *Id.* §§ 1252(a)(2)(A)(iv), 1252(e)(3)(A).

Although Congress provided that a plaintiff's receipt of an expedited removal order would be a jurisdictional *prerequisite* and trigger for systemic review, *see AILA v. Reno*, 199 F.3d 1352, 1360 (D.C. Cir. 2000) (holding that through section 1252(e)(3) "Congress meant to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied"), it did not make the order the substantive *focus* of review. Instead, as noted, review focusing on the propriety of individual orders was to be accomplished

(if at all) through the limited habeas proceedings available through section 1252(e)(2).  Nowhere did Congress evince an intent to permit a section 1252(e)(3) challenge to halt the operation of the expedited removal system or to stay individual orders of expedited removal while litigating a section 1252(e)(3) claim.[3]  *Am. Immigration Lawyers Ass'n v. Reno (AILA)*, Civ. A. No. 97-0597 (EGS), 1997 WL 161944, at *2 (D.D.C. Mar. 31, 1997) (holding that "the Court does not have any authority" under section 1252(e) to issue an order "restrain[ing] the effective date of [expedited removal] legislation"); *see also AILA*, 18 F. Supp. 2d at 45 (noting that individual plaintiffs had been removed from the United States but could litigate their section 1252(e)(3) challenge from abroad).

Congress made clear there can be no intermediate relief in the form of a stay of removal or a preliminary injunction of the program or policy at all.  *See* 8 U.S.C. § 1252(e)(1).  The sole specifically authorized remedy that section 1252(e)(3) affords is a "determination[]" whether any alleged new written policy "is not consistent  with applicable provisions of this subchapter or is otherwise in violation of law," 8 U.S.C. § 1252(e)(3)(A)(ii), and to issue an "order" to that effect, *id.* § 1252(e)(3)(C).  The Court by definition can only issue such an order following such a "determination" on the merits.  *Id.* § 1252(e)(3)(A).  And this provision, which authorizes a "determination[]" does not therefore "specifically authorize[]" equitable relief.  *Id.* § 1252(e)(1)(A); *compare id.* § 1252(e)(4)(B) (specifically authorizing delimited habeas relief).

---

[3] Defendants note that the decision in *Make the Road New York v. McAleenan,* Civ. A. No. 19-2369, 2019 WL 4738070, at *1 (D.D.C. August 6, 2019) does not stand for any contrary principle.  In that case, although the court enjoined the U.S. Department of Homeland Security's expansion of expedited removal, the court did not purport to assert authority to stay the removals of aliens subject to expedited removal.  Indeed, unlike here, no plaintiff in that case was the subject of an order of expedited removal in that case.

The court may accordingly only issue a legal determination that the alleged policy is inconsistent with section 1225(b). Until that "determination[]" is made there can be no intermediate or equitable relief in the form of a stay of removal or a preliminary injunction of the program or policy. Importantly, the number of expedited removals in a year are in the hundreds of thousands, and Congress did not intend for preliminary relief, based on equitable factors, to be obtained by individuals subject to expedited removal. Instead, policy challenges would go forward without interfering with expedited removal until there is a final determination that the policy is not lawful. Indeed, the exclusive means of securing any equitable relief with respect to an order of expedited removal is not through a 1252(e)(3) challenge, but through review under section 1252(e)(2)—something Plaintiffs do not seek here—and even then, the sole and exclusive remedy available is placement in removal proceedings under Section 240 of the INA and nothing more. *See id*. § 1252(e)(4).

Reading the statutes otherwise would contravene the clear proscription that "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5). And to accept Plaintiffs' proposition that a stay may issue would similarly circumvent section 1252(a)'s proscription that "no court shall have jurisdiction . . . to entertain any other cause or claim arising from or *relating to* the implementation or operation of an order of removal pursuant to section 1225(b)(1)." *Id.* § 1252(a)(2)(A)(i) (emphasis added). The "relating to" language "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien." *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007). A request to stay execution of a final order of expedited removal clearly "relates to" a final order of expedited removal because issuance of a stay "would necessarily involve entertaining a claim arising from the removal order because we would be asked to nullify the

continuing effects of that order" through the stay. *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004).

In short, section 1252(e) does not authorize any court to stay execution of a final order of expedited removal. *Morales-Batres by de Morales v. Bennett*, Civ. A. No. 18-0033, 2018 WL 1733379, at *2 (S.D. Tex. Mar. 1, 2018) (recommending denying TRO motion because "[s]ubsection (e)(1) provides that no court may enter 'declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)'" (quoting 8 U.S.C. § 1252(e)(1))), *adopted by* 2018 WL 1730311, at *1 (S.D. Tex. Apr. 10, 2018); *Castro v. U.S. Dep't of Homeland Sec.*, 163 F. Supp. 3d 157, 163-65 (E.D. Pa.) (holding that the INA precluded review of negative credible-fear determinations and that "[t]o find otherwise would require [the court] to do violence to the English language to create an 'ambiguity' that does not otherwise exist"), *aff'd*, 835 F.3d 422 (3d Cir. 2016); *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1162 (D.N.M. 2014) (noting how "[s]ubsection (e) of § 1252 strips courts of jurisdiction" to enter injunctive relief); *Diaz Rodriguez v. U.S. Customs & Border Prot.*, Civ. A. No. 14-2716, 2014 WL 4675182, at *4 (W.D. La. Sept. 18, 2014) (same); *Tale v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 06-2335, 2006 WL 4692468, at *1 (S.D. Tex. July 13, 2006) ("[B]ecause the applicable statute does not confer jurisdiction upon this Court, Plaintiff's application for injunctive relief must be, and hereby is, denied."); *see also Melendez de Segovia v. Johnson*, 15-2019 (D.D.C. Nov. 19, 2015) (order denying temporary restraining order, adopting and applying reasoning of *M.S.P.C.* and *Rodriguez*).

8 U.S.C. § 1252(g).  Even without sections 1252(a) and (e), this Court is precluded by 8 U.S.C. § 1252(g) from entering a stay.  That provision provides "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) . . . no court

shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

decision or action by the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g) (emphasis

added); *see Jennings v. Rodriguez*, 138 S. Ct. 830, 839-41 (2018) (plurality) (district court lacks

jurisdiction over challenge to "decision to . . . seek removal."); *id*. at 854-59 (Thomas, J.,

concurring in judgment) (stating that the INA bars any "aliens' claims related to their removal"

unless raised in accordance with the rest of section 1252).  Because Plaintiffs' motion is in

substance a "challenge to the execution of the removal," section 1252(g) bars the Court from

issuing a stay other than as permitted elsewhere by section 1252.  *See Kwai Fun Wong v. United*

*States*, 373 F.3d 952, 964 (9th Cir. 2004) (equal-protection claim not barred by section 1252(g)

because plaintiff "disclaim[ed] any challenge to the execution of the removal itself"); *accord*

*Duron v. Johnson*, 898 F. 3d 644, 648 (5th Cir. 2018) (holding that a claim "on behalf of an

alien" that "arises from the decision to 'execute a removal order,' . . . is subject to section

1252(g)'s jurisdictional bar"); *Hamama v. Adducci*, 912 F.3d 869, 880 (6th Cir. 2018) (holding

that district court lacked jurisdiction to stay removals on account of section 1252(g)).  And that is

so "even if the claim is for a short stay while [Plaintiff] seeks additional administrative

remedies."  *Diaz-Amezcua v. Johnson*, Civ. A. No. 14-1313 (MJP), 2015 WL 419029, at *3

(W.D. Wash. Jan. 30, 2015) (Plaintiffs' "request to stay [their] removal arises from the decision

or action by the Attorney General to execute [their] removal order, and this Court therefore lacks

jurisdiction to hear such a claim"); *see, e.g., Rosales v. Aitken*, Civ. A. No. 11-4246, 2011 WL

4412654, *3, (N.D. Cal. Sep. 21, 2011) (similar); *Mejia-Espinoza v. Mukasey*, Civ. A. No. 08-

7984, 2009 WL 235625, *3 (C.D. Cal. Jan. 27, 2009) (similar).

　　　　Plaintiffs may argue that this Court has inherent authority to issue a stay and therefore the

Court must also have the authority to grant the injunctive relief sought in Plaintiffs' TRO motion. However, even if courts have inherent authority to determine their jurisdiction, Congress can curtail that equitable authority and has done so here unambiguously by enacting sections 1252(e) and (g). *See Bowles v. Russell*, 551 U.S. 205, 211 (2007) ("[o]nly Congress may determine a lower federal court's subject-matter jurisdiction"). "When district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *U.S. v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) (emphasis added). As discussed above, Section 1252(e) precludes the Court from entering "declaratory, injunctive, or other equitable relief" and Sections 1252(e) and (a) limit the Court's jurisdiction to enjoin an expedited removal order "notwithstanding any other provision of law." Therefore, the Supreme Court's decision in *Nken v. Holder*, which explicitly relied on the All Writs Act, 28 U.S.C. § 1651, for the authority to issue a stay in that case, is of no help to Plaintiffs. *See* 556 U.S. at 426-27.

### III.    The Government Is Likely to Succeed on the Merits.

#### a.    Plaintiffs' Disclaim Any Challenge To The July 16 Rule.

Although the July 16 Rule is the subject of other litigation,[4] Plaintiffs specifically do not challenge that rule here. *See* Pls.' Mot. at 19; Compl. ¶ 96 n.5. Rather, Plaintiffs allege that since the new rule, they "have been subjected to a series of policy changes at the South Texas Family Residential Center, located in Dilley, Texas." Pls.' Mot. at 20. Specifically, Plaintiffs challenge various regulations and directives that they allege were implemented in the wake of the July 16 Rule and that have altered how Defendants conduct credible fear interviews. *See* Compl.

---

[4] *See East Bay Sanctuary Covenant v. Trump*, 385 F. Supp. 3d 922, 957-58 (N.D. Cal. 2019); *Capital Area Immigrants' Rights Coal. v. Trump*, Civ. A. No. 19-2117 (TJK), 2019 WL 3436501 (D.D.C. July 24, 2019); *see also I.A. v. Barr*, Civ. A. No. 19-2530 (D.D.C.).

¶¶ 99-120 (labeling and describing each alleged policy); *see also* ECF No. 11 ¶¶ 1-4 (confirming that Plaintiffs are challenging separate policies and directives from the July 16 Rule).

Plaintiffs concede that at least "some of the policy changes implemented by the Defendants flow from the application of the new [rule]," *see* Pls.' Mot. at 20, but Plaintiffs do not elaborate upon which policy changes are related to the July 16 Rule and those that are challenged here. *See also* Compl. ¶ 100. Therefore, Defendants and this Court are faced with the needlessly difficult task of sorting out whether Plaintiffs' allege harm arises out of any claims related to the July 16 Rule or from the claims at issue in this matter. For example, Plaintiffs allege that Defendants have implemented a policy to "Declare a Negative Decision in the Middle of the Screening Directive." Compl. ¶ 112. However, there is no dispute that the July 16 Rule expressly "incorporates the eligibility bar on asylum into the credible-fear screening process." *See* 84 Fed. Reg. at 33,831. Therefore, pursuant to the July 16 Rule, an individual Plaintiff may be found ineligible for asylum during their credible fear review. Although Plaintiffs' argue that this policy violates each Plaintiff's right to a non-adversarial interview, *see* Pls.' Mot. at 24 (citing 8 C.F.R. § 208.30(d)), there is no indication that Plaintiffs' allegations relate to anything other than a straightforward application of the July 16 Rule. Because Plaintiffs have not challenged that rule, any allegations related to its application cannot support Plaintiffs' likelihood of success on the merits in this case.

### b.  Plaintiffs Challenge Is Subject To Limited Judicial Review.

Plaintiffs bring their challenge pursuant to 8 U.S.C. § 1252(e)(3), which (as noted above) provides for limited judicial review of removal orders. *See* Pls. Mot. at 1. Notably, Section 1252(e)(3) limits judicial review to two issues: (1) whether the challenged section or regulations are constitutional; and (2) whether the challenged regulation, written policy directive, written

policy guideline, or procedure is consistent with the INA or any other laws. *Id.* §§ 1252(e)(3)(i)-(ii). At the outset, Plaintiffs do not point to any specific regulation or written policy, directive, or procedure in this case. Rather, Plaintiffs merely presume the existence of certain policies based, at least in part, on the experiences of individual Plaintiffs.

In this case, the specific allegations of Defendants' purported regulations, policies, or procedures consist almost entirely of conclusory statements. For example, Plaintiffs argue that asylum officers did not receive any training regarding the proper application of the July 2016 Rule. *See* Pls.' Mot. at 22. Plaintiffs further argue that Defendants have eliminated any supervisory review of negative credible fear determinations, *id.* at 22-23, and have also limited the fact-finding role of asylum officers, *id.* at 24. Plaintiffs' brief cites to no factual support for these conclusory assertions. In essence, Plaintiffs request the Court to presume that government officials in this case have discharged their statutory and regulatory duties unlawfully. However, the D.C. Circuit requires courts to apply the *opposite* presumption, namely, that government officials discharge their duties in good faith. *See Comcast Corp. v. FCC,* 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) (citing *Thomas v. Baker,* 925 F.2d 1523, 1525 (D. C. Cir. 1991)). Therefore, Plaintiffs cannot claim a likelihood of success of the merits on these claims alone.

Further, although Plaintiffs' Complaint alleges that Defendants have inappropriately conducted credible fear reviews via telephone, *see* Compl. ¶ 120, Plaintiffs cite to no legal requirement that such reviews must occur in person. Nor can Plaintiffs provide any legal support for their claim that Defendants have inappropriately implemented a review of credible fear determination for possible fraud. *See* Compl. ¶ 118. Accordingly, Plaintiffs have failed to establish that any of the alleged regulations, policies, or procedures violate the INA or any other law. *See* 8 U.S.C. § 1252(e)(3)(ii).

Plaintiffs primary claim appears to be that Defendants have allegedly failed to provide adequate orientation to any of the Plaintiffs in advance of their credible fear interview, which Plaintiffs contend violations their constitutional due process rights under the Fifth Amendment. *See* Pls.' Mot. at 30.   However, aliens subject to expedited removal lack any Fifth-Amendment-protected liberty interest in remaining in this country once they receive the process available to them under the statute and its implementing regulations.   "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).   "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

Moreover, asylum is a discretionary benefit, not an "entitlement." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987).   Applicants for admission thus lack any liberty interest in specific procedures for adjudicating their asylum claims. *See, e.g.*, *Jean-Louis v. U.S. Att'y Gen.*, 582 F.3d 462, 465-66 n.4 (3d Cir. 2009); *Ukrainian-American Bar Ass'n v. Baker*, 893 F.2d 1374, 1382 (D.C. Cir. 1990).   For inadmissible aliens on U.S. soil who may seek asylum, "the statutory requirement is sufficient procedural due process" because it provides notice and an opportunity be heard. *Maldonado-Perez v. I.N.S.*, 865 F.2d 328, 332 (D.C. Cir. 1989).

Under the INA, Plaintiffs are entitled to a credible fear review by an asylum officer. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B); 8 C.F.R. § 235.3(b)(4); *see also* 8 C.F.R. § 208.30. There is no dispute that each Plaintiff was interviewed by an asylum officer, given a credible fear review, and provided de novo review of their credible fear determinations before an IJ.   Indeed, in some cases, Plaintiffs have been successful in having the determination by the asylum officer vacated by an IJ.   Accordingly, Plaintiffs have received due process under the INA.

**III.     All Other Stay Factors Favor the Government.**

Plaintiffs also fail to satisfy their burden under *Nken* to demonstrate that equitable factors favor a stay.  They must demonstrate that they will be "irreparably injured absent a stay."  *Nken,* 556 at 434.  The Court must also assess "whether issuance of the stay will substantially injure the other parties interested in the proceeding" and "where the public interest lies."  *Id*.  They have not made the required showings.

Plaintiffs' claims of harm are that they will be persecuted or tortured upon return to their home countries.  Pls.' Mot. at 32-33.  But the Plaintiffs who have received final removal orders have not established a credible fear before the asylum officer or IJ.  Therefore, it is not likely that these aliens will be "wrongfully removed," *Nken*, 556 U.S. at 434, where the alien has already been screened to determine whether they can establish a credible fear of persecution— including a screening for withholding of removal and protection under the Convention Against Torture, and IJ review—and the underlying basis for arguing the order of removal is erroneous—the alleged regulations, directives, guidelines, or procedures—are not well-founded. Indeed, Plaintiffs' claims of irreparable harm are diminished by the fact that even though they are now ineligible for asylum, they could—and did—avail themselves of the opportunity to show a reasonable fear of persecution or torture if removed.  That they received that process and failed to satisfy it does not mean they will be irreparably harmed by being removed.

Plaintiffs assert that the government will not be substantially injured by the stay of removal, and would further the public interest, but the reason offered in support of that conclusion is that these interests are furthered by ensuring that plaintiffs are not subject to an "unlawful practice[.]"  Pls.' Mot. at 33 (citation omitted).  This ignores that the screening procedure has already occurred, and Plaintiffs have been found to lack a credible fear.  They

20

also argue that the public interest is served when the government complies with the law.  *Id.*
This ignores the fact Plaintiffs' orders of expedited removal comply with the July 2016 Rule,
which the Supreme Court allowed to go into effect.  *See Barr v. East Bay Sanctuary Covenant*,
No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019).

In determining whether the issuance of the stay will substantially injure the government,
and the public interest, the Court must consider the public interest in the "prompt execution of
removal orders," *Nken*, 556 U.S. at 436, which is comparatively heightened here.  The
continued presence of an alien lawfully deemed removable undermines the streamlined removal
proceedings the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA")
established, and permits and prolongs a continuing violation of United States law.  The interest
in prompt removal may be heightened by the circumstances as well—if, for example, the alien
"has substantially prolonged his stay by abusing the processes provided to him."  *Id.*  Those
concerns are even more apt in the expedited removal context.

Congress has determined that aliens subject to expedited removal under the INA must be
removed as expeditiously as possible in accordance with the INA to avoid increasing the
national illegal immigration crisis.  "The decision to adopt an 'expedited removal' system was
prompted by Congress's finding that 'thousands of aliens arrive in the U.S. at airports each year
without valid documents and attempt to illegally enter the U.S.'"  *AILA*, 18 F. Supp. 2d at 42
(quoting H.R. Rep. No. 104-469, pt. 1, at 158 (1996)).  Expedited removal was viewed as one of
several critical tools to deal with the "crisis at the land border, allowing hundreds of thousands
of illegal aliens to cross each year, and contributing more than half of the 300,000 to 400,000
annual growth in the illegal alien population."  H.R. Rep. No. 104-469, pt. 1, at 107.  Staying
the duly determined removal of aliens falling into this category undermines the "expedited" aim

of the system established by Congress—which is entitled to great deference in this matter, *see, generally e.g., Negusie v. Holder*, 555 U.S. 511, 546 n. 2 (2009) (Thomas, J., dissenting)—and exacerbates the strain on limited detention and administrative resources that makes the expedited removal regime necessary to begin with.

Finally, as Plaintiffs do not dispute in their motion, the prompt effectuation of removal orders in no way effects the ability to litigate their claims, as they may be litigated from abroad without any threat of mooting those claims after removal. *See, e.g.*, *AILA*, 18 F. Supp. 2d at 45 (noting that individual plaintiffs had been removed from the United States but were litigating their 1252(e)(3) challenge from abroad).  Conversely, Defendants would suffer irreparable injury by being enjoined from carrying out an explicit Congressional mandate, in contravention of an Act of Congress that permits the Attorney General and the Secretary of Homeland Security to promulgate new asylum-eligibility bars under section 1158(b)(2)(C). *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").  Here, Congress has made clear its view that the public interest is served by the expedited removal of aliens like Plaintiffs from the United States if they lack valid claims of asylum, withholding of removal, or protection under the Convention Against Torture. *Castro*, 163 F. Supp. at 160 (explaining the history and rationale of the expedited removal program); *Castro v. U.S. Dep't of Homeland Security*, 835 F.3d 422, 425-28 (3rd Cir. 2016) (laying out the statutory framework of expedited removal and its limited review procedures).  Accordingly, where the Executive deems it appropriate, it must "order [an] alien removed from the United States without further hearing or review" in the event that the alien is subject to an order of expedited removal and has not been found to "have a credible fear of

persecution." 8 U.S.C. § 1225(b)(iii)(1).  As noted, Congress has also removed that decision from judicial review in the federal courts, subject to discrete, circumscribed exceptions not at issue here.  Thus, Congress has already established what is in the public interest by establishing the expedited removal system and its judicial review provisions.  *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 327 (1982) (observing that the "public interest" is "reflected in an Act of Congress"). Staying execution of Plaintiffs' lawful, final orders of expedited removal, would encroach on the discretion Congress granted to immigration officials, would plainly frustrate the will of Congress by preventing the government from enforcing congressional directives, and therefore the balance of harms tips in favor of the government.

## CONCLUSION

For these reasons, Plaintiffs' TRO motion for a stay of removal should be denied.


Dated: October 3, 2019                     Respectfully submitted,

                                           JESSIE K. LIU
                                           United States Attorney
                                           D.C. Bar #472845

                                           DANIEL F. VAN HORN
                                           Chief, Civil Division
                                           D.C. Bar #924092

                                           /s/   *Christopher C. Hair*
                                           CHRISTOPHER C. HAIR, PA Bar No. 306656
                                           Assistant United States Attorney
                                           555 Fourth Street, N.W.
                                           Washington, D.C. 20530
                                           (202) 252-2541
                                           christopher.hair@usdoj.gov

                                           *Counsel for Defendants*