## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

M.M.V.; A.A.M., a minor; S.L.V.; M.F.L., a minor; )
A.O.V.; J.S.O., a minor; M.R.A.; L.C.R., a minor; )
A.L.V.; I.G.L, a minor; A.G.L., a minor; L.O.R.; )
A.P.O., a minor; N.P.; R.D.P., a minor; M.D.E.; )
A.G.D., a minor; M.M.B.; N.M.M., a minor; )
D.C.V.; S.V.C., a minor; M.G.V.; A.R.G., a minor; )
R.P.F.; J.F.P., a minor; S.T.T.; E.T.T., a minor; )
J.M.R.; C.G.M., a minor; J.S.M., D.M.S., a minor; )
Y.U.; F.G.U., a minor; I.F.L.; R.F.L., a minor; )
N.M.L.; A.R.M., a minor; M.C.D.; E.E.C., a minor; )
Y.O.T.; D.L.O., a minor; V.L.O., a minor; M.A.A.; )
A.R.A., a minor; C.A.A., a minor; M.C.M; S.M.C., )
a minor; I.A.D.; C.L.A., a minor; C.C.N.; B.S.C., )
a minor; C.P.G.; M.B.P., a minor; L.H.H.; Y.F.H., )
a minor; W.P.R.; J.C.P., a minor; H.C.P., a minor; )
A.B.D.; E.C.B.; a minor; G.A.Q.; N.A.Q., a minor; )
A.A.Q., a minor; S.G.H.; A.G.H., a minor; J.S.P.; )
M.A.S., a minor; M.A.M.; G.M.A., a minor; )
D.G.A.; E.P.G., a minor; M.P.G., a minor; K.P.P.; )
M.P.P., a minor; I.P.P., a minor; J.A.L., a minor; )
K.N.E; E.A.N., a minor; M.H.; J.M.H., a minor; )
M.C.M.; S.M.C., a minor; A.C.B.; A.C.B., a minor; )
Y.V.O; E.P.V., a minor; S.L.R.; A.V.L., a minor; )
D.A.M.; Y.H.A., a minor; A.D.L.; M.D.D., a )
minor; D.P.R.; S.B.P., a minor; Y.E.S.; M.I.E., a )
minor; S.A.C.; V.H.A., a minor; G.R.R.; D.A.A., a )
minor; L.G.G.; W.C.G., a minor; M.C.P.; J.C.P., a )
minor; M.R.C., a minor; R.L.A.; N.C.L., a minor; )
M.L.M.; J.R.L., a minor; C.C.G.; E.C.G., a minor; )
B.C.A.; G.S.C., a minor; L.M.P.; Y.M.M., a minor; )
L.P.M, a minor; A.G.P.; D.S.G., a minor; A.S.G., )
a minor; I.G.V.; M.S.G., a minor; C.R.R.; I.G.R., a )
minor; V.G.R., a minor; M.R.S.; J.H.R., a minor; )
E.G.; J.G.M., a minor; B.G.C.; S.M.G., a minor; )
T.S.J.; L.P.S., a minor; G.S.J., a minor; C.M.B.; )
E.G.M., a minor; C.G.M., a minor; D.G.M., a )
minor; I.C.A.; S.P.C., a minor; M.P.O; G.G.L., a )
minor; E.F.R.; K.A.F., a minor; D.O.H.; L.A.O., )
a minor; D.A.O., a minor; N.B.C.; J.B.M., a minor; )
S.J.A.; W.A.A., a minor; A.V.M., a minor; M.A.R.; )

Case No. 1:19-cv-2773

Hon. Judge Amy Berman Jackson

**JURY TRIAL DEMAND**

S.R.S., a minor; O.T.G.; T.T.G., a minor; M.T.T  )
Y.L.T., a minor; R.C.H.; E.P.C., a minor; M.J.P.;  )
A.M.P., a minor; A.M.P., a minor; A.P.P., a minor;  )
C.P.P., a minor; E.C.B.; Y.M.C., a minor; C.G.C., a )
Minor; I.C.B., a minor; I.H.L.; S.R.H., a minor;  )
L.M.B.; Z.R.M. a minor; E.R.M., a minor; C.H.G.;  )
M.G.H., a minor; L.M.V.; C.A.M., a minor; T.C.L.; )
A.P.C., a minor; J.C.; C.G.C., a minor; L.M.L..;  )
M.R.M., a minor; T.R.M.; J.R.R., a minor; L.V.M;  )
M.B.V., a minor; E.B.V., a minor; D.P.T.; I.M.P., a )
minor; B.H.I.; D.M.H., a minor; R.U.B.; J.M.U., a  )
minor; T.G.M.; K.G.G., a minor; I.C.P.; H.A.C., a  )
minor; S.R.F.; C.M.R., a minor; M.J.V.; J.H.J., a  )
minor; E.M.R.; C.S.M., a minor; A.G.C.; Y.M.G., a )
minor; I.L.L.; K.H.L., a minor; Z.C.G.; D.R.C., a  )
minor; H.R.L.; V.G.R., a minor; F.G.R., a minor;  )
D.G.R., a minor; M.G.R., a minor; A.G.R., a minor; )
A.C.G.; A.R.G., a minor; M.R.G., a minor; M.Z.L.; )
I.M.V.; and J.T.M., a minor,  )
  )
                Plaintiffs,  )
  )
[Physical address for all detained Plaintiffs:  )
South Texas Family Residential Center  )
300 El Rancho Way, Dilley, TX 78017]  )
  )
v.  )
  )
  )
WILLIAM P. BARR, Attorney General of the  )
United States; JAMES MCHENRY, Director,  )
Executive Office for Immigration Review;  )
  )
[Physical address for Defendants Barr and  )
McHenry:  )
c/o Office of the Attorney General  )
U.S. Department of Justice  )
950 Pennsylvania Avenue, N.W.  )
Washington, D.C. 20530-0001]  )
  )

CHAD F. WOLF, Putative Acting Secretary          )
United States Department of Homeland Security;   )
MARK MORGAN, Acting Commissioner,                )
United States Customs and Border Protection      )
MATTHEW T. ALBENCE, Acting Director              )
United States Immigration and Customs            )
Enforcement; KENNETH T. CUCCINELLI,              )
Putative Acting Director, United States Citizenship  )
and Immigration Services; and ANDREW             )
DAVIDSON, Acting USCIS Asylum Division           )
Chief,                                           )
                                                 )
[Physical address for Defendants Wolf,           )
Morgan, Albence, Cuccinelli and Davidson:        )
c/o Office of the General Counsel                )
United States Department of Homeland Security    )
Washington, D.C. 20528[1]],                      )
                                                 )
Defendants.                                      )

---

**SECOND AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

---

[1] Pursuant to 6 C.F.R. § 5.42(a).

1.      On July 16, 2019, the Administration published a new and immediately effective interim final rule titled "Asylum Eligibility and Procedural Modifications" (herein, the "Asylum Bar"), which renders most individuals who arrive in the United States via the southern border ineligible for asylum. 84 FR 33829. The legality of the July 16, 2019, regulation is currently at issue in separate litigation.[2] Defendants and those operating under their supervision or control have since further eviscerated the "credible fear" process and have implemented ever-shifting, improper, and illegal directives, guidance, actions and/or procedures that place parents, children, and others in immigration detention at risk of wrongful deportation, persecution, and death, denying them their statutory, regulatory, and constitutional rights.

2.      Upon information and belief, since July 16, 2019, credible fear passage rates at the South Texas Family Residential Center in Dilley, Texas—the largest family detention center in the United States, with a bed and crib capacity of 2,400 for asylum seeking mothers and children—have diminished from approximately 97% of credible fear applicants, to around 10% or fewer of applicants.

3.      On information and belief, the Defendants, or those operating under their supervision or control, have implemented new directives, guidance, initiatives, actions, and/or

_____

[2] *See East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018), *stay of injunction pending appeal granted sub nom.*, 588 U.S. ___ (Sept. 11, 2019); *I.A. v. Barr*, 19:cv-02530, Dkt. 3, Compl. (D.D.C. Aug. 21, 2019). 8 U.S.C. § 1252(e)(3)(B) requires that claims under that section be brought within sixty days of the date of implementation of "the challenged section, regulation, directive, guideline, or procedure." The procedures and policies stated in 84 FR 33829 arose as a result of the Department of Homeland Security's rule issued on July 16, 2019. On information and belief, follow-along directives, guidance, initiative, actions, and/or procedures concerning credible fear adjudication were then issued on or after that date. Sixty days from July 16, 2019 elapsed on Saturday, September 14, 2019.  Per F.R.C.P. 6(a)(1)(C), because the last day of the sixty-day time period was a Saturday, the time period for filing a challenge to this regulation under 8 U.S.C. § 1252(e)(3) extended to "the next day that is not a Saturday, Sunday, or legal holiday"—Monday, September 16, 2019.

procedures (herein the "Challenged Actions") concerning the evaluation of "credible" and/or "reasonable" fear in people seeking protection from persecution and/or torture, particularly since the above July 16 "Asylum Eligibility" modification was published and set in motion.   As discussed further below, these Challenged Actions conflict with and overstep the statutory, regulatory, and constitutional requirements governing evaluation of fear in the asylum process.

4.       While at least some of the Challenged Actions are believed, on information and belief, to be memorialized in writing and/or authorized or adopted by Defendant Barr or the then acting Secretary of Homeland Security, most if not all have never been made public. Requests for information of Defendants have been rebuffed, with responses illegally endeavoring to keep the Challenged Actions from the light of public or judicial review.[3] Collectively, the Challenged Actions have thus been undertaken by Defendants and/or those under their supervision and control *sub rosa*, surreptitiously without any judicial, legislative, or public oversight, notice, or comment. Defendants' suppression of the facts has further prejudiced Plaintiffs' ability to understand and be made aware of the full scope of claims that they may have against Defendants.

5.       Each of the Plaintiffs has been subjected to evaluation procedures and written decisions that confirm the improper and illegal changes concerning the evaluation of fear in the asylum process that have been implemented by the Challenged Actions. Presumably, Defendants and/or those operating under their supervision and control have disseminated guidance, including written guidance, to their agents and employees conducting credible fear interviews ("CFIs") and

---

[3] *See, e.g.*, *Am. Immigration Council v. U.S. Customs and Border Protection*, No. 1:19-cv-02965, Dkt. 1, Compl. (D.D.C. Oct. 2, 2019).  Given Defendants' efforts to suppress details of their actions, Plaintiffs expect a more detailed picture of Defendants' use of illegal directives, guidance, actions, and procedures—and of the extent to which this conduct was authorized by officials acting outside the scope of legal appointments—to be exposed in discovery and parallel FOIA litigation.

reasonable fear interviews ("RFIs"). And as a result of the Challenged Actions, Defendants have summarily and improperly rejected Plaintiffs' claims of fear.

6.      Plaintiffs bring suit to stop the Challenged Actions, which truncate and prejudice the proper evaluation of "credible" or "reasonable" fear.[4] Plaintiffs seek declaratory and injunctive relief finding the application of new Challenged Actions unlawful, barring further application of the Challenged Actions to them, and requiring Defendants to reprocess their fear claims under the law, policies, directives, guidance and procedures that existed prior to the Challenged Actions.

7.      DHS and divisions under its supervision, and/or their employees, have also failed to properly adopt and/or implement the Challenged Actions, including by failing to follow appropriate notice and comment requirements. But regardless of this violation, the Challenged Actions are arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 553, 706(2).

## JURISDICTION

8.      This case arises under the United States Constitution; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* and its implementing regulations; and the Convention Against Torture ("CAT"), *see* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

---

[4] As stated in Note 2, *supra*, the legality of the interim final rule published at 84 FR 33829 is being addressed in other litigation. While Plaintiffs contend that this regulation is illegal for the reasons raised in the parallel litigation, Plaintiffs defer here to the outcome of that parallel litigation concerning the regulation's legality.  Instead, this Complaint challenges the legality of Defendants' additional Challenged Actions that further improperly modify and prejudice the process of evaluating fear.

9.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction with a waiver of sovereign immunity pursuant to the APA, 5 U.S.C. §701 et seq.); and 28 U.S.C. § 1346 (United States as defendant). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).  To the extent any claims fall within limits stated in 8 U.S.C § 1252(a)(2)(A), jurisdiction also exists under 8 U.S.C. § 1252(e)(3).

## VENUE

10.     Venue in the District of Columbia is proper pursuant to 28 U.S.C. § 1391(e), as the location where the government Defendants reside and where a substantial part of the events giving rise to the claims occurred.

11.     Venue is also proper in this District for claims under 8 U.S.C. § 1252(e)(3), which requires such claims to be brought in the United States District Court for the District of Columbia.

## PARTIES

12.     Plaintiffs are all mothers and children detained at the South Texas Family Residential Center who have been issued negative credible and reasonable fear determinations.

13.     Plaintiffs M.M.V. and her minor son A.A.M. are Salvadoran nationals who seek protection from persecution and torture in the United States. M.M.V. and A.A.M. were placed in credible fear proceedings on or around August 22, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 30, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

14.     Plaintiffs S.L.V. and her minor daughter M.F.L. are Salvadoran nationals who seek protection from persecution and torture in the United States. S.L.V. and M.F.L. were placed in

credible fear proceedings on or around August 22, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

15.   Plaintiffs A.O.V. and her minor son J.S.O. are Honduran nationals who seek protection from persecution and torture in the United States. A.O.V. and J.S.O. were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on September 3, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

16.   Plaintiffs M.R.A. and her minor daughter L.C.R. are Honduran nationals who seek protection from persecution and torture in the United States. M.R.A. and L.C.R. were placed in credible fear proceedings on or around August 28, 2019, attended their initial credible fear interview on September 3, 2019, and were served with negative credible fear determinations on September 3, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

17.   Plaintiffs A.L.V. and her minor sons I.G.L. and A.G.L. are Honduran nationals who seek protection from persecution and torture in the United States. A.L.V., I.G.L., and A.G.L. were placed in credible fear proceedings on or around August 28, 2019, attended their initial credible fear interview on September 3, 2019, and were served with negative credible fear determinations

on September 3, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 19, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

18.      Plaintiffs L.O.R. and her minor son A.P.O. are Honduran nationals who seek protection from persecution and torture in the United States. L.O.R. and A.P.O. were placed in credible fear proceedings on or around August 16, 2019, attended their initial credible fear interview on September 3, 2019, and were served with negative credible fear determinations on September 3, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

19.      Plaintiffs N.P. and her minor daughter R.D.P. are Honduran nationals who seek protection from persecution and torture in the United States. N.P. and R.D.P. were placed in credible fear proceedings on or around August 16, 2019, attended their initial credible fear interview on August 27, 2019, and were served with negative credible fear determinations on August 29, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

20.      Plaintiffs M.D.E. and her minor son A.G.D. are Salvadoran nationals who seek protection from persecution and torture in the United States. M.D.E. and A.G.D. were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 29, 2019. Their negative credible fear determinations were affirmed by the immigration

judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

21.     Plaintiffs M.M.B. and her minor daughter N.M.M. are Nicaraguan nationals who seek protection from persecution and torture in the United States. M.M.B. and N.M.M. were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on August 31, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

22.     Plaintiffs D.C.V. and her minor son S.V.C. are Guatemalan nationals who seek protection from persecution and torture in the United States. D.C.V. and S.V.C. were placed in credible fear proceedings on or around August 22, 2019, attended their initial credible fear interview on August 27, 2019, and were served with negative credible fear determinations on August 30, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

23.     Plaintiffs M.G.V. and her minor child A.R.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 3, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

24.     Plaintiffs R.P.F. and her minor child J.F.P. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 26, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

25.     Plaintiffs S.T.T. and her minor child E.T.T. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 27, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. They have been released for unknown reasons without review of their negative credible fear determinations by an immigration judge .

26.     Plaintiffs J.M.R. and her minor child C.G.M. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 20, 2019, attended their initial credible fear interview on August 27, 2019, and were served with negative credible fear determinations on August 29, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

27.     Plaintiffs J.S.M. and her minor child D.M.S. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on August 30, 2019. Their

negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

28.     Plaintiffs Y.U. and her minor child F.G.U. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 23, 2019, attended their initial credible fear interview on August 29, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

29.     Plaintiffs I.F.L. and her minor child R.F.L. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 24, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 19, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

30.     Plaintiffs N.M.L. and A.R.M. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 28, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 5, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

31.     Plaintiffs M.C.D. and her minor child E.E.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear

proceedings on or around August 13, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on or about September 5, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

32.     Plaintiffs Y.O.T. and her minor children D.L.O. and V.L.O. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 5, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

33.     Plaintiffs M.A.A. and her minor children A.R.A. and C.A.A. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 4, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

34.     Plaintiffs I.A.D. and her minor daughter C.L.A. are Ecuadorian nationals who seek protection from persecution and torture in the United States. I.A.D. and C.L.A. were placed in credible fear proceedings on or around August 24, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on

September 4, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

35.     Plaintiffs C.C.N. and her minor son B.S.C. are Salvadoran nationals who seek protection from persecution and torture in the United States. C.C.N. and B.S.C. were placed in credible fear proceedings on or around August 27, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 6, 2019. To date, they have not been scheduled for review before an immigration judge. They are detained at the South Texas Family Residential Center in Dilley, Texas.

36.     Plaintiffs C.P.G. and her minor son M.B.P. are Guatemalan nationals who seek protection from persecution and torture in the United States. C.P.G. and M.B.P. were placed in credible fear proceedings on or around August 20, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on September 6, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 26, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

37.     Plaintiffs L.H.H. and her minor daughter Y.F.H. are Honduran nationals who seek protection from persecution and torture in the United States. L.H.H. and Y.F.H. were placed in credible fear proceedings on or around August 25, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

38.     Plaintiffs W.P.R. and her minor children J.C.P. and H.C.P. are Salvadoran nationals who seek protection from persecution and torture in the United States. W.P.R., J.C.P., and H.C.P. were placed in credible fear proceedings on or around August 21, 2019, attended their initial credible fear interview on August 30, 2019, and were served with negative credible fear determinations on September 11, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

39.     Plaintiffs A.B.D. and her minor daughter E.C.B. are Salvadoran nationals who seek protection from persecution and torture in the United States. A.B.D. and E.C.B. were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 11, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

40.     Plaintiffs G.A.Q. and her minor children N.A.Q. and A.A.Q. are Salvadoran nationals who seek protection from persecution and torture in the United States. G.A.Q., N.A.Q and A.A.Q. were placed in credible fear proceedings on or around September 4, 2019, attended their initial credible fear interview on September 5, 2019, and were served with negative credible fear determinations on September 6, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 26, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

41.     Plaintiffs S.G.H. and her minor child A.G.H. are Salvadoran nationals who seek protection from persecution and torture in the United States. S.G.G.H. and A.G.H. were placed in

credible fear proceedings on or around August 30, 2019, attended their initial credible fear interview on September 5, 2019, and were served with negative credible fear determinations on September 12, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

42.     Plaintiffs J.S.P. and her minor son M.A.S. are Honduran nationals who seek protection from persecution and torture in the United States. J.S.P. and M.A.S. were placed in credible fear proceedings on or around August 16, 2019, attended their initial credible fear interview on September 5, 2019, and were served with negative credible fear determinations on September 12, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 26, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

43.     Plaintiffs M.A.M. and her minor daughter G.M.A. are Honduran nationals who seek protection from persecution and torture in the United States. M.A.M. and G.M.A. were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 5, 2019, and were served with negative credible fear determinations on September 12, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 23, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

44.     Plaintiffs D.G.A. and her minor children M.P.G. and E.P.G. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 11,

2019. Their negative credible fear determinations were affirmed by the immigration judge on September 26, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

45.     Plaintiffs K.P.P. and her minor children I.P.P. and M.P.P. are Ecuadorean nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around September 9, 2019, attended their initial credible fear interview on September 12, 2019, and were served with negative credible fear determinations on September 12, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

46.     Plaintiff J.A.L, a minor, is a Guatemalan national who seeks protection from persecution and torture in the United States. J.A.L. entered the United States accompanied by his mother, who was placed in reasonable fear proceedings. J.A.L. was placed in credible fear proceedings on or around August 30, 2019, attended an initial credible fear interview on September 10, 2019, and was served with a negative credible fear determination on September 12, 2019. Review before an immigration judge is scheduled for December 2, 2019. He is detained with his mother, who is not a plaintiff, at the South Texas Family Residential Center in Dilley, Texas.

47.     Plaintiffs K.N.E. and her minor son E.A.N. are Honduran nationals who seek protection from persecution and torture in the United States. K.N.E. and E.A.N. were placed in credible fear proceedings on or around September 8, 2019, attended their initial credible fear interview on September 12, 2019, and were served with negative credible fear determinations on September 16, 2019. Their negative credible fear determinations were affirmed by the immigration

judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

48.     Plaintiffs M.H. and her minor son J.M.H. are Honduran nationals who seek protection from persecution and torture in the United States. M.H. and J.M.H. were placed in credible fear proceedings on or around August 29, 2019, attended their initial credible fear interview on September 4, 2019, and were served with negative credible fear determinations on September 6 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

49.     Plaintiffs M.C.M. and her minor child S.M.C. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings on or around August 26, 2019, attended their initial credible fear interview on September 2, 2019, and were served with negative credible fear determinations on September 2, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

50.     Plaintiffs A.C.B. and her minor child A.C.B. are Guatemalan nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 23, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

51.     Plaintiffs Y.V.O. and her minor child E.P.V. are Guatemalan nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 18, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

52.     Plaintiffs S.L.R. and her minor child A.V.L. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 19, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

53.     Plaintiffs D.A.M. and her minor child Y.H.A. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 20, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

54.     Plaintiffs A.D.L. and her minor child M.D.D. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 26, 2019. Their negative credible fear determinations were

affirmed by the immigration judge on October 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

55.     Plaintiffs D.P.R. and her minor child S.B.P. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 25, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

56.     Plaintiffs Y.E.S. and her minor child M.I.E. are Cuban nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 26, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

57.     Plaintiffs S.A.C. and her minor child V.H.A. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 27, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

58.     Plaintiffs G.R.R. and her minor child D.A.R. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible

fear determinations on September 27, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

59.     Plaintiffs L.G.G. and her minor child W.C.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 25, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

60.     Plaintiffs M.C.P. and her minor children J.C.P. and M.R.C. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 23, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. Plaintiff M.C.P. has been released with her children for medical reasons due to the fact that she is well into the third trimester of her current pregnancy.

61.     Plaintiffs R.L.A. and her minor child N.C.L. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 28, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

62.     Plaintiffs M.L.M. and her minor child J.R.L. are Honduran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 27, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. Plaintiff M.L.M. has been released with her child for medical reasons due to the fact that she is well into the third trimester of her current pregnancy.

63.     Plaintiffs C.C.G. and her minor child E.C.G. are Salvadoran nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 25, 2019. Their negative credible fear determinations were affirmed by the immigration judge on October 17, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

64.     Plaintiffs B.C.A. and her minor child G.S.C. are Ecuadorian nationals who seek protection from persecution and torture in the United States. They were placed in credible fear proceedings, attended their initial credible fear interview, and were served with negative credible fear determinations on September 17, 2019. Their negative credible fear determinations were affirmed by the immigration judge on September 30, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

65.     Plaintiffs L.M.P. and her children Y.M.M. and L.P.M. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 5, 2019 and attended their initial credible fear interview on October 14, 2019. They were interviewed by Frank Natividad, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 30, 2019. The negative decisions were affirmed by an immigration judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

66.     Plaintiffs A.G.P. and her children D.S.G. and A.S.G. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 3, 2019 and attended their initial credible fear interview on October 15, 2019. They were interviewed by Eric Peters, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 30, 2019. The negative decisions were affirmed by an immigration judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

67.     Plaintiffs I.G.V. and her child M.S.G. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 3, 2019 and attended their initial credible fear interview on October 9, 2019. They were interviewed by Benjamin Rodriguez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 31, 2019. The negative decisions were affirmed by an immigration judge on December 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

68.     Plaintiffs C.R.R. and her children I.G.R. and V.G.R. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 10, 2019 and attended their initial credible fear interview on October 26, 2019. They were interviewed by Benjamin Rodriguez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 1, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

69.     Plaintiffs M.R.S. and her child J.H.R. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 4, 2019 and attended their initial credible fear interview on October 30, 2019. They were interviewed by Sheila Solaimani, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 1, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

70.     Plaintiffs E.G. and her child J.G.M. are Brazilian nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 29, 2019 and attended their initial credible fear interview

on October 12, 2019. They were interviewed by Michael Guz, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 31, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

71.     Plaintiffs B.G.C. and her child S.M.G. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 1, 2019 and attended their initial credible fear interview on October 11, 2019. They were interviewed by D. Tipton, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 31, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

72.     Plaintiffs T.S.J. and her children L.P.S. and G.S.J. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 29, 2019 and attended their initial credible fear interview on October 18, 2019. They were interviewed by R. Roberts, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 1, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

73.     Plaintiffs C.M.B. and her children E.G.M., C.G.M., and D.G.M. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 25, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Eugenio Quinones, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 24, 2019. The negative determinations were affirmed by an Immigration Judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

74.     Plaintiffs I.C.A. and her child S.P.C. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 1, 2019 and attended their initial credible fear interview on October 10, 2019. They were interviewed by Stephen Dougherty, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October

29, 2019. The negative determinations were affirmed by an Immigration Judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

75.     Plaintiffs M.P.O. and her child G.G.L. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 3, 2019 and attended their initial credible fear interview on October 17, 2019. They were interviewed by Harol Pineda, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 1, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

76.     Plaintiffs E.F.R. and her child K.A.F. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 25, 2019 and attended their initial credible fear interview on October 31, 2019. They were interviewed by Ebed Ramirez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 31, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

77.     Plaintiffs D.O.H. and her children L.A.O. and D.A.O. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 24, 2019 and attended their initial credible fear interview on October 7, 2019. They were interviewed by Habacuc Laracuente and Miguel Lemus, who, based upon information and belief, are both CBP agents. The family was served with negative credible fear determinations around October 18, 2019. The negative determinations were affirmed by an Immigration Judge on November 19, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

78.     Plaintiffs N.B.C. and her child J.B.M. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 26, 2019 and attended their initial credible fear interview on October 7, 2019. They were interviewed by Hugh Pacheco, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 18, 2019. The negative determinations were affirmed by an Immigration Judge on November 14, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

79.     Plaintiffs S.J.A. and her child W.A.A. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 4, 2019. They were interviewed by Laura Hendrickson, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 18, 2019. The negative determinations were affirmed by an Immigration Judge on November 14, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

80.     Minor plaintiff A.V.M. is a Guatemalan national who entered the united states accompanied by her mother, who was placed in reasonable fear proceedings. A.V.M. was placed in credible fear proceedings on September 29, 2019 and attended her initial credible fear interview on October 14, 2019. She was served with negative credible fear determination on October 17, 2019. The negative determination was affirmed by an Immigration Judge on November 14, 2019. She is detained at the South Texas Family Residential Center in Dilley, Texas.

81.     Plaintiffs M.A.R. and her child S.R.S. are Brazilian nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 11, 2019. They were interviewed by Perry Navarre, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 22, 2019. The negative determinations were affirmed by an Immigration Judge on November 21, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

82.     Plaintiffs O.T.G. and her child T.T.G. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 3, 2019 and attended their initial credible fear interview on October 15, 2019. They were interviewed by Perry Navarre, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 24, 2019. The negative determinations were affirmed by an Immigration Judge on November 21, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

83.     Plaintiffs M.T.T. and her child Y.L.T. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Jacob Valdez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 14, 2019. The negative determinations were affirmed by an Immigration Judge on November 12, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

84.     Plaintiffs R.C.H. and her child E.P.C. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Andres Lopez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 9, 2019. The negative determinations were affirmed by an Immigration Judge on November 5, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

85.     Plaintiffs M.J.P. and her children A.M.P., A.P.P., and C.P.P. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 17, 2019 and attended their initial credible fear interview on September 20, 2019. They were interviewed by Laura Hendrickson, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 4, 2019. The negative determinations were affirmed by an Immigration Judge on November 4, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

86.     Plaintiffs E.C.B. and her children Y.M.C., C.G.C., and I.C.B. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 21, 2019 and attended their initial credible fear interview on September 28, 2019. They were interviewed by Luis Valdez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 10, 2019. The negative determinations were affirmed by an

Immigration Judge on November 13, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

87.     Plaintiffs I.H.L. and her child S.R.H. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 23, 2019 and attended their initial credible fear interview on September 30, 2019. They were interviewed by Andres Lopez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 8, 2019. The negative determinations were affirmed by an Immigration Judge on November 5, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

88.     Plaintiffs L.M.B. and her children Z.R.M. and E.R.M. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 26, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Luis Valdez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 10, 2019. The negative determinations were affirmed by an Immigration Judge on November 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

89.     Plaintiffs C.H.G. and her child M.G.H. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 25, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Ruth Hernandez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 26, 2019. The negative determinations were affirmed by an Immigration Judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

90.     Plaintiffs L.M.V. and her child C.A.M. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 11, 2019. They were interviewed by Ruth Hernandez and E. Garayua, who, based upon information and belief, are both CBP agents. The family was served with negative credible fear

determinations on October 30, 2019. The negative determinations were affirmed by an Immigration Judge on December 2, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

91.     Plaintiffs T.C.L. and her child A.P.C. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 5, 2019 and attended their initial credible fear interview on October 16, 2019. They were interviewed by Andres Lopez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 31, 2019. The negative determinations were affirmed by an Immigration Judge on December 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

92.     Plaintiffs J.C. and her child E.B.V. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 5, 2019 and attended their initial credible fear interview on October 14, 2019. They were interviewed by Jacob Valdez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 30, 2019. The negative determinations were affirmed by an Immigration Judge on December 3, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

93.     Plaintiffs L.M.L. and her child M.R.M. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 13, 2019 and attended their initial credible fear interview on September 18, 2019. They were interviewed by Laura Hendrickson and Jacob Valdez, who, based upon information and belief, are both CBP agents. The family was served with negative credible fear determinations on October 4, 2019. The negative determinations were affirmed by an Immigration Judge on November 4, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

94.     Plaintiffs T.R.M. and her child F.G.R. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 7, 2019 and attended their initial credible fear interview on September 18, 2019. They were interviewed by Jonathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on

October 10, 2019. The negative decisions were affirmed by an immigration judge on November 13, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

95.      Plaintiffs L.V.M. and her children M.B.V. and E.B.V. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 3, 2019. They were interviewed by Johnathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 8, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

96.      Plaintiffs D.P.T. and her child I.M.P. are Venezuelan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 9, 2019 and attended their initial credible fear interview on October 16, 2019. They were interviewed by Johnathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 7, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

97.      Plaintiffs B.H.I. and her child D.M.H. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 5, 2019 and attended their initial credible fear interview on October 14, 2019. They were interviewed by Johnathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

98.      Plaintiffs R.U.B. and her child J.M.U. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 5, 2019 and attended their initial credible fear interview on October 28, 2019. They were interviewed by Johnathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 8, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

99.      Plaintiffs T.G.M. and her child K.G.G. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 28, 2019 and attended their initial credible fear interview on October 26, 2019. They were interviewed by Johnathan Dickey, who, based upon information

and belief, is a CBP agent. The family was served with negative credible fear determinations on November 14, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

100.    Plaintiffs I.C.P. and her child H.A.C. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 2, 2019 and attended their initial credible fear interview on October 9, 2019. They were interviewed by Johnathan Dickey, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 18, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

101.    Plaintiffs S.R.F. and her child C.M.R. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 15, 2019 and attended their initial credible fear interview on October 30, 2019. They were interviewed by Jason Torrick, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 5, 2019.They are detained at the South Texas Family Residential Center in Dilley, Texas.

102.    Plaintiffs M.J.V. and her child J.H.J. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 17, 2019 and attended their initial credible fear interview on October 28, 2019. They were interviewed by Jason Torrick, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 6, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

103.    Plaintiffs E.M.R. and her child C.S.M. are Salvadoran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 14, 2019 and attended their initial credible fear interview on October 25, 2019. They were interviewed by Jason Torrick, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 7, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

104.    Plaintiffs A.G.C. and her child Y.M.G. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 30, 2019 and attended their initial credible fear interview on October 30, 2019. They were interviewed by Jason Torrick who, based upon information and

belief, is a CBP agent. The family was served with negative credible fear determinations on November 13, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

105.    Plaintiffs I.L.L. and her child K.H.L. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 28, 2019 and attended their initial credible fear interview on November 13, 2019. They were interviewed by Jason Torrick, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 13, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

106.    Plaintiffs Z.C.G. and her child D.R.C. are Guatemalan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 18, 2019 and attended their initial credible fear interview on November 8, 2019. They were interviewed by Jason Torrick, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on November 22, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

107.    Plaintiffs H.R.L. and her children V.G.R., F.G.R., D.G.R., M.G.R., and A.G.R. are Honduran nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 7, 2019 and attended their initial credible fear interview on September 14, 2019. They were interviewed by Ruth Hernandez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on September 25, 2019. They went before an immigration judge on December 2, 2019; however, that judge found that he had no jurisdiction because their Notices to Appear under the Migrant Protection Protocols had already been filed in San Antonio immigration court. They are detained at the South Texas Family Residential Center in Dilley, Texas.

108.    Plaintiffs A.C.G. is a Honduran national and her children A.R.G. and M.R.G. are Mexican nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on October 12, 2019 and attended their initial credible fear interview on November 4, 2019. They were interviewed by Ruth Hernandez, who, based upon information and belief, is a CBP agent. The family was served with

negative credible fear determinations on November 14, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

109.    Plaintiffs I.R.R. and her child E.A.R. are Nicaraguan nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 7, 2019 and attended their initial credible fear interview on September 14, 2019. They were interviewed by Steven Clark, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on October 4, 2019. The negative decisions were affirmed by an immigration judge on October 24, 2019. They are detained at the South Texas Family Residential Center in Dilley, Texas.

110.    Plaintiff M.Z.L. is a Peruvian national who seeks protection from persecution and torture in the United States. She was placed in credible fear proceedings on September 13, 2019 and attended her initial credible fear interview on September 27, 2019. She was interviewed by Julie Dutton, who, based upon information and belief, is a CBP agent. She was served with a negative credible fear determination on October 18, 2019. The negative decision was affirmed by an immigration judge on November 14, 2019. M.Z.L. was released from detention with a final order of removal on November 27, 2019.

111.    Plaintiffs I.M.V. and her child J.T.M. are Colombian nationals who seek protection from persecution and torture in the United States. The family was placed in credible fear proceedings on September 13, 2019 and attended their initial credible fear interview on September 17, 2019. They were interviewed by Benjamin Rodriguez, who, based upon information and belief, is a CBP agent. The family was served with negative credible fear determinations on September 26. The negative decisions were affirmed by an immigration judge on October 24. They were released from detention with final orders of removal on November 27, 2019.

112.    Defendant William P. Barr is the Attorney General of the United States and the head of the United States Department of Justice ("DOJ"). Defendant Barr is responsible for advising the remaining Defendants on the lawful administration and enforcement of the immigration laws and policies, including the execution of any new policies or procedures for asylum seekers, pursuant to 8 U.S.C. § 1103. Defendant Barr has ultimate authority over the

Executive Office for Immigration Review ("EOIR"), the agency within DOJ responsible for the immigration court system. He is sued in his official capacity.

113.    Defendant James McHenry is the Director of the Executive Office for Immigration Review ("EOIR"), the federal agency within DOJ that includes immigration judges, the immigration courts, and the Board of Immigration Appeals ("BIA").  EOIR is responsible for conducting administrative adjudicative proceedings, including adjudicating applications for asylum, withholding of removal, and relief under the Convention Against Torture, bond redeterminations, custody redeterminations, and hearings to determine appropriate restrictions on liberty for individuals detained by ICE. He is sued in his official capacity.

114.    Defendant Chad F. Wolf was appointed the Acting Secretary of the Department of Homeland Security ("DHS"), which oversees the component agencies responsible for enforcing the immigration laws of the United States. Those component agencies include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").  Defendant Wolf's appointment was made pursuant to an "Amendment to the Order of Succession for the Secretary of Homeland Security" issued by then-Acting Secretary Kevin McAleenan on November 8, 2019.  Acting Director Wolf's appointment is presently being investigated by Congress as an *ultra vires*, unconstitutional, and illegal appointment.  *See* Letter of from H.R. Committee on Homeland Security and Committee on Oversight and Reform to Comptroller General of the United States (Nov. 15, 2019), *available at*        https://oversight.house.gov/sites/democrats.oversight.house.gov/files/191115%20T%20Dodaro%20re%20Letter%20to%20GAO%20on%20Wolf-Cuccinelli%20Appointment.pdf.[5]

---

[5] *See also* https://www.rollcall.com/news/legality-wolf-cuccinelli-dhs-appointments-questioned.

The appointment of Wolf's predecessor, purported Acting Secretary Kevin K. McAleenan, is also alleged to have violated the law, as Acting Secretary McAleenan's appointment was subject to similar legal infirmities. *See id.* Thus, authorization by either Acting Director McAleenan or Acting Director Wolf for any Challenged Actions in this case may be illegal, unconstitutional, and/or void ab initio under, *inter alia*, the Appointments Clause, U.S. Const., Art. 2, Sec. 2, Exec. Order No. 13753, 81 Fed. Reg. 90667 (Dec. 9, 2016) (setting the order of succession for DHS), and the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346(a)(1) (setting limit on appointment of Acting officials). Defendant Wolf is sued in his official capacity.

115.    Defendant Matthew T. Albence is the Acting Director of ICE, the agency within DHS that is responsible for carrying out removal orders, oversees enforcement and removal operations, and is responsible for the detention of noncitizens throughout the United States. Defendant Albence has direct authority over all ICE policies, procedures, and practices relating to the detention and deportation of noncitizens. He is sued in his official capacity.

116.    Defendant Mark Morgan is the Acting Commissioner of CBP, the agency within DHS that is responsible for the initial processing and detention of noncitizens apprehended near the United States Border. In that capacity, Defendant Morgan has direct authority over all CBP policies, procedures, and practices relating to the apprehension of asylum seekers. He is sued in his official capacity.

117.    Defendant Kenneth T. Cuccinelli was on November 13, 2019, named to be purported Acting Deputy Secretary of Homeland Security by newly sworn-in purported Acting Secretary of Homeland Security Chad Wolf. Defendant Cuccinelli also represents himself as the purported Acting Director of USCIS, and the legality of his appointment and decisions in both

capacities is questioned.[6] USCIS is the agency within DHS that is responsible for the adjudication of immigration benefits to noncitizens in the United States, including all functions of the Asylum Office. In that capacity, Defendant Cuccinelli is purported to have direct authority over all USCIS policies, procedures and practices relating to benefits adjudication. He is sued in his official capacity.

118.    Defendant Andrew Davidson is the Acting Chief of the USCIS Asylum Division, the division within USCIS that is responsible for conducting CFIs, RFIs, and asylum interviews for affirmative asylum applicants. In that capacity, Defendant Davidson has direct authority over all USCIS policies, procedures, and practices relating to fear screening procedures for persons seeking protection from persecution or torture. He is sued in his official capacity.

## FACTS

**A.    U.S. Obligations to Provide Safe Harbor to Persons Fearing Persecution or Torture**

119.    The current asylum system was enacted as part of the Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102, and was intended to bring U.S. law into conformity with our obligations under the 1951 United Nations Convention Relating to the Status of Refugees ("Refugee

---

[6] Infirmities to purported Acting Director Cuccinelli's appointment at USCIS are set forth in a complaint recently filed in this District, namely that he does not satisfy the legal requirements to serve as the director under the FVRA or the Constitution. *L.M.-M. v. Cuccinelli*, 1:19-cv-02676, Compl. (D.D.C. Sept. 6, 2019). Infirmities to his appointment at DHS parallel those of purported Acting Secretary Wolf, as set forth above and summarized at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/191115%20T% 20Dodaro%20re%20Letter%20to%20GAO%20on%20Wolf-Cuccinelli%20Appointment.pdf. *See also* Letter from H.R. Comm. on the Judiciary, et al. to Acting Sec'y of Homeland Security Kevin K. McAleenan (June 19, 2019), *available at* https://judiciary.house.gov/sites/democrats.judiciary.house.gov/files/documents/06-18-2019%20Letter%20to%20Acting%20Secretary%20McAleenan.pdf.  The Attorney General and U.S. Attorney for the District of Columbia have also been asked to review the Cuccinelli appointment.  *See* Letter from Democracy Forward et al. to Att'y Gen. William Barr & U.S. Att'y Jessie K. Liu (July 22, 2019), *available at* https://democracyforward.org/wp-content/uploads/2019/07/Cuccinelli- Letter.pdf.

Convention") and the 1967 United Nations Protocol Relating to the Status of Refugees.  Consistent with international law, the definition of "refugee" does not require a showing of certain harm. Instead, individuals can establish eligibility for asylum based on a "well-founded fear of persecution."  The Supreme Court directs that a showing of a 1 in 10 chance of persecution is sufficient to satisfy that standard.  *See INS v. Cardozo-Fonseca*, 480 U.S. 421, 430, 440 (1987).

120.    Even assuming, *arguendo*, that the July 16, 2019 interim final rule represents a lawful exercise of Defendants' discretion, and that Defendants Wolf and Cuccinelli (and former Acting Secretary McAleenan) were legally appointed to their positions, Defendants must still comply with the *non-refoulement* obligations of the United States, as well as Defendants' statutory, regulatory, and constitutional obligations to provide Plaintiffs with a fair process for asylum applicants and fear determinations.

121.    The principle of *non-refoulement* was first articulated in Article 33 of the Refugee Convention. That article provides as follows:

> No Contracting State shall expel or return (refouler) a refugee in any manner whatsoever to the frontiers of territories where his [or her] life or freedom would be threatened on account of his [or her] race, religion, nationality, membership of a particular social group or political opinion.

122.    The Defendants' *non-refoulement* obligations are found in Article 33 of the Refugee Convention,[7] Article 3 of the Convention Against Torture ("CAT"), and the domestic statutes that implement these two treaties.

---

[7]  Although it is not a party to the Refugee Convention, the United States adopted the 1967 Protocol Relating to the Status of Refugees, which incorporates the Refugee Convention's prohibition on *refoulement*.  See 1967 Protocol Relating to the Status of Refugees, art. 1(1) & 7(1) (stating that signatories "undertake to apply articles 2 to 34 inclusive of the [Refugee] Convention" without reservation).

123.    As part of the Refugee Act of 1980, Congress enacted the withholding of removal statute, codified at 8 U.S.C. § 1231(b)(3), to "implement the principles agreed to" in the Refugee Convention, with the specific intent to ensure that the United States does not "expel or return" noncitizens to any place where they face likelihood of persecution. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999).   And as part of FARRA, Congress codified Article 3 of CAT, making explicit the prohibition against *refoulement*:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture . . . .

FARRA § 2242(a), Pub. L. No. 105-207, Div. G. Title XXI, 112 Stat. 2681 (codified at 8 U.S.C. § 1231).

124.    As adopted and statutorily codified, the *non-refoulement* guarantees in both the Refugee Convention and CAT provide procedural safeguards that prohibit removal or return of non-citizens to countries where their life or liberty may be threatened.   *See generally I.N.S. v. Stevic*, 467 U.S. 408, 426 (1984) (recognizing non-citizens' statutory "entitlement" to withholding under § 1231(b)(3)); *Khouzam v. Attorney General*, 549 F.3d 235, 256–57 (3d Cir. 2008) ("[T]he basic dictates of due process must be met . . . where, as here, mandatory statutory relief [is] at issue.").

**B.    The Prior Expedited Removal and Credible Fear Process**

125.    Prior to 1996, to ensure that the government complied with (among other things) its non-refoulement obligations, noncitizens were generally entitled to a full hearing in immigration court before they could be removed, no matter whether they were seeking admission at the border or had already entered the country.   They were also entitled to, both administrative appellate review before the BIA and judicial review in federal court.

126.   In 1996, Congress established a highly truncated removal mechanism called "expedited removal" that could be used for certain noncitizens seeking admission. Noncitizens subject to expedited removal are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i).

127.   Congress, however, was careful to carve out an exception for individuals who express a fear of return to their home countries.   *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30(f).

128.   If an individual subject to expedited removal indicates a fear of returning to his or her home country or intention to apply for asylum, the immigration officer *must* refer the individual for an interview with an asylum officer.   8 U.S.C. § 1225(b)(1)(A)(ii) & (b)(1)(B); 8 C.F.R. § 235.3(b)(4); *see also* 8 C.F.R. § 208.30. Congress also required the asylum officers conducting these interviews to have "professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators" of asylum applications and to be "supervised by an officer" who has both like training and "substantial experience adjudicating asylum applications." 8 U.S.C. § 1225(b)(1)(E); *see also* 8 C.F.R § 208.1 (promulgating specific training directive for asylum officers). This role has been performed by the Refugee, Asylum, and International Operation division ("RAIO") within USCIS.   *E.g.*, 8 C.F.R. § 208.2(a).

129.   If the noncitizen is referred to an asylum officer, the officer conducts (with the assistance of an interpreter if necessary) a "credible fear interview." The CFI is designed "to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d).

130.   To that end, CFIs include procedural protections. The asylum officer must "conduct the interview in a non-adversarial manner." 8 C.F.R. § 208.30(d).   Further, in determining whether

credible fear is satisfied, the officer must "consider whether the alien's case presents novel or unique issues that merit consideration in a full hearing before an immigration judge." 8 C.F.R. 208.30(e)(4). And the interviewee is entitled to "information concerning the asylum interview" (i.e., what process and standards apply) and to "consult with a person or persons of the alien's choosing prior to the interview or any review." 8 U.S.C. §1225(b)(1)(B)(iv). Hence, by law, interviewees cannot be kept in the dark regarding the process or standards applicable for their interview, or denied the opportunity to reasonable consult with counsel or an advocate concerning their interview. *Id.*; *see also* 8 C.F.R. § 235.3(b)(4)(ii).

131.   At the end of the interview, the asylum officer determines whether the interviewee has a credible fear of persecution. A credible fear is defined by law as "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum[.]" 8 U.S.C. §1225(b)(1)(B)(v). To ultimately prevail on an asylum claim itself, the applicant need only establish that there is a 10% chance that he or she will be persecuted on account of one of the five protected grounds for asylum. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 439-40 (1987); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018). Thus, to prevail at a credible fear interview, the applicant need only show a "significant possibility" of asylum eligibility—i.e., a "significant possibility" of a 1 in 10 chance of persecution, or a *fraction* of a 10% chance of persecution. *See* 8 U.S.C. §1225(b)(1)(B)(v).

132.   If a noncitizen is found by the asylum officer to have a "credible fear," the individual is taken out of the expedited removal process and referred for a regular removal hearing before an immigration judge. At that hearing, they will have the opportunity to develop a full

record before the judge, and they may appeal an adverse decision to the BIA and the relevant federal court of appeals.  8 C.F.R. § 208.30(f); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

133.    If the asylum officer makes a negative credible fear determination, the officer must provide a written record of the determination that "shall include a summary of [all] material facts stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in light of [the] facts, the alien has not established a credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii)(II).  "A copy of the officer's interview notes shall be attached to the written summary." *Id*.  Supervisory asylum officers then review and approve the negative credible fear determination. *See* 8 C.F.R. 208.30(e)(8); *cf*. 8. U.S.C. § 1225(b)(1)(E)(ii).

134.    Upon the individual's request, the agency must provide for prompt review of the asylum officer's negative credible fear determination by an immigration judge.  8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see also* 8 C.F.R. § 208.30(g)(1). In conducting that review, the immigration judge has access to "[t]he record of the negative credible fear determination." 8 C.F.R. § 208.30(g)(2). Thus, the integrity of the record developed by the interviewer is critical to the exercise of not only the right to apply for asylum, but also the right to review, as it has been here for Plaintiffs. The immigration judge's decision is administratively "final and may not be appealed," 8 C.F.R. § 1208.30(g)(2)(iv)(A), further emphasizing the critical importance of the integrity of the interviewer's record.  That record is also reviewed by Asylum Officers when later processing any later asylum application, again highlighting the importance of its integrity.

135.    Noncitizens who receive a negative credible fear determination are issued an expedited removal order, which comes with significant consequences beyond removal itself. Noncitizens who are removed pursuant to expedited removal orders are subject to a five-year bar on admission to the United States. 8 U.S.C. § 1182(a)(9)(A)(i). Thus, improper and erroneous

negative fear determinations result in severe harm, as they have for Plaintiffs here, by barring individuals from later admission and materially prejudicing their opportunity to apply for asylum that should be properly available to them.

136.    The reason for the low threshold at the credible fear stage is straightforward.  An asylum claim is highly fact-specific, often requires expert testimony and extensive evidence about country conditions, and takes significant time, resources, and expertise to develop.  Asylum claims may also involve complex legal questions.  In the expedited removal system, however, abbreviated credible fear proceedings occur within days of arrival, with little or no preparation or assistance by counsel, little to no knowledge of asylum law by the applicant, and no opportunity to examine witnesses or gather evidence while the individual is detained.  It is thus highly unrealistic to expect applicants in the expedited removal system to present a fully developed asylum claim. Accordingly, Congress established a low threshold at the credible fear stage to ensure that all potentially valid asylum claims could be developed properly in a full trial-type hearing before an immigration judge.  Congress viewed this credible fear process as an essential safeguard to ensure bona fide asylum seekers would not be summarily removed.

137.    As a result of the Challenged Actions, threshold safeguards in place for applicants seeking protection from persecution or torture have now been eliminated.  These changes have resulted, and will continue to result, in many applicants, including vulnerable children, being wrongfully returned to persecution or torture.

## C.    Defendants' Asylum Bar and the Changes to the Process of Evaluating Fear

138.    On July 16, 2019, the government Defendants published a regulation that purports, with limited exceptions, to bar asylum applications from any asylum seekers who passed through any third country on the way to the United States without applying for, and receiving a denial of,

protection in one such country (the "Asylum Bar"). The government Defendants have also radically changed their handling and evaluation of migrants in expedited removal for asylum, withholding of removal, and relief under CAT. These changes are chaotic, and do not comport with existing federal law, regulations, or agency policies.

139.    In this new regime, if the immigration officer determines that an alien subject to expedited removal is barred from asylum eligibility (e.g., under Defendants' new Asylum Bar), the alien is summarily found not to have a credible fear of persecution, typically without any supervisor review as required (8 C.F.R. 208.30(e)(8), *see also* U.S.C. § 1225(b)(1)(E)(ii)), and announced during the CFI interview itself. The immigration officer then proceeds to determine only if a *reasonable* fear of persecution exists for withholding of removal or CAT protection. Reasonable fear represents a higher standard than credible fear. It is defined by regulation as "a reasonable possibility that [the applicant] would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. § 208.31(c). If the alien does not establish a reasonable fear of persecution during the interview to the interviewer's satisfaction, a written notice of decision is issued, subject to review by an immigration judge under the higher standard of reasonable fear (i.e., not the more moderate credible fear standard).[8]

140.    Under this new procedure, individuals purportedly subject to the Asylum Bar are categorically unable to avoid persecution by establishing a significant possibility of asylum eligibility under the credible fear standard.  Defendants have thus used their Asylum Bar and the

---

[8] As detailed below, in the rare instance that a positive credible fear determination is made, Defendants now also require additional and pretextual "fraud detection" review designed to result in arbitrary and baseless reversals of positive determinations.

application of the follow-along Challenged Actions described here to prevent further screening of aliens (including Plaintiffs) under the standard specified by Congress.

**D.     The Challenged Actions and Their Inconsistency with Expedited Removal Law**

141.    In recent months, Plaintiffs have been subjected to a series of changes at the South Texas Family Residential Center, located in Dilley, Texas. Defendants have unilaterally eliminated protections prescribed to each Plaintiff by statute and regulation. The Challenged Actions have frustrated Plaintiffs' ability to successfully seek protection from persecution and torture in the United States and have violated the government's *non-refoulement* obligations.

142.    On information and belief, since July 16, 2019, the credible fear passage rates at the South Texas Family Residential Center have diminished from over 90% of credible fear applicants, to around 10% or fewer of applicants, reflecting what has happened to Plaintiffs here.

143.    Prior to the initiation of their credible fear screenings, Plaintiffs (who are wholly comprised of mothers and their children) completed dangerous and arduous journeys to the United States, subsequent to incidents of sexual and physical violence, or threats of violence, that triggered their flights from their home countries. As a consequence of this past trauma, many of the Plaintiffs suffer from symptoms of post-traumatic stress disorder ("PTSD"), anxiety, and depression.[9]

144.    After completing their journeys to the United States—which lasted for more than a month for some Plaintiffs—all of the Plaintiffs were apprehended and placed in CBP custody, where they remained for days in cages and/or cement cells, without access to privacy, showers, beds, telephones, pillows, hot meals, or adequate medical attention.

---

[9] *Cf.* Allen Keller et al., *Pre-Migration Trauma Exposure and Mental Health Functioning Among Central American Migrants Arriving at the U.S. Border*, 12 PLOS ONE (Jan. 10, 2017) (PTSD, anxiety, and depression reported in Central American migrants), *available at* https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0168692.

145.    Against this backdrop, while in CBP custody, Plaintiffs were placed in proceedings under Section 235 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225, and issued an Order of Expedited Removal.

146.    Despite the fact that there has been no change to the Defendants' treaty or statutory obligations, Defendants and/or those operating under their supervision or control have applied a series of ever-changing, chaotic directives, guidelines, policies, actions, and procedures to credible fear screenings without regard as to whether such changes comport with the law, regulations, or Plaintiffs due process rights. The dramatic instability Defendants have wrought on the fear screening process has severely prejudiced Plaintiffs, more than half of whom are children.

147.    First, Defendants instituted the Challenged Action to "*Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures.*"[10] In fact, as noted above, Defendants have not even disclosed *to the public* many of their new changes to the process of screening credible and reasonable fear. Plaintiffs have thus been deprived of notice, and have experienced constant confusion because, throughout their detention, Defendants have failed to inform Plaintiffs of the standards and process by which Plaintiffs' claims would be judged. Plaintiffs have a right to a legal orientation in advance of their credible fear interviews and to be oriented to any changes in legal standards when they occur. *E.g.*, 8 C.F.R. §§ 235.3(b)(4), 208.30(d)(2). As a matter of fundamental due process, Plaintiffs have a right to know what standards apply in the procedures to which they are subjected, who is questioning them, and how their responses will be used. Defendants' failure here to meaningfully orient Plaintiffs thus violates Plaintiffs their rights.

---

[10] In the absence of any official policy directive, guidance, or procedure names (prior to the discovery process), this Complaint presents temporary names for the Challenged Actions for purposes of distinguishing them. Plaintiffs will revise this when Defendants disclose any internal names assigned or used for their actions, which Defendants have not yet disclosed to the public.

148.     Second, Defendants have implemented a new policy of proceeding with fear interviews absent necessary staffing, training, and direction for those conducting them. Upon information and belief, Defendants have conspired to limit the information they put forth in writing, impeding necessary training opportunities and direction for front-line adjudicators. This Challenged Action of "*Proceed Without Required Staffing, Training, or Guidance*," has impacted the integrity and consistency of CFIs. Each variation of the changing policies, standards, and practices has been implemented inconsistently and haphazardly to the detriment of each Plaintiff. For example, interviewers did not receive appropriate, required training, including training to assess whether aliens fall under exceptions to the newly promulgated Asylum Bar, such as human trafficking exceptions, or training in how to assess and screen whether the Asylum Bar applies to a given credible fear applicant in advance of Plaintiffs' CFIs. Beginning in September 2019, Defendants have even started to use CBP law-enforcement officers in Dilley to conduct credible fear interviews, despite the fact that, on information and belief, these CBP officers lack the training that, under the INA and related regulations, constitutes a necessary prerequisite to acting as an Asylum Officer (*e.g.*, 8 U.S.C. § 1225(e); 8 C.F.R. § 208.1).[11] Many of the Plaintiffs have been interviewed by such CBP officers instead of by asylum officers as required by law, including without limitation, M.A.M., G.M.A., Y.V.O., E.P.V., D.A.M., Y.H.A., A.D.L., M.D.D., G.R.R., D.A.A., L.G.G., W.C.G., R.L.A., N.C.L., B.C.A., G.S.C., M.C.P., and J.C.P., with most if not all of the Plaintiffs incorporated into the Amended Complaint on October 17, 2019 being subjected to this practice.

---

[11] In the context of CAT, "competent authorities" are required to "take into account all relevant considerations." United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, Art. 3(2).  This obligation is not and cannot be satisfied by an adversarial process conducted by improperly trained law enforcement agents.

149.     Third, since July 16, 2019, Defendants have initiated the Challenged Action to "*Issue Summary Negative Determinations to Eliminate Supervisory Review and Concurrence and to Avoid Developing a Complete Written Record.*" In sum, Defendants have truncated the fact development and discussion of the merits in Plaintiffs' fears in interviews, unilaterally determining that Plaintiffs are ineligible for asylum. Instead, Defendants summarily announce negative asylum determinations, often directly to the applicant during the interview. Previously, negative decisions were never announced during an interview itself. Rather, such decisions were provided later after all testimony was solicited in support of the asylum-seeker's claim in a non-adversarial interview designed "to elicit all relevant and useful information bearing on whether the applicant has a credible fear" as required by law, and only after review and concurrence by a supervisory asylum officer. *E.g.*, 8 C.F.R. § 208.30(d). As a result of this Challenged Action: (1) Plaintiffs are intimidated and discouraged from asserting their rights; (2) Plaintiffs are denied the right to have the record of their fear of persecution or torture fully, adequately, and accurately memorialized in the record of their interview as future evidence in pursuing asylum or *non-refoulement*, and (3) Plaintiffs are denied the right to a meaningful supervisory review of credible fear determinations under, for example, 8 C.F.R. §§ 208.30(e)(7), 235.3(b)(2), (b)(7).

150.     Fourth, even where Defendants have not issued summary negative determinations during an interview, Defendants still now implement the Challenged Action to "*Limit Fact-Finding Relevant to a Significant Possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture.*" Interviewers now improperly limit questioning, so they fail to elicit testimony necessary to develop all facts relevant or supportive of an asylum-seeker's eligibility for asylum, withholding of removal, and CAT protection under the "significant possibility" standard required for credible fear proceedings. And again this conflicts

with the law. *E.g.*, 8 C.F.R. § 208.30(d). Defendants have thus generated categorically incomplete and inaccurate evidentiary records of the bases for Plaintiffs' claims to asylum or *non-refoulement*, prejudicing their present and future petitions.[12]

151.    Fifth, Defendants have now also initiated the Challenged Action to "*Make Interviews Adversarial*," contrary to the law. *See* 8 C.F.R. § 208.30(d). Many Plaintiffs were interviewed not once, but three or more times on three or more separate dates, over a timespan of several weeks or more, often by multiple officers. These law enforcement-type interrogation tactics and consequent delay in final adjudication of Plaintiffs' claims intimidate Plaintiffs, as well as prejudice their ability to recall the exact specifics of what was discussed at each prior interview, seeking to give rise to an inaccurate impression of inconsistency where there is none. As noted above, Defendants have also advanced an improper adversarial interrogation regime by now relying on CBP law enforcement officers to interview Plaintiffs instead of using trained asylum officers as required by law.[13]

---

[12]   The above Challenged Actions thus impair Plaintiffs' rights to petition for asylum by, among other things, distorting the record of their fear determinations.  As a result of the Challenged Actions, this record evidence, which will be used to evaluate any later asylum petition, is necessarily incomplete and/or improperly or inaccurately memorialized by improperly trained personnel in violation of the law.  Thus, the evidence of Plaintiffs' interviews—to which the law states Plaintiffs are entitled—was bastardized *ab initio*, prejudicing later asylum applications.

[13]   Law enforcement agents from CBP—the agency that detained and held Plaintiffs in custody—are not neutral, unbiased arbiters of asylum law able to conduct "non-adversarial" interviews. *See, e.g.*, John Washington, *Bad Information: Border Patrol Arrest Reports Are Full of Lies That Can Sabotage Asylum Claims*, the Intercept (Aug. 11, 2019), *available at* https://theintercept.com/2019/08/11/border-patrol-asylum-claim/; Human Rights First, *Crossing the Line: U.S. Border Agents Illegally Reject Asylum Seekers*, 5–8 (2017), *available at* https://www.humanrightsfirst.org/sites/default/files/hrf-crossing-the-line-report.pdf; A.C. Thompson, *Inside the Secret Border Patrol Facebook Group Where Agents Joke About Migrant Deaths and Post Sexist Memes*, ProPublica (July 1, 2019), available at https://www.propublica.org/article/secret-border-patrol-facebook-group-agents-joke-about-migrant-deaths-post-sexist-memes.

152.    A credible fear interview is psychologically demanding and difficult. It requires the asylum seeker to describe the circumstances that gave rise to their fear of persecution. Asylum seekers must present deeply personal, stigmatizing, and traumatizing details. Frequently, these details have never been relayed to another person, and their disclosure brings the asylum-seeker shame, fear, and/or renewed trauma.  Credible fear interviewees must also answer complicated and nuanced follow-up questions. By using law enforcement officers (*i.e.*, CBP agents) and interrogation-style questioning, including by extending the interview process over a long period of time with repetition of questions, Defendants employ interrogation tactics that render it extremely difficult, if not impossible, for Plaintiffs and other trauma survivors to disclose their experiences to the interrogating officer. The interrogation-style questioning has accordingly harmed Plaintiffs by prolonging their detention in government custody, denying them their right to non-adversarial questioning by a neutral, trained interviewer, denying them their right to the development of an accurate, complete evidentiary record of their fear, and exacerbating the negative consequences they experience as a result of their ongoing detention. Indeed, at Dilley, women survivors of horrific instances of gender-based violence are subject to interviews by at least one CBP agent whose public Facebook page features a picture of a CD entitled "Songs I'll choke you out to while wrecking your uterus."

153.    This Challenged Action thus violates each Plaintiff's right to a non-adversarial interview (*see* 8 C.F.R. § 208.30(d)) and creates a hostile interview environment that chills the testimony of credible fear applicants.   As an outcome of this policy, many Plaintiffs believed at the outset of their interview that their deportation was certain. Many Plaintiffs report feeling paralyzed, overwhelmed, intimidated and confused the moment they were informed their credible

fear interview was denied. Other Plaintiffs report giving up before their interview had ever truly begun, believing their case was a lost cause.

154.    Sixth, Defendants have initiated the Challenged Action to "*Limit Migrants' Right to Meaningful Consultation.*"  Defendants now schedule interviews on unnecessarily truncated scheduling without sufficient advance written notice to facilitate Plaintiffs' ability to meaningfully consult with counsel or an advisor, abrogating Plaintiffs' rights. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 208.30(d)(4); U.S. Const., Amend. I; *see also* 5 U.S.C. § 555(b); 8 C.F.R. § 292.5(b).  Access to counsel is further adversely impacted by Defendants' above-noted action of scheduling multiple, repeat interviews, often without sufficient (or any) advance written notice.

155.    Seventh, Defendants have implemented the Challenged Action to "*Apply RFI Standards Without RFI Protections.*" Individuals subject to reasonable fear evaluations under section 241 of the INA, 8 U.S.C. § 1231, still have a right to (1) advance written notice of their reasonable fear interview, (2) in-person orientation to their reasonable fear proceeding by an asylum officer at least 48 hours in advance of their interview, and (3) access to counsel during their reasonable fear proceeding with a properly trained asylum agent. Although Plaintiffs were initially placed in credible fear proceedings under INA 235, 8 U.S.C. § 1225, after Plaintiffs improperly received summary determinations that they are ineligible for asylum (for example, based on application of the Asylum Bar), their respective interviewers would typically and immediately subject Plaintiffs to an RFI-type evaluation and determination, continuing the initial interview but now applying the higher RFI standard. Defendants, however, did not offer or facilitate the protections required by law for RFI interviewees while evaluating Plaintiffs under the heightened RFI standard. For example, Plaintiffs were not provided *advance* notice, including that

they would be subject to RFI standards, a proper *advance* orientation, or meaningful access to consultation with counsel. Rather, Defendants improperly extended the original interview, often interrogating Plaintiffs, including *children*, for hours on end in further violation of the prohibition on interrogation in, for example, 8 C.F.R. § 208.30(d).

156.    Eighth, Defendants have implemented the Challenged Action of "*Do Not Apply the Most Favorable Precedent in CFI Proceedings.*" Specifically, Defendants' interviewers are now rejecting the most favorable case law in credible fear proceedings, when assessing an asylum-seeker's eligibility for withholding of removal, and in assessing relief under the Convention Against Torture. This Challenged Action ignores the permanent injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), which requires the asylum officer to apply the *most favorable* circuit court precedent in credible fear proceedings, regardless of where an asylum-seeker is detained.

157.    Ninth, upon information and belief, Defendants have implemented the Challenged Action of "*Mandatory Concurrence Review by the Fraud Detection Unit.*" This Challenged Action appears to require any cases that have received a positive fear finding by the interviewer, and positive fear concurrence by the supervisory asylum officer, to then be further reviewed by USCIS's Fraud Detection and National Security Directorate. Upon information and belief, this Challenged Action—which applies only to asylum-seekers slated to be issued positive credible fear findings—has resulted in mandatory rescission of the overwhelming majority of cases sent for review subsequent to a follow-up interview conducted in response to guidance provided by the Fraud Detection unit. Yet the members of this "unit" lack experience or training relevant to the adjudication of asylum applications as required by law (*e.g.*, 8 U.S.C. § 1225(e)). This Challenged

Action appears directed at arbitrarily limiting the number of families placed in credible fear proceedings that can obtain positive determinations.

158.    Tenth, Defendants have also implemented the Challenged Action of "*Withholding Facts Relied Upon in Issuing the Credible Fear Determination*." An asylum officer is required to create a written record of his or her determination, including a summary of all material facts as stated by the applicant, and any additional facts relied upon by the officer, in issuing the credible fear determination. 8 CFR 208.30(e)(1). In conflict with this mandate, interviewers now withhold critical information relied upon when issuing a negative fear determination, which among other harms, prejudices and impairs Plaintiffs rights of review by an administrative immigration judge (as Plaintiffs are never fully told of the basis of their denial).

159.    Eleventh, Defendants have also implemented the Challenged Action to "*Abandon Child-Sensitive Treatment in Credible Fear Proceedings*," including by requiring telephonic interviews for families detained at the South Texas Family Residential Center. Since the inception of the South Texas Family Residential Center, asylum officers have conducted *in-person* interviews with mothers and children who are detained in Dilley, Texas. This practice allowed asylum officers to apply child-friendly procedures during the interview process, and to provide protections necessary to mothers, who are required to proceed with their credible fear interview while tasked with caring for their child. This prior procedure allowed asylum officers to ensure mothers who did not feel comfortable providing testimony in the presence of their children were able to leave their children in daycare, and to build trust and rapport with a child in-person prior to questioning the child regarding their history of persecution. Now, however, Defendants have discarded these protective procedures that promoted the required non-adversarial nature of credible fear interviews, 8 C.F.R. § 208.30(d), replacing them with *adversarial* telephonic interviews that

crossover to interrogations, and of children no less. Some plaintiffs have even been deprived of necessary accommodations related to their age and status as asylum-seekers traveling in a family unit in conflict with long-standing practice.[14] This is coupled with, as noted above, DHS's unprecedented policy of conducting credible fear interviews, including of women and children, using CBP officers instead of trained USCIS Asylum Officers, to thus violate Plaintiffs' rights.

160.    Thus, while Defendants have stripped Plaintiffs of protections required in credible fear proceedings, they have simultaneously denied Plaintiffs the benefit of mandatory procedures available to individuals seeking withholding of removal and CAT protection. The policy of subjecting Plaintiffs to a higher burden in threshold fear screenings violates mandatory obligations to ensure that no applicant is returned to a country where they will be subjected to persecution or torture. Defendants have heightened the burden on Plaintiffs unlawfully, and at the same time, have failed to provide safeguards normally present in heightened fear proceedings.

161.    In sum, in recent months, Defendants have radically disregarded the law, changing the fundamental protections afforded by law to Plaintiffs as follows:

| **Prior Regime** | **Defendants' New Illegal Regime** |
| --- | --- |
| 1. Migrants received an orientation on the process and standards for CFIs. | Migrants get no meaningful orientation as required by, e.g., 8 C.F.R. §§ 235.3(b)(4), 208.30(d)(2). |
| 2. CFIs were conducted by experienced, trained asylum officers. | CFIs are conducted by improperly trained agents, violating, e.g., 8 U.S.C. § 1225(e); 8 C.F.R. § 208.1. |

---

[14] USCIS Asylum Division. Asylum Officer Basic Course: Guidelines for Children's Asylum Claims (Mar. 21, 2009).  *Available at* https://cliniclegal.org/sites/default/files/AOBTC_Lesson_29_Guidelines_for_Childrens_Asylum _Claims_0.pdf (last visited September 16, 2019).

3.  CFI determinations were issued after a full discussion of facts and meaningful supervisory review.

Agents make summary decisions mid-interview, ending further discussion or meaningful supervisory review, thwarting, e.g., 8 C.F.R. §§ 208.30(d), 208.30(e)(7), 235.3(b)(2), (b)(7).

4.  Asylum agents developed a complete factual record, permitting meaningful later review.

Agents do not probe all relevant facts, leaving an incomplete record on review, thwarting, e.g., 8 C.F.R. §§ 208.30(d), 208.30(e)(7), 235.3(b)(2), (b)(7).

5.  Interviews were conducted in a neutral, non-adversarial manner.

Interviews are conducted using adversarial interrogation techniques, violating, e.g., 8 C.F.R. § 208.30(d).

6.  Migrants were given meaningful advance notice of interviews and a chance to consult with counsel.

Interrogations occur without meaningful notice, prejudicing the right of consultation under, e.g., 8 U.S.C. § 1225(b)(1)(B)(iv); 8 C.F.R. § 208.30(d)(4).

7.  If migrants are evaluated under the higher RFI standard, they were given advance notice, advance orientation, and access to counsel.

RFI-standard interrogations proceed without meaningful advance notice, orientation, or consultation with counsel afforded to 8 U.S.C. § 1231 interviewees.

8.  Asylum officers applied the most favorable legal precedent in determinations as required by law.

Agents ignore the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018) and apply law of their choosing.

9.  Review for fraud was conducted where reasonable cause existed.

Every positive fear determination is pretextually reviewed for "fraud" without any basis, resulting in arbitrary rescission.

10. Asylum officers disclosed the bases for their determinations.

Agents withhold bases on which negative determinations are made, violating, e.g., 8 CFR 208.30(e)(1).

11. Asylum officers were trained in and applied child-sensitive interviewing procedures.

Children (including as young as toddlers) are subjected to law-enforcement style interrogations, often for hours, in violation of, e.g., 8 C.F.R. § 208.30(d).

162.    Plaintiffs reserve the right to amend this Complaint to rename the above Challenged Actions as the Defendants' internal designations become known through discovery, and to add and challenge other unlawful actions as they become known through the discovery process.

### E.  Defendants' Public Statements on Their Goal of Undermining Asylum Protections

163.    Rather than comply with our asylum laws, Defendants have been open about their desire to weaken asylum protections, particularly for vulnerable immigrant children and families from Central America.  For example, Defendant Cuccinelli once proposed that States should "just point [migrants] back across the river and let them swim for it."  *See* John Binder, *Exclusive–Ken Cuccinelli: States Can Stop Migrant Caravan 'Invasion' with Constitutional 'War Powers*,*'* Breitbart (Oct. 23, 2018), *available at* https://www.breitbart.com/politics/2018/10/23/exclusive-ken-cuccinelli-states-can-stop-migrant-caravan-invasion-with-constitutional-war-powers/. According to Defendant Cuccinelli, the States are "actually invaded" and "under war" and need offer migrants "no due process."  *Id.*[15]

164.    Indeed, Defendants have repeatedly expressed their hostility toward migrants from Mexico and Central America and of the asylum claims of children and families from those countries, urging higher credible fear screening standards in order to speed the removal of such individuals.  As Defendant Cuccinelli has publicly declared, the sentiment memorialized on the Statute of Liberty to "Give me your tired, your poor" was "referring back to people coming from Europe."  *See* Devan Cole and Caroline Kelly, *Cuccinelli Rewrites Statue of Liberty Poem to Make Case for Limiting Immigration*, CNN (Aug. 13, 2019), *available a*t https://www.cnn.com/2019/08/13/politics/ken- cuccinelli-statue-of-liberty/index.html.  Driven by this unlawful animus, Defendants' Challenged Actions seek to advance these goals, including by now replacing properly trained asylum officers with improperly trained CBP law enforcement agents willing to advance Defendants' Challenged Actions and goals.

---

[15]  Audio available at https://soundcloud.com/breitbart/breitbart-news-daily-ken-cuccinelli-october-23-2018.

165.   But, while Defendants' unlawful efforts to stamp out positive credible fear determinations is evinced in Defendants' Challenged Actions, none of Defendants have the power to change the credible fear standard or related fundamental procedures and protections.  These can be changed only by Congress.  Thus, Defendants' Challenged Actions are each contrary to the law and should be set aside, declared illegal, and enjoined.

## F.  Defendants' Challenged Actions Place Plaintiffs in Danger of Persecution or Torture

166.   Under the correct legal standards, each of the Plaintiffs would have easily passed their credible fear interview or reasonable fear interview, and would have been referred for regular removal proceedings to seek asylum and other relief from removal.  Instead, because of Defendants' Challenged Actions, Plaintiffs were each issued a negative credible fear determination, exposing them to return subject to threats of persecution, torture, or death.

167.   Many other *bona fide* asylum applicants who meet the credible fear standard similarly have also received and will receive negative credible fear determinations based on Defendants' Challenged Actions, subjecting them again to potential persecution, torture, or death.

168.   Defendants' Challenged Actions are depriving Plaintiffs and others of their rights to pursue potentially meritorious claims for protection.  Indeed, immigration service providers across the country have already reported that Defendants' Challenged Actions are causing a dramatic increase in the proportion of asylum seekers who receive negative credible fear determinations.

169.   The result of these policies is that children and their mothers, including Plaintiffs, have been and will be sent back to countries that have been cited for their pervasive and widespread violence against women and children, including domestic violence, rape, and beatings, as well as abuse, torture, or death by gangs.  For example, it has been widely recognized, including by the

U.S. State Department in 2018, that El Salvador has one of the highest homicide rates in the world, and Amnesty International has described El Salvador as "one of the most dangerous countries to be a woman."[16] Numerous other reports, including by United Nations High Commissioner for Refugees (UNHCR), have documented that gender-motivated killings and other murders of women in El Salvador, Honduras and Guatemala are commonplace, and that Central American gangs perpetrate pervasive, pernicious, and often uncontrollable violence and disruption in the region.[17] Human rights reports have also widely documented the systemic failures in state protection of women and children in Central American countries.[18]

---

[16] *E.g.*, Amnesty Int'l*, El Salvador 2017/2018*, *available at* https://www.amnesty.org/en/countries/americas/el-salvador/report-el-salvador/.

[17] *E.g.*, Int'l Centre for the Human Rights of Migrants, *Forced Displacement and Protection Needs Produced by New Forms of Violence and Criminality in Central America* (UNHCR, May 2012), *available at* http://www.rcusa.org/uploads/pdfs/Violence%20in%20CA%20Final20%20July2012.pdf].

[18] *See, e.g.*:

- Amnesty Int'l, *On the Brink of Death: Violence Against Women and the Abortion Ban in El Salvador*, *passim* and at 14 (Sept. 2014), *available at* https://www.amnestyusa.org/files/el_salvador_report_-_on_the_brink_of_death.pdf;
- U.S. Department of State, Overseas Security Advisory Counsel, *El Salvador 2019 Crime & Safety Report* (April 25, 2019); *available at* https://www.osac.gov/Country/ElSalvador/Content/Detail/Report/d1222be6-4e5d-461f-912c-15f4aec90b02;
- Refugees Int'l, '*It's a Suicide Act to Leave or Stay': Internal Displacement in El Salvador* (July 25, 2015), *available at* https://www.refugeesinternational.org/reports/2015/9/30/its-a-suicide-act-to-leave-or-stay-internal-displacement-in-el-salvador;
- Physicians for Human Rights, '*If I went back, I would not survive': Asylum Seekers Fleeing Violence in Mexico and Central America* (Oct. 9, 2019), *available at* https://phr.org/our-work/resources/asylum-seekers-fleeing-violence-in-mexico-and-central-america/;
- Physicians for Human Rights, *There is no one here to protect you* (June 10, 2019), *available at* https://phr.org/our-work/resources/there-is-no-one-here-to-protect-you/;
- Physicians for Human Rights, *El Salvador Country Conditions*,"*available at* https://www.uacresources.org/library/attachment.269153;

170.    Indeed, numerous migrants from Central America who were deported from the United States have suffered brutal harms, including death, after returning to their home countries. For example, one study documented that 83 individuals deported to Northern Triangle countries between 2014 and 2015 were reported by local media to have been killed—and that is just the murders that were reported in the news.[19]

171.    Without judicial intervention, the Defendants will be able to effectively rewrite the expedited removal scheme and substantive asylum law to illicitly achieve the goal of eliminating the ability of Central American woman and children, and others to seek safety in the United States.

## G.  Defendants' Post-Complaint Retaliatory Actions

172.    After this action was filed, Defendants or those acting under their supervision or control have engaged in coercive, intimidating, and apparently retaliatory actions that burden, impair, and threaten Plaintiffs for their participation in this case.  They have impaired the right of free speech and association by impairing Plaintiffs' ability to consult with counsel and have punished and suppressed rights to petition this Court and to participate in this lawsuit. By way of

---

- American Immigration Counsel, *No Childhood Here: Why Central American Children Are Fleeing Their Homes* (July 1, 2014), *available at* https://www.americanimmigrationcouncil.org/sites/default/files/research/no_childhood_here_why_central_american_children_are_fleeing_their_homes.pdf;
- Angelia Albaladejo, *How Violence Affects Women in El Salvador* (Feb. 22, 2016), *available at* https://www.lawg.org/how-violence-affects-women-in-el-salvador/;
- United Nations High Commissioner for Refugees, *Children on the Run* (Mar. 2014), *available at* https://www.unhcr.org/56fc266f4.html; s
- United Nations High Commissioner for Refugees, *Women on the Run* (Oct. 2015), *available a*t https://www.unhcr.org/en-us/publications/operations/5630f24c6/women-run.html.

[19] *See* Emily Gogolak, *Meet the Central American Women the United States is Detaining and Deporting* (The Nation, Dec. 26, 2016), *available at* https://pulitzercenter.org/reporting/meet-central-american-women-united-states-detaining-and-deporting.

example, Defendants have refused to release, parole, or even remove numerous Plaintiffs unless those Plaintiffs drop their claims against Defendants.[20]

173.    Specifically, Defendants or those acting under their supervision or control have informed detainees that they could be detained *for years* because of the lawsuit, encouraging or coercing Plaintiffs to drop their claims and coercing other detainees not to assert claims.   They have begun issuing decisions to "Continue Detention" expressly identifying the detainee's status as "a participant in the case MMV vs. Barr 19-2773." Plaintiffs who are minors are now receiving disparate treatment based on their status as Plaintiffs, with Defendants failing to follow the *Flores* Settlement and rulings for any minor Plaintiffs while they remain parties to this case.[21]   Instead, Defendants continue to illegally detain Plaintiffs in violation of *Flores* based on their status as Plaintiffs. Even if certain Plaintiff are willing to *consent* to deportation to be released from

---

[20] Defendants may not retaliate for Plaintiffs exercising their First Amendment rights. *E.g.*, *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (Government may not take action against an individual "because of his constitutionally protected speech or associations," even if the it could lawfully take action for other reasons). These First Amendment protections extend to detained immigrants, and protect those individuals from punishment, including selective enforcement of removal orders, in retaliation for exercising First Amendment Rights. *See, e.g.*, *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019). Even actions "that fall short of a direct prohibition against the exercise of First Amendment rights" still violate the Constitution. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Such retaliatory actions are categorically prohibited. Allowing them would permit Defendants to silence its critics, when the government has no right to silence its critics at all. *See, e.g.*, *Perry*, 408 U.S. at 597–98.

[21] Under *Flores*, a presumption of release prohibits categorical detention of minors *even if* subject to an order of expedited removal.   *E.g.*, *Flores v. Sessions*, CV 85-4544 DMG, Dkt. 353, Order at pp. 23–25 & nn. 15–17 (C.D. Cal. June 27, 2017) ("[T]he Court will order Defendants to comply with the unambiguous charge of the Flores Agreement to make individualized determinations regarding a minor's flight risk rather than blanket determinations."); *see also Flores v. Johnson*, 212 F. Supp. 3d 864, 877 (C.D. Cal. 2015) and *Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015), *aff'd in relevant part* 828 F.3d 898, 901 (9th Cir. 2016) (upholding "a presumption in favor of releasing minors and require[ing] placement of those not released in licensed, non-secure facilities that meet certain standards"); *cf.* 8 C.F.R. §§ 212.5(b), 235.3(b)(2)(iii), 241.4.

detention, Defendants refuse to release them unless they drop their claims.[22]  This harassment and coercion violate Plaintiffs' First Amendment and Due Process rights.

## FIRST CLAIM FOR RELIEF—CHALLENGED ACTIONS ARE CONTRARY TO LAW
### (Refugee Act, Immigration and Nationality Act, Administrative Procedures Act)

174.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

175.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), provides that a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be— (A) … otherwise not in accordance with law; … [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

176.    The policies and procedures of an agency are binding upon the agency, and the APA grants Plaintiffs the right to challenge the failure of an agency to comply with its own rules, regulations, directives, guidance, initiatives, actions and/or procedures. *See, e.g.,  Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018) ("It has long been settled that a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated," *citing Mass. Fair Share v. Law Enf't Assistance Admin.*, 758 F.2d 708, 711, 244 U.S. App. D.C. 388 (D.C. Cir. 1985)); *id*. at 335–41 (doctrine is enforced via 5 U.S.C. § 706(2)).

177.    Individually and collectively, the Challenged Actions violate, *inter alia*, the INA and the Refugee Act and related regulations, and are contrary to law under the APA for multiple reasons.  Among other reasons, they [1] conflict with the definition of "refugee," *see* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) and implement standards for fear that are higher than that required

---

[22] For example, to be released from detention even by deportation, Defendants required Plaintiffs A.A.T. and her child C.A.T., R.C.C. and her child D.L.C., J.G.G. and her child E.G.G., D.S.P. and her child V.V.P., and M.R.A. and her child V.A.R all to drop their claims.

by law; [2] conflict with the required procedures and standards for an Asylum Officer to conduct and memorialize interviews under 8 U.S.C. § 1225(b)(1)(B, E),[23] including by failing to have an appropriately trained Asylum Officer apply the required procedures and fear standard; [3] represent a departure from the agency's longstanding policy without an acknowledgment of or a reasoned explanation for that departure; [4] were taken without proper authorization as required by law and [5] deprive applicants of a meaningful opportunity to establish their potential eligibility for asylum, withholding of removal, and CAT relief pursuant to 8 U.S.C. §§ 1158(b)(1), 1225(b)(1)(B), and 1231; *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

178.    As a result, the above Challenged Actions are contrary to law under 5 U.S.C. § 706(2)(A) & (C), and thus must be declared and held unlawful, set aside, or otherwise vacated and enjoined.

---

[23] *See also, e.g.*, 8 C.F.R. §§ 208.1 (training), 208.2(a) (jurisdiction), 208.13(b) (asylum standard), 208.16 (standard for withholding removal per Convention Against Torture), 208.18(a) (defining torture), 208.30(d) (right to consult attorney or advocate, right to non-adversarial interview, right to record memorializing all material facts), 208.30(e) (right to complete factual record, supervisory review, and determination by legal standard), 208.31 (for reasonable fear determination, right to non-adversarial interview, counsel, and determination by legal standard), 235.3(b)(4) (right to interview by asylum officer, right to orientation, right to consult attorney or advocate).

**SECOND CLAIM FOR RELIEF——ACTIONS ARE ARBITRARY AND CAPRICIOUS**
**(Refugee Act, Immigration and Nationality Act, Administrative Procedures Act)**

179.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

180.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, provides that a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, [or] an abuse of discretion…."

181.    The Challenged Actions are arbitrary and capricious and constitute abuses of discretion. The Challenged Actions, for which Defendants have never attempted to advance an explanation or rationale, are illogical and irrational and thwart the purpose and goals of the Refugee Act and the INA by, *inter alia*, implicitly altering the standards that apply in CFIs and RFIs, inhibiting legitimate applicants for asylum, withholding of removal, and CAT protection from exercising rights and using procedures afforded to them by law. The Challenged Actions thus place applicants, including Plaintiffs, at increased risk of persecution and/or torture, the opposite result that the law is designed and intended to reach.

182.    As a result, the Challenged Actions must be declared and held unlawful, set aside, or otherwise vacated and enjoined under 5 U.S.C. § 706(2)(A).

**THIRD CLAIM FOR RELIEF—— CONSTITUTIONAL VIOLATION**
**(First Amendment and Due Process Clause of the Fifth Amendment to the United States Constitution; Administrative Procedures Act)**

183.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

184.    Plaintiffs have protected interests in applying for asylum, withholding of removal, and Convention Against Torture relief upon a showing that meets the applicable standards, and in not being removed to a country where they face serious danger and potential loss of life. Plaintiffs

also have protected interests under the First Amendment to the free exercise of religion, freedom

of speech (including the right to associate and communicate with counsel), and the right to petition

the Government for a redress of grievances.

185.    Plaintiffs are entitled under the Due Process Clause of the Fifth Amendment to a

fair hearing of their claims, fair asylum-related interviews that conform with the law and applicable

regulations, fair, accurate, unbiased, and complete development and memorializing of supporting

facts for the record, a meaningful opportunity to establish their potential eligibility for asylum and

related relief from removal, and release or parole as allowed by law.

186.    Individually and collectively, the above new Challenged Actions and Defendants'

post-Complaint actions have violated Plaintiffs' right to due process in numerous respects,

including by foreclosing their claims regardless of their individual facts or merits; by applying an

unlawful, more burdensome standard to Plaintiffs' claims than legally required; by depriving them

of required procedures and standards for an Asylum Officer to conduct interviews under 8 U.S.C.

§ 1225(b)(1)(B), (E),[24] including by failing to have an appropriately trained Asylum Officer apply

the required procedures, and thus ultimately by depriving them of an accurate, fair, unbiased, and

complete evidentiary record of the assessment of their fear and thus of a meaningful opportunity

to establish their potential eligibility for asylum and related relief. Plaintiffs' due process right to

---

[24] *See also, e.g.*, 8 C.F.R. §§ 208.1 (training), 208.2(a) (jurisdiction), 208.13(b) (asylum standard), 208.16 (standard for withholding removal per Convention Against Torture), 208.18(a) (defining torture), 208.30(d) (right to consult attorney or advocate, right to non-adversarial interview, right to record memorializing all material facts), 208.30(e) (right to complete factual record, supervisory review and determination by legal standard), 208.31 (for reasonable fear determination, right to non-adversarial interview, counsel, and determination by legal standard), 235.3(b)(4) (right to interview by asylum officer, right to orientation, right to consult attorney or advocate).

apply for asylum and related relief has thus been impaired; and by depriving them of the opportunity for release or parole as allowed by law.

187.   Defendants have also violated Plaintiffs rights under the First Amendment by impairing their rights to communicate with counsel and by retaliating against Plaintiffs for their participation in this case.  Defendants' have abridged Plaintiffs' First Amendment rights, including by punishing and suppressing rights to petition this Court and to participate in this lawsuit, including by refusing to release, parole, or even remove numerous Plaintiffs unless those Plaintiffs drop their claims against Defendants.

188.   The above Challenged Actions must therefore be enjoined and declared as violative of the First Amendment and/or the Fifth Amendment's guarantee of due process, and also held declared and held unlawful, set aside, or otherwise vacated and/or enjoined under the APA, 5 U.S.C. § 706(2)(A) & (B).

### FOURTH CLAIM FOR RELIEF—VIOLATION OF NOTICE AND COMMENT PROCEDURES
### (Administrative Procedure Act)

189.   All of the foregoing allegations are repeated and realleged as if fully set forth herein.

190.   The Administrative Procedure Act ("APA") requires notice and opportunity for comment prior to substantive agency action or promulgation of a rule. 5 U.S.C. §§ 553(b), (c).  In addition, the APA requires that a substantive rule be published "no less than 30 days before its effective date." 5 U.S.C. § 553(d).

191.   The Challenged Actions constitute rules that are subject to the notice-and-comment requirements of the APA.

192.    The government Defendants did not promulgate a rule or engage in notice-and-comment rulemaking before implementing their new Challenged Actions. The government Defendants also failed to appropriately publish any of the Challenged Actions 30 days before their effective date.

193.    The Challenged Actions therefore must be declared and held unlawful and set aside for Defendants' failure to observe the procedure required by the APA. *See, e.g.*, 5 U.S.C. §§ 553(b), (c), (d), 706(2)(D).

### FIFTH CLAIM FOR RELIEF—VIOLATION OF RIGHT OF *NON-REFOULEMENT* (Immigration and Nationality Act, Withholding of Removal, and Administrative Procedure Act)

194.    All of the foregoing allegations are repeated and realleged as if fully set forth herein.

195.    The 1951 Refugee Convention and the 1967 Protocol relating to the Status of Refugees, to which the United States is party, requires that the United States not "expel or return ('*refouler'*) a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." United Nations Convention Relating to the Status of Refugees, art. 33, July 28, 1951, 189 U.N.T.S. 150; *see also* Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267; United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, Art. 3.

196.    The Refugee Convention prohibits the return of individuals to countries where they would directly face persecution on a protected ground as well as to countries that would deport them to conditions of persecution.

197.    Congress has codified these prohibitions in the "withholding of removal" provision at INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), which bars removal of an individual to a country where it is more likely than not that he or she would face persecution. *See also* 8 C.F.R. § 208.16(c), (d). Congress also codified the prohibition against *refoulement* in Article 3 of CAT. FARRA § 2242(a), Pub. L. No. 105-207, Div. G. Title XXI, 112 Stat. 2681 (codified at 8 U.S.C. § 1231).

198.    Pursuant to regulation, only an immigration judge can determine whether an individual faces such a risk of persecution and is entitled to withholding of removal after full removal proceedings in immigration court. 8 C.F.R. § 1208.16(a).

199.    Individually and collectively, the above new Challenged Actions regarding fear screening fail to provide these safeguards to ensure the critical protection against *refoulement* and therefore violates Section 1231(b)(3) and its implementing regulations.

200.    The above Challenged Actions are thus must be declared and held unlawful, set aside, or otherwise vacated and enjoined. 5 U.S.C. § 706(2)(A), (C), (D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

a)  Declare the Challenged Actions contrary to law and/or taken without proper authorization as required by law;

b)  Enter an order vacating the Challenged Actions;

c)  Enter order preliminarily and permanently enjoining Defendants from continuing to apply the Challenged Actions in proceedings related to credible fear determinations, reasonable fear determinations, interviews, or hearings issued or conducted by asylum officers or immigration judges;

d) Enter an order staying the application of the Challenged Actions to each of the Plaintiffs;

e) Enter an order enjoining Defendants from issuing and/or executing expedited removal orders with regard to the Plaintiffs;

f) Enter an order enjoining Defendants from removing the Plaintiffs without first providing each of them with a new credible fear process or reasonable fear process (as appropriate) under correct legal standards or, in the alternative, full immigration court removal proceedings pursuant to 8 U.S.C. § 1229a;

g) Enter a Temporary Restraining Order and a Preliminary Injunction maintaining the status quo by requiring the government Defendants to reprocess the Plaintiffs' fear claims under the accepted prior policies;

h) Order Defendants to pay Plaintiffs' litigation costs and reasonable attorney fees pursuant to the Equal Access to Justice Act and 28 U.S.C. § 2412; and

i) Order all other relief that the Court deems just and proper to ensure that the government Defendants act according to law.

Respectfully submitted this 5th day of December, 2019.

Respectfully Submitted,

Dated: December 5, 2019     By:    /s/Amy Maldonado
*Amy Maldonado (IL Bar No. 6256961)
Law Office of Amy Maldonado
333 Albert Avenue, Suite 610
East Lansing, MI 48823
Phone: (517) 803-2870
Fax: (888) 299-3780
E-mail: amy@amaldonadolaw.com

Dated: December 5, 2019      By:     /s/ Gregory P. Copeland
                                                Gregory P. Copeland (Bar No. NY0311)
RAPID DEFENSE NETWORK
11Broadway, Suite 615
New York, NY 10004
Phone: (212) 843-0910
Fax: (212) 257-7033
E-mail: gregory@defensenetwork.org

Dated: December 5, 2019      By:     /s/ Sarah T. Gillman
Sarah T. Gillman (Bar No. NY0316)
RAPID DEFENSE NETWORK
11Broadway, Suite 615
New York, NY 10004
Phone: (212) 843-0910
Fax: (212) 257-7033
E-mail: sarah@defensenetwork.org

Dated: December 5, 2019      By:     /s/ Bridget Cambria
*Bridget Cambria (PA Bar No. 205271)
Cambria & Kline, P.C.
532 Walnut Street
Reading, PA 19601
Phone: (484) 926-2014
Fax: (484) 926-2032
E-mail: bridget.cambria@cambriaklinelaw.com

Dated: December 5, 2019      By:     /s/ Elora Mukherjee
* Elora Mukherjee (NY Bar No. 4427233)
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street
New York, NY 10027
Phone:  (212) 854-2603
Fax:  (212) 854-3554
E-mail:  emukherjee@law.columbia.edu

ATTORNEYS FOR THE PLAINTIFFS

*Pro hac vice