## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| M.M.V., *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>WILLIAM BARR, in his official capacity as<br>Attorney General of the United States, *et al.*,<br><br>　　　　　　　　Defendants. | Civil Action No. 19-2773 (ABJ) |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

During the hearing held on December 18, 2019, regarding Plaintiffs' pending motion for a temporary restraining order ("TRO"), the Parties presented their respective arguments regarding this Court's jurisdiction over Plaintiffs' challenge to 11 alleged individual policies, procedures, and guidance regarding Defendants' credible fear interview process, as described in Plaintiffs' complaint (*i.e.*, Defendants' so-called "challenged actions"). Although Plaintiffs have twice amended their complaint in this action, counsel for Plaintiffs explained during the December 18, 2019, hearing that Plaintiffs' operative complaint in this action does not purport to challenge any policies, procedures, or guidance implemented after this action was initially filed; rather, the complaint clarifies the challenged actions originally described in this action. In light of the arguments and clarifications offered by the Parties during the hearing, the Court permitted both parties to supplement their briefs regarding Plaintiffs' pending TRO motion to stay the removal from the United States of all Plaintiffs in this action. Accordingly, Defendants respectfully submit this supplemental memorandum in opposition to Plaintiffs' motion for a TRO.

As discussed below, Plaintiffs' lawsuit presents a so-called "programmatic" challenge to Defendants' implementation of Plaintiffs' expedited removal from the United States under the Immigration and Nationality Act ("INA") based on 11 alleged policies, which Plaintiffs claim are unlawful under the U.S. Constitution, the INA, and Defendants' implementing regulations. However, Plaintiffs' challenge fails because some of the 11 alleged challenged actions relate solely to the Third-Country Transit Bar, which Plaintiffs have disclaimed any challenge to, and for which, in any event, they cannot show any likelihood of success on the merits. Further, some of Plaintiffs' other challenged actions were not timely filed pursuant to the INA's 60-day jurisdictional bar for programmatic challenges to expedited removal proceedings. Also, many of Plaintiffs' challenged actions fail to identify any existing policy directive, guideline, or procedure and otherwise appear to challenge Defendants' adherence to the law, which the INA precludes from judicial review. Finally, Plaintiffs lack standing to bring their challenge to Defendants' existing policy regarding the government's fraud review of credible fear cases.

Accordingly, Plaintiffs cannot demonstrate a "likelihood of success on the merits" and are therefore ineligible for the extraordinary preliminary injunctive relief that they seek. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). Indeed, given the clear jurisdictional defects here, the Court should dismiss Plaintiffs' lawsuit pursuant to Federal Rule of Civil Procedure 12(h)(3) for want of jurisdiction. In support of this supplemental memorandum, Defendants attach the declaration of Ashley B.

Caudill-Mirillo, Deputy Chief of the Asylum Division with U.S. Citizenship and Immigration

Services ("USCIS").[1]

## BACKGROUND

The statutory and regulatory framework governing the expedited removal system and the

credible fear process are outlined in the government opposition to the motion for TRO.  *See* ECF

No. 26 at 3-5.  In both expedited and removal proceedings under INA § 240 (*see* 8 U.S.C. §§

1225(b)(1), 1229a), claims concerning asylum are governed by 8 U.S.C. § 1158.  Generally, an

alien "who is physically present in the United States or who arrives in the United States . . . may

apply for asylum in accordance with [section 1158] or, where applicable, section 1225(b)."  8

U.S.C. § 1158(a)(1).  But a grant of asylum is discretionary.  Asylum "may [be] grant[ed] to an

alien who has applied," *id*. § 1158(b)(1)(A), if the alien satisfies certain standards and is not

subject to an application or eligibility bar, *id*. § 1158(a)(2), (b)(1)(B), (b)(2).  And the "Attorney

General [and the Secretary of Homeland Security] may by regulation establish additional

limitations and conditions, consistent with [section 1158], under which an alien shall be

ineligible for asylum."  *Id*. § 1158(b)(2)(C).

On July 16, 2019, the Attorney General and the Acting Secretary issued the Third-

Country Transit Rule, *see* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829

(July 16, 2019), which provides that "any alien who enters, attempts to enter, or arrives in the

---

[1] As explained by Ms. Caudill-Mirillo, the Asylum Division is a component of USCIS that, among other things, adjudicates applications for asylum pursuant to 8 U.S.C. § 1158; makes non-refoulement assessments under Migrant Protection Protocols (which implement 8 U.S.C. § 1225(b)(2)(C)); conducts reasonable fear screening determinations regarding whether particular aliens have a reasonable fear of persecution or torture pursuant to the regulations at 8 C.F.R. § 208.31; and, conducts credible fear screening determinations regarding whether particular aliens have a credible fear of persecution or torture upon return to their countries of origin pursuant to 8 U.S.C. § 1225(b)(2)(B) and the regulations at 8 C.F.R. § 208.30.  Caudill-Mirillo Decl. ¶ 2.

United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence in route to the United States, shall be found ineligible for asylum."  84 Fed. Reg. at 33,843.  The Rule does not apply to an alien who shows that he or she applied for and was denied protection in a third country through which the alien traveled en route to the United States.  *Id*. at 33,843.  Nor does it apply to an alien who is a victim of a severe form of trafficking or who traveled exclusively through countries that, at the time of transit, were not parties to certain international agreements.  *Id*.

After reviewing the existing framework for adjudicating claims for asylum and other forms of protection from removal as part of the credible fear process, 84 Fed. Reg. at 33,832-37. the rule explained that the "screening process established by the [Rule] will proceed as follows[:]"

> For an alien subject to expedited removal, DHS will ascertain whether the alien seeks protection, consistent with INA 235(b)(1)(A)(ii), 8 U.S.C. 1225(b)(1)(A)(ii). All such aliens will continue to go before an asylum officer for screening, consistent with INA 235(b)(1)(B), 8 U.S.C. 1225(b)(1)(B). The asylum officer will ask threshold questions to elicit whether an alien is ineligible for a grant of asylum pursuant to the third-country-transit bar. If there is a significant possibility that the alien is not subject to the eligibility bar (and the alien otherwise demonstrates that there is a significant possibility that he or she can establish eligibility for asylum), then the alien will have established a credible fear.

> If, however, an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative credible-fear finding. The asylum officer will then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection.

> An alien subject to the third-country transit asylum eligibility bar who clears the reasonable-fear screening standard will be placed in section 240 proceedings, just as an alien who clears the credible-fear standard will be. In those proceedings, the alien will also have an opportunity to raise whether the alien was correctly identified as subject to the third-country-transit ineligibility bar to asylum, as well as other claims. If an immigration judge determines that the alien was incorrectly

identified as subject to the third-country-transit bar, the alien will be able to apply for asylum. Such aliens can appeal the immigration judge's decision in these proceedings to the Board and then seek review from a Federal court of appeals.

Conversely, an alien who is found to be subject to the third-country-transit asylum eligibility bar and who does not clear the reasonable-fear screening standard can obtain review of both of those determinations before an immigration judge, just as immigration judges currently review negative credible-fear and reasonable-fear determinations. If the immigration judge finds that either determination was incorrect, then the alien will be placed into section 240 proceedings. In reviewing the determinations, the immigration judge will decide de novo whether the alien is subject to the third country-transit asylum eligibility bar. If, however, the immigration judge affirms both determinations, then the alien will be subject to removal without further appeal, consistent with the existing process under section 235 of the INA. In short, aliens subject to the third country-transit asylum eligibility bar will be processed through existing procedures by DHS and EOIR in accordance with 8 CFR 208.30 and 1208.30, but will be subject to the reasonable-fear standard as part of those procedures with respect to their statutory withholding and CAT protection claims.

84 Fed. Reg. at 33,837-38.

Multiple organizations have challenged the Rule. On July 24, 2019, another Court in this District denied a request for a temporary restraining order enjoining operation of the rule, concluding that "plaintiffs [had] not shown a likelihood of irreparable harm entitling them to a temporary restraining order," and further conveying "strong doubts that the plaintiffs will be able to successfully show that the . . . Rule exceeds the Attorney General's authority." *Capital Area Immigrants' Rights Coal. v. Trump*, No. Civ. A. No. 19-2117 (TJK), 2019 WL 3436501, at *4 (D.D.C. July 24, 2019). That same day, a Court in the Northern District of California enjoined the Rule nationwide. *See East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019). The Ninth Circuit stayed the injunction as to all jurisdictions but its own, ruling that the record did not support the injunction's nationwide scope. 934 F.3d 1026 (9th Cir. 2019). The District Court nonetheless restored the nationwide scope of the injunction. 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, 2019, the Supreme Court stayed the District Court's

injunctive orders "in full," allowing the Rule to go into effect nationwide.  *Barr v. East Bay Sanctuary Covenant*, No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019).  That stay remains in effect "pending disposition of the Government's appeal . . . and disposition of the Government's petition for a writ of certiorari, if such writ is sought."  *Id.*

On September 16, 2019, Plaintiffs—a number of aliens who were apprehended by U.S. Customs and Border Protection ("CBP") immigration officers—filed their initial complaint in this action.  *See* ECF No. 1.  Plaintiffs were placed (at least initially) into expedited removal proceedings, given credible fear interviews and received negative credible fear determinations, and (for those families that have not been paroled) are currently detained at the South Texas Family Residential Center in Dilley, Texas.  *See generally id.*  On September 25, 2019, Plaintiffs filed a motion for a TRO requesting that this Court stay their removal until the Court decides the merits of their case.  *See* ECF No. 13.  In an Order dated September 25, 2019, the Court issued a temporary stay to preserve the status quo during the pendency of the TRO motion.  *See* ECF No. 16.

On October 17, 2019, Plaintiffs filed their first amended complaint in this action, which added several additional families seeking asylum in the United States who have received negative credible-fear determinations.  *See* Am. Compl., ECF No. 28.  Subsequent to their amended complaint, Plaintiffs filed a motion on October 17, 2019, requesting this Court to issue a TRO barring the government from removing the newly-added Plaintiffs from the United States. On December 5, 2019, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, *see* ECF No. 46, and Motion to Add Plaintiffs, *see* ECF No. 47, which the Court granted via a Minute Order dated December 16, 2019.

The Court held a motions hearing on December 18, 2019, and (as noted above) permitted the Parties to file supplemental briefs to assist the Court in deciding Plaintiffs' pending TRO motion.

## ARGUMENT

Plaintiffs' lawsuit presents a so-called "programmatic" challenge to Defendants' alleged expedited removal policies. 8 U.S.C. § 1252(e)(3); *see* 2d Am. Compl. (ECF No. 54) ¶ 9. Plaintiffs allege that they have recently been subjected to a "series of changes" at the South Texas Family Residential Center. 2d Am. Compl. ¶ 141. Accordingly, Plaintiffs' complaint proffers 11 "challenged actions," which pertain to "directives, guidelines, policies, actions, and procedures to credible fear screenings" that (in Plaintiffs' view) are contrary to existing law. *Id.* ¶ 146.

In Defendants' opening brief, Defendants noted that (notwithstanding Defendants' jurisdictional arguments regarding the Court's ability to stay Plaintiffs' removal during the pendency of this litigation) Plaintiffs may litigate their programmatic claims from abroad. *See* ECF No. 26 at 22; *see also Am. Immigration Lawyers Ass'n v. Reno* ("*AILA*"), 18 F. Supp. 2d 38, 45 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) (adjudicating claims under section 1252(e)(3) of aliens already removed prior to initiation of the lawsuit). Indeed, as referenced in Plaintiffs' complaint, section 1252(e)(3) of the INA permits challenges to the "validity of the system" codified at 8 U.S.C. § 1225(b)(1) and specific types of "procedures" implementing section 1225(b)(1). *See* H.R. Rep. 104-828 (Sept. 24, 1996) (conference report), at 220 ("Section [1252](e)(3) provides for limited judicial review of the validity of *procedures* under section [1225](b)(1).") (emphasis added). However, such systemic challenges are not unbounded. The statute specifically limits such challenges to determinations of:

(i)     whether such section, or any regulation issued to implement such section, is constitutional; or

(ii)    whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

Here, Plaintiffs have not identified any existing regulation that they purport to challenge. Indeed, they expressly disclaim any challenge to the only regulation they identify as relevant to their proceedings—the Third-Country Transit Rule—and they cannot challenge any of the other regulations governing expedited removal and credible fear proceedings—including 8 C.F.R. §§ 235.3, 208.30, 1208.30, and 1003.42—as they were promulgated years ago and are therefore well-outside the 60-day time bar.  Rather, Plaintiffs challenge alleged policies, guidance, or procedures that they allege have not been made public.  *See* 2d Am. Compl. ¶ 147, n.10. Accordingly, in terms of Plaintiffs' section 1252(e)(3)(A) challenge, Plaintiffs appear to ground their lawsuit on 11 alleged non-public policy directives, policy guidance, and/or written procedures.

Also, Plaintiffs do not enjoy an unlimited amount of time to advance their challenge.  In order to bring an action under section 1252(e)(3)(A), Plaintiffs must adhere to the INA's jurisdictional review period for judicial relief.  Specifically, section 1252(e)(3)(C) provides that "[a]ny action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented."

As noted above, Plaintiffs' complaint alleges the existence of 11 "challenged actions" that Plaintiffs describe under "temporary names" because, Plaintiffs say, no "official policy

directive, guidance, or procedure names" could be identified without taking discovery in this action. 2d Am. Compl. ¶ 147, n.10. USCIS, perhaps unsurprisingly, does not use any of the "temporary names" for any of its policies, processes, or actions. *See* Caudill-Mirillo Decl. ¶ 22. In fact, as discussed by Ms. Caudill-Mirillo, many of these alleged "challenged actions" do not exist. In any event, Plaintiffs cannot meet their burden to demonstrate a "likelihood of success on the merits" in this lawsuit (and are therefore not entitled to preliminary injunctive relief) because they have insufficiently established that the Court has jurisdiction over their claims in this action. First, several of the alleged "challenged actions" relate solely to the Third-Country Transit Bar, which Plaintiffs have disclaimed any challenge to. Second, all Plaintiffs have failed to file all but one of their claims within the INA's 60-day jurisdictional bar. And, as to the one policy *some* of the plaintiffs may be challenging and have filed in time, Plaintiffs' have failed to sufficiently allege that they have been subject to the relevant actions or that they have any prospect of success on that claim. Finally, many of the alleged "challenged actions"—to the extent they exist at all—represent thinly-veiled as-applied challenges to Defendants' adherence to the law, which are precluded from judicial review under the INA. Therefore, the Court should deny Plaintiffs' TRO motion and dismiss this lawsuit for want of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) (providing that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

## I.     Several of Plaintiffs' "Challenged Actions" Are Specific to the Third-Country Transit Bar Interim Final Rule, Which Is Outside the Scope of This Lawsuit.

As noted in Defendants' opening brief, beginning on July 16, 2019, USCIS began implementing the Third Country Transit Bar Interim Final Rule ("IFR"), codified at 8 C.F.R. §§ 208.13(c)(4), 208.30(e)(5)(iii), 1208.13(c)(4), and 1208.30(g)(1)(ii). The Third-Country Transit Bar IFR provides (with limited exceptions) that "any alien who enters, attempts to enter, or

arrives in the United States across the southern land border on or after July 16, 2019, after

transiting through at least one country outside the alien's country of citizenship, nationality, or

last lawful habitual residence, failing to apply for protection therein, en route to the United

States, shall be ineligible for asylum[.]"  84 Fed. Reg. at 33,843; *see* Caudill-Mirillo Decl. ¶ 5.

As noted below, several of the "challenged actions" pertain solely to USCIS's application of the

IFR, which Plaintiffs have disclaimed in no uncertain terms.

> a.  *Apply RFI Standards Without RFI Protections (2d Am. Compl. ¶ 155)*

Plaintiffs allege that, after Plaintiffs were informed that they were ineligible for asylum,

Defendants "did not offer or facilitate the protections required by law for [Reasonable Fear

Interview] interviewees while evaluation Plaintiffs under the heightened RFI standard."  2d Am.

Compl. ¶ 155.

While Defendants deny that any "written policy"—as alleged by Plaintiffs—exists,

Defendants note that USCIS is bound by regulation to apply the reasonable fear standard in

accordance with the Third-Country Transit Bar Interim Final Rule.  *See* Caudill-Mirillo Decl.

¶ 30; 8 C.F.R. § 208.30(e)(5)(iii); *see also* Asylum Eligibility and Procedural Modifications, 84

Fed. Reg. 33,829 (July 16, 2019) ("Third-Country Transit Bar").  Pursuant to 8 C.F.R. §

208.30(e)(5)(iii), aliens who are subject to the Third-Country Transit Bar and as a result are

barred from asylum eligibility under 8 C.F.R. § 208.13(c)(4), will be screened for persecution or

torture under the reasonable fear legal standard.  And, as noted above, the rule itself provides for

the very process Plaintiffs purport to challenge.  *See* 84 Fed. Reg. at 33,838 ("If, however, an

alien lacks a significant possibility of eligibility for asylum because of the third-country transit

bar, then the asylum officer will make a negative credible-fear finding.  The asylum officer will

then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of

removal or CAT protection.); *see also id.* at 33,837-38.

      b.   *Issue Summary Negative Determinations to Eliminate Supervisory Review and Concurrence and to Avoid Developing a Complete Written Record (2d Am. Compl. ¶ 149)*

Plaintiffs allege that Defendants "have truncated the fact development and discussion of the merits in Plaintiffs' fears in interviews" and "summarily announce negative asylum determinations[.]"  2d Am. Compl. ¶ 149.  Accordingly, Plaintiffs allege that they "are denied the right to a meaningful supervisory review of credible fear determinations[.]"  *Id.*

According to Ms. Caudill-Mirillo, no such "written policy directive, written policy guideline, or written procedure" exists.  *See* Caudill-Mirillo Decl. ¶ 26.  Plaintiffs' allegations may refer to the implementation of the Third-Country Transit Bar.  Those individuals who are subject to the Third-Country Transit Bar would be barred from asylum eligibility under 8 C.F.R. § 208.13(c)(4).  In the credible fear context, under 8 C.F.R. § 208.30(e)(5)(iii), when an individual is barred from asylum eligibility under § 208.13(c)(4), "the asylum officer shall enter a negative credible fear determination with respect to the alien's application for asylum."  8 C.F.R. § 208.30(e)(5)(iii).  Thereafter, the agency must determine whether this same individual, who is barred from asylum under the Third-Country Transit Bar, has established "a reasonable fear of persecution or torture."  *Id.*  As previously noted, the rule itself requires the asylum officer to make an initial determination if the alien is eligible for asylum, and if found to be barred by the rule, to then make an assessment concerning reasonable fear.  *See* 84 Fed. Reg. at 33,838 ("If, however, an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative credible-fear finding.  The asylum officer will then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection.); *see also id.* at 33,837-38.  Additionally, as Ms. Caudill-Mirillo notes, *see* Caudill-Mirillo Decl. ¶ 14, consistent with regulations that the

transit rule did not alter, "[a]n asylum officer's determination shall not become final until reviewed by a supervisory asylum officer."  8 C.F.R. § 208.30(e)(8).

USCIS sent written implementation guidance on July 15, 2019, to all Asylum Division staff regarding an interim final rule set to be published the following day.  *See* Caudill-Mirillo Decl. ¶ 6.  Thereafter, in order to comply with judicial orders stemming from various legal challenges to the Third-Country Transit Bar IFR, and given the technical nature of the rule, USCIS issued updated guidance on a rolling basis to Asylum Division staff and any U.S. Department of Homeland Security ("DHS") officials conducting fear interviews on July 19, 2019; July 24, 2019; August 17, 2019; August 19, 2019; September 9, 2019; September 11, 2019; and September 12, 2019.  *Id.*  But, again, Plaintiffs expressly disclaim any challenge to the transit rule, and so cannot challenge the guidance issued to implement that rule, including that issued July 16 and 19, 2019.

Moreover, the guidance instructing asylum officers at USCIS how to apply the different injunctions that limited the operation of the transit rule between July 24, 2019 and September 12, 2019 implement those *injunctions,* and do not implement section 1225(b)(1), and so cannot be subject to review under 8 U.S.C. § 1252(e)(3).  Section 1252(e)(3), by its terms, provides for jurisdiction—assuming the other statutory pre-requisites are satisfied—to make "determinations" of whether  "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General *to implement such section* [*i.e.,* 8 U.S.C. § 1225(b)(1)], is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."[2]  8 U.S.C. § 1252(e)(3)(ii).  But guidance implementing *injunctions* issued by

---

[2] Under the Homeland Security Act of 2002, many immigration functions of the Immigration and Naturalization Service ("INS") were transferred from the Department of Justice to DHS.  *See* 6

the federal courts in no sense "implements" section 1225(b)(1).  An implementation involves intentional action to accomplish a specific obligation, not a collateral consequence of actions taken to accomplish a different goal.  *See* Webster's Third International Dictionary (1987) (defining "implement" as "to give practical effect to and ensure of actual fulfillment by concrete measures").  The USCIS guidance issued on July 24, 2019; August 17, 2019; August 19, 2019; September 9, 2019; September 11, 2019, and September 12, 2019—in response to the injunction issued by the Northern District of California, the partial stay of that injunction by the Ninth Circuit, the renewed injunction issued by that same district court, the partial stay of that injunction by the Ninth Circuit, and the full nationwide stay of that injunction by the Supreme Court—does not complete, perform, or carry into effect or fulfill any "authority" of the Secretary under section 1225(b), or specifically his authority under section 1225(b)(1) governing expedited removal, 8 U.S.C. § 1252(e)(3)(A).  In no sense is guidance issued to comply with federal court orders "issued by or under the authority of the [Secretary] to implement such section."  *Id.* § 1252(e)(3)(A)(ii).  If Congress had thought to provide federal courts authority to review guidance issue by an agency to implement injunctions issues by *other federal courts*—a dubious proposition placing co-equal district courts in the position of reviewing the import of other court's injunctions—it would have provided for such review explicitly in section 1252(e)(3) by stating that courts may review "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section," *and* "written guidance issued to implement injunctions issued by Article III courts."  Congress, of course, did no such thing.  Rather, as explained in the Conference Report, "Section

---

U.S.C. § 557.  Therefore, for credible-fear proceedings—outside of IJ review of negative credible-fear findings, 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1208.30(g)(2)— implementation of section 1225(b)(1) procedures now is entrusted to the Secretary.

[1252](e)(3) provides for limited judicial review of the validity of *procedures* under section [1225](b)(1)." *See* H.R. Rep. 104-828 (Sept. 24, 1996).  The necessary predicate for review—an implementation "issued by or under the authority of the [Secretary] to implement" section 1225(b)(1), 8 U.S.C. § 1252(e)(3)(A)(ii)—is completely lacking, and so this Court lacks jurisdiction to review USCIS guidance implementing the various injunctions against the transit rule issued between July 24, 2019, and September 11, 2019.

**II.     Plaintiffs' Challenged Policies Are Barred By the 60-Day Statutory Deadline.**

    a.  *60-day bar*

    To the extent the alleged "challenged actions" described in Plaintiffs' complaint do exist (and are otherwise unrelated to the Third-Country Transit Bar), Plaintiffs have failed to demonstrate that they satisfy the INA's jurisdictional requirement that such challenges be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . *is first implemented*."  8 U.S.C. § 1252(e)(3)(B) (emphasis added).  The use of the phrase "is first implemented . . . so that the 60 days ran from a fixed point," rather than a phrase like 60 days "from the date of application of [the challenged procedures] to a particular alien" makes clear that the 60-day limitation "is jurisdictional rather than a traditional limitations period," such that when an alien's claims "arise" is irrelevant.  *See AILA*, 18 F. Supp. 2d at 47. Indeed, for that reason, the District Court in *AILA* concluded that aliens who have had the regulation applied to them outside a specific regulation or policy's relevant 60-day period may not invoke section 1252(e)(3), *id.*, a conclusion the D.C. Circuit affirmed in full.  199 F.3d 1352, 1357 (D.C. Cir. 2000).

    Likewise, another Court in this District recently rejected constitutional challenges filed by other plaintiffs because "the 60-day limit on [such] review has long since expired."  *Dugdale*

*v. CBP*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015).  "[T]he constitutionality of the sixty-day limit" is

now settled law.  *AILA*, 199 F.3d at 1356; *see Dugdale*, 88 F. Supp. 3d at 8 (rejecting argument

that 60-day limit may be circumvented because the court must "leave it to higher authorities to

determine whether grounds exist to depart from these holdings"); *Dugdale*, Civ. A. No. 14-1175

(CRC), 2015 WL 2124937, at *1 (D.D.C. May 6, 2015), *aff'd Dugdale v. Lynch*, 672 F. App'x

35 (D.C. Cir. 2016) ("*AILA* remains binding precedent").  Accordingly, where (as here) Plaintiffs

are added to the litigation after the expiration of the relevant 60-day period, those new Plaintiffs

are barred from pursuing their claims.  *See AILA*, 18 F. Supp. 2d at 45.

As discussed below, although Plaintiffs have not specifically identified any actual written

policies, Defendants have identified several policies that Plaintiffs may believe they are subject

to and may be challenging under section 1252(e)(3)(A) as a "written policy directive, written

policy guideline, or written procedure."  However, Plaintiffs have either presented their

challenge after the expiration of the 60-day bar for those challenges or, with respect to one

known policy, *i.e.*, USCIS's fraud review, lack standing to bring their challenge and fail to

demonstrate any likelihood of success on the merits.

> a. *Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures (2d Am. Compl. ¶ 147) & Limit Migrants' Right to Meaningful Consultation (2d Am. Compl. ¶ 154)*

Plaintiffs claim that Defendants have "failed to inform Plaintiffs of the standards and

process by which Plaintiffs' claims would be judged" in violation of their due process rights and

8 C.F.R. §§ 235.3(b)(4), 208.30(d)(2).  2d Am. Compl. ¶ 147.  In addition, Plaintiffs allege that

Defendants "schedule interviews on unnecessarily truncated scheduling without sufficient

advance written notice" in violation of 8 U.S.C. § 1225(b)(1)(B)(iv), 8 C.F.R. § 208.30(d)(4),

and the First Amendment (among other cited authorities).[3]  2d Am. Compl. ¶ 154.  Plaintiffs do

not offer any further explanation of this alleged policy, except to conclude that it allegedly

negatively impacts Plaintiffs' access to counsel.  *Id.*

Defendants deny that any such policies exist.  *See* Caudill-Mirillo Decl. ¶¶ 23, 29.

Defendants note, however, that these alleged policies appear to relate to policies currently at

issue in *L.M.-M. v. Cuccinelli*, Civil A. No. 19-2676-RDM (D.D.C., Complaint filed on Sept. 6,

2019).  That lawsuit involves a challenge to a July 2, 2019, USCIS guidance memorandum

entitled "Reduction of Credible Fear Consultation Period."  *See* Caudill-Mirillo Decl., Ex. 1.

The Memorandum observed that asylum seekers have a statutory and regulatory right to consult

with persons of their choosing prior to a credible-fear interview, and reduced the minimum

consultation period from 48 hours to "one full calendar day from the date of arrival at a detention

facility."[4]  *See id.*  In addition, USCIS changed the process that applies to requests to postpone a

credible-fear interview.  *See id.*, Ex. 2.  Before the issuance of the new directive, USCIS

considered continuance requests on a case-by-case basis so long as they did not unreasonably

delay the credible-fear process.  Under the new directive, USCIS "require[s] extraordinary

circumstances warranting approval of a request to reschedule so that USCIS can ensure,

consistent with the statute, that the consultation period does not unreasonably delay the overall

process."  *Id.*

Here, USCIS does not dispute that the agency reduced of the minimum timeframe for

consultation prior to a credible fear interview from 48 hours to one full calendar day.  *See*

---

[3] Plaintiffs also cite 5 U.S.C. § 555(b); 8 C.F.R. § 292.5(b).

[4] Defendants note that neither the INA nor any implementing regulations require or provide for
any timeframe with respect to these consultations.

Caudill-Mirillo Decl. ¶ 23.  However, the implementation date of that policy was July 8, 2019.

*Id.*  Accordingly, in order to challenge these policies, Plaintiffs must have filed their lawsuit on

or before September 6, 2019.  Because this action was not filed until September 16, 2019 (*see*

ECF No. 1), Plaintiffs are barred by the 60-day jurisdictional limitation in section 1252.[5]

        b.   *Proceed Without Required Staffing, Training, or Guidance (2d Am. Compl. ¶ 148)*

Plaintiffs allege that Defendants have implemented "a new policy of proceeding with fear

interviews absent necessary staffing, training, and direction for those conducting them."  2d Am.

Compl. ¶ 148.  Plaintiffs allege that Defendants "have conspired to limit the information they put

forth in writing, impeding necessary training opportunities and direction for front-line

adjudicators."  *Id*.  Plaintiffs further allege that credible-fear interviewers did not receive

adequate training and that officers from CBP have been used to conduct credible-fear interviews.

*Id.*

Here, no such written policy exists as to "proceeding with fear interviews absent

necessary staffing, training, and direction for those conducting them."  However, some Border

Patrol Agents from CBP, who have been appropriately trained by USCIS, are on assignment to

USCIS to conduct credible fear interviews.  *See* Caudill-Mirillo Decl. ¶ 24.  Indeed, on July 11,

2019, USCIS entered into a Memorandum of Agreement with CBP regarding assigning some

CBP agents to USCIS, where they would receive training and subsequently conduct credible fear

interviews under the supervision of a supervisory asylum officer.  *Id.* ¶ 25.  Accordingly,

pursuant to section 1252(e)(3), Plaintiffs had until September 9, 2019, to file their challenge to

---

[5] Moreover, as the government has demonstrated in the *L.M.-M.* action, USCIS's policy is fully
consistent with the requirements of the Administrative Procedure Act ("APA").  *See L.M.-M. v.
Cuccinelli*, Civil A. No. 19-2676-RDM (D.D.C., Dkt. Entry 17 at 31 (Defendants' Memorandum
in Opp'n to Pls.' Mot for Prelim. Inj.))

this policy.  Therefore, because Plaintiffs waited until September 16, 2019, to file their lawsuit, their claims regarding CBP agents conducting asylum officers duties are time-barred.

Even if Plaintiffs' challenge were timely, which it is not, they have not alleged that the training and use of CBP agents on assignment to USCIS as asylum officers is inconsistent with the INA or the statute's implementing regulations.  Plaintiffs appear to suggest that only employees of USCIS may conduct asylum interviews.  *See, e.g.,* 2d Am. Compl. ¶ 159.  That is wrong.  Section 1225(b)(1)(E) codifies who may conduct asylum interviews—including credible fear interviews.  Under the statute, an "'asylum officer' means an *immigration officer* who—(i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 1158 of this title, and (ii) is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications."  (emphasis added).  An "immigration officer" is separately defined at 8 U.S.C. § 1101(a)(18) as "any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this chapter or any section of this title."  The Attorney General and Secretary have promulgated that "designation" at 8 C.F.R. § 1.2:

> *Immigration officer* means the following employees of the Department of Homeland Security, including senior or supervisory officers of such employees, designated as immigration officers authorized to exercise the powers and duties of such officer as specified by the Act and this chapter I: aircraft pilot, airplane pilot, asylum officer, refugee corps officer, Border Patrol agent, contact representative, deportation officer, detention enforcement officer, detention officer, fingerprint specialist, forensic document analyst, general attorney (except with respect to CBP, only to the extent that the attorney is performing any immigration function), helicopter pilot, immigration agent (investigations), immigration enforcement agent, immigration information officer, immigration inspector, immigration officer, immigration services officer, investigator, intelligence agent, intelligence officer, investigative assistant, special agent, other officer or employee of the

Department of Homeland Security or of the United States as designated by the Secretary of Homeland Security as provided in 8 CFR 2.1.

The Secretary has therefore designated many officers employed by DHS as "immigration officers," including employees of CBP.  *See id.*

According to Ms. Caudill-Mirillo, USCIS has been utilizing many resources to assist with the ongoing surge of cases arising out of the southwest border, while minimizing the adverse impact as much as possible this caseload has on the affirmative asylum backlog.  *See* Caudill-Mirillo Decl. ¶ 18.  In addition to using re-trained and detailed former asylum officers and refugee officers who are working in other parts of USCIS to assist with the credible fear caseload, USCIS has been using CBP agents on assignment to USCIS who meet the statutory definition of an asylum officer under 8 U.S.C. 1225(b)(1)(E).  *See id.* ¶ 19.  Contrary to Plaintiffs' allegations, these officers may conduct credible fear interviews *only after* receiving, and following successful completion of, extensive training led by the USCIS Asylum Division. *Id.* (describing the types of required training).  Therefore, any attempt by Plaintiffs to bring an as-applied challenge as to any particular asylum officer's training or conduct must fail.  *See AILA*, 18 F. Supp. 2d at 58.

c.  *Mandatory Concurrence Review by the Fraud Detection Unit (2d Am. Compl. ¶ 157)*

Plaintiffs allege that Defendants now "require any cases that have received a positive fear finding by the interviewer, and positive fear concurrence by the supervisory asylum officer, to then be further reviewed by USCIS's Fraud Detection and National Security Directorate."  2d Am. Compl. ¶ 157.  Plaintiffs allege that "[u]pon information and belief," this policy has resulted in the "mandatory rescission of the overwhelming majority of cases sent for review[.]"  *Id.*

This "challenged action" refers to a specific program at the South Texas Family Residential Center whereby cases that were interviewed and initially screened in as positive fear

determinations were reviewed by Fraud Detection and National Security ("FDNS") officers. *See* Caudill-Mirillo Decl. ¶ 32. This policy was implemented from August 30, 2019, to November 7, 2019. *Id.* Specifically, after completion of post-interview FDNS review, the asylum officer would consider the FDNS officer's review and then proceed with making the fear determination. *Id*. Ultimately, however, the final decision on the outcome rested with the asylum officer and/or the asylum officer's chain of command. *Id.* Since November 7, 2019, FDNS generally only conducts review of South Texas Family Residential Center cases prior to an interview by an asylum officer. *Id.*

First, none of the Plaintiffs added in the first amended complaint or second amended complaint have timely challenged this policy, which was implemented from August 30, 2019, to November 7, 2019, with written guidance disseminated on September 5, 2019. *Id*. ¶ 16. Moreover, *none* of the Plaintiffs in this action have established standing to challenge this policy. To establish Article III standing, Plaintiffs must demonstrate an (1) "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The key word is 'likely,' and thus, 'the prospect of obtaining relief from the injury as a result of a favorable ruling' cannot be 'too speculative.'" *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Thus, if "the challenged conduct is at best an indirect or contributing cause of the plaintiff's injury," "the plaintiff faces an uphill climb in pleading and proving redressability." *West v. Lynch*, 845 F.3d 1228, 1236 (D.C. Cir. 2017).

Here, Plaintiffs must demonstrate "a substantial likelihood of standing"; otherwise, they are "not entitled to a preliminary injunction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d

905, 913 (D.C. Cir. 2015).  Plaintiffs cannot rest on "mere allegations" but must instead "set forth[,] by affidavit or other evidence[,] specific facts" that "demonstrate a substantial likelihood of standing." *Elec. Privacy Information Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017).  Put differently, any standing claim "must be evaluated under the heightened standard for evaluating a motion for summary judgment in determining whether or not to grant the motion for preliminary injunction." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 104 (D.C. Cir. 2019).  Plaintiffs have fallen far short of showing the requisite substantial likelihood of standing.

Importantly, Plaintiffs' complaint (much like their two prior complaints) is entirely devoid of any allegations that any positive credible fear determination was reversed based on a subsequent fraud review by USCIS.  In addition, Plaintiffs have submitted no declarations or other evidence establishing any such reversal.  In fact, Plaintiffs have only submitted declarations in support of their first motion for a TRO (and therefore only for those initial Plaintiffs), and no supplemental declarations have been submitted ever since.  Accordingly, none of the Plaintiffs added via the first and second amended complaints have submitted any supporting evidence on which Plaintiffs to base their claims and have entirely failed to establish standing here with respect to this policy.  And none of Plaintiffs' declarations—regardless of which complaint is reviewed—mention any fraud review or reversal of an initial positive credible fear determination.

Indeed, Plaintiffs' motion for TRO appears to have waived the claim entirely.  Plaintiffs devote all of two pages to their merits arguments, vaguely invoking the "due process clause" and the Administrative Procedure Act ("APA") to argue that "The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. and implementing regulations both authorize and place

important limits on some acts of detention and removal" and that the challenged policies violate

the APA because they "must be read harmoniously with the APA."  ECF 26 at 26-27.  Plaintiffs

then argue that under the APA "[a] court reviewing agency action 'must assess . . . whether the

decision was based on a consideration of the relevant factors and whether there has been a clear

error of judgment'; [and] it must 'examin[e] the reasons for agency decisions—or, as the case

may be, the absence of such reasons.'"  *Id.* (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)).

True enough, so far as Plaintiffs have satisfied all the threshold requirements for APA review—

including identifying a final agency action.[6]  But, even assuming Plaintiffs have identified

otherwise reviewable agency action under the APA, a point the government does not concede,

other than parroting the standard of review, Plaintiffs do not actually explain *how* the fraud

detection directive violates the APA.  *See* ECF 26 at 25-27.  The claim is therefore waived.  *See.*

*Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1120 n.6 (D.C. Cir. 2017) (explaining

that party must raise "sufficiently in its opening brief" an issue "to avoid waiver").

Regardless, even assuming Plaintiffs have not waived this claim, it must fail.  It is well-

settled that judicial review under the APA is highly deferential.  *See, e.g.*, *Motor Vehicle Mfrs.*

*Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983).  The court "must give

appropriate deference to predictive judgments that necessarily involve the expertise and

experience of the agency," *Time Warner Entm't Co., L.P. v. FCC*, 240 F.3d 1126, 1133 (D.C.

Cir. 2001), and "may not substitute [its] judgment for that of the Secretary."  *Dep't of Commerce*

*v. New York*, 139 S. Ct. 2551, 2569 (2019).  As the Supreme Court has explained in identical

circumstances, the agency provides a "reasoned explanation" if the agency shows that its action

---

[6] Plaintiffs do no allege any final agency action with respect to the fraud directive, so their claim
fails for that reason as well.

"is permissible under the statute, that there are good reasons for it, and that the agency believes [the action] to be better," than the prior policy, "which the conscious change of course adequately indicates."  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

That standard is readily met here.  Nothing in section 1225(b)(1) prohibits USCIS from reviewing credible fear determinations for indicia of fraud.  The statute provides only that "An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General."  8 U.S.C. § 1225(b)(1)(B)(i).  And, as previously noted, an asylum officer must be "supervised."  *Id.* § 1225(b)(1)(E).  Nothing in either of those provisions precludes USCIS from reviewing positive credible fear determinations by line officers for indicia of fraud.  The fraud directive is thus "permissible under the statute."  *Fox Television*, 556 U.S. at 515.

The directive is also supported by "good reasons."  As explained by USCIS, "[a]s a general matter, USCIS conducts reviews of cases to analyze fraud trends and identify potential areas of inquiry for officers."  Caudill-Mirillo Decl. ¶ 16.  Plaintiffs do not, and could not, suggest that a review for fraud is an impermissible policy goal, and wisely do not suggest as much in their motion.  Notably, "[t]hese reviews are conducted by USCIS Fraud Detection and National Security ("FDNS") immigration officers," and those "officers do not conduct credible fear screenings or adjudicate asylum applications."  *Id.*; *see also id.,* Ex. 5, "FDNS Review of Cases at Dilley FRC."  "After completion of post-interview FDNS review, the asylum officer would consider the FDNS officer's review and then proceed with making the fear determination. Ultimately, however, the final decision on the case rest[s] with the asylum officer and/or the asylum officer's chain of command."  *Id.*  Plaintiffs point to nothing supporting their claim that review for fraud is illegitimate, and the court must defer to the agency's reasoned determination

that fraud review of credible fear determination at the South Texas Family Residential Center is warranted.  *See, e.g., EarthLink, Inc. v. FCC*, 462 F.3d 1, 12 (D.C. Cir. 2006) ("predictive judgments about areas that are within the agency's field of discretion and expertise are entitled to particularly deferential review").

Finally, the fraud detection policy is reasonable because "the agency believes [it] to be better" than the absence of such fraud detection, "which the conscious change of course adequately indicates."  *See Fox Television*, 556 U.S. at 515.  "[T]he fact that [plaintiffs] can point to a hypothetical case in which the [policy] might lead to an arbitrary result does not render the [policy] facially invalid."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 667-68 (D.C. Cir. 2019).  And Plaintiffs fail to allege that the policy has even been applied to them, let alone that it has been so applied in an arbitrary way.  That failure falls far short of the "extraordinary" showing Plaintiffs must make, *see Winter*, 555 U.S. at 22, so even if Plaintiffs' claims are otherwise justiciable despite the threshold pleading, time-bar, and Article III standing issues identified, Plaintiffs cannot demonstrate a likelihood of success, and their claim on this score must fail at this stage.[7]

---

[7] Plaintiffs' vague claims concerning the due process clause, *see* ECF 26 at 25-27, do not change this analysis.  Applicants for admission like Plaintiffs have no constitutionally cognizable liberty interest in being admitted to the United States.  *Rafeedie v. INS*, 880 F.2d 506, 512-13 (D.C. Cir. 1989).  "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), and so "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."  *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Dia v. Ashcroft*, 353 F.3d 228, 243 (3d Cir. 2003) (en banc) (such "[a]liens only have those statutory rights granted by Congress").  Thus, it is "well settled that aliens seeking admission to the United States cannot demand that their application for entry be determined in a particular manner or by use of a particular type of proceedings.  For those aliens, the procedure fixed by Congress is deemed to be due process of law."  *Rafeedie*, 880 F.2d at 512-13); *see also id.* ("[A]liens seeking admission to the United States . . . have no constitutional rights to any prescribed process.").  This Circuit has already upheld the expedited removal statutory and regulatory provisions.  *See AILA*, 18 F.

Therefore, Plaintiffs' challenge to USCIS's fraud review, even if timely for at least some Plaintiffs, must ultimately fail.

### III.    The Majority of Plaintiffs' "Challenged Actions" Fail to Sufficiently Identify A Written Policy Directive, Written Policy Guideline, or Written Procedure.

As noted above, section 1252(e)(3) limits the Court's jurisdiction over Plaintiffs' claims solely to review "procedures and policies adopted" "to implement the provisions of section 1225(b)(1)."  8 U.S.C. § 1252(a)(2)(A).  And section 1252(e)(3)(A) authorizes a court to review, as relevant here, only "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or the Secretary of Homeland Security to implement [section 1225(b)]."  This provision "bar[s] the unwritten actions of the agency from judicial review."  *Khan v. Holder*, 608 F.3d 325, 331 (7th Cir. 2010); *AILA*, 18 F. Supp. at 58 ("[B]ased on the clear language of the jurisdictional provision of [section 1252(e)(3)(A)(ii)], this Court cannot review unwritten policies or practices.").

Here, many of the "challenged actions" in this lawsuit do not appear in a written policy directive, guideline, or procedure, and so section 1252(e)(3) does not authorize this Court to address it.  Indeed, such as-applied challenges are barred.  *See AILA*, 18 F. Supp. 2d at 58 ("'as applied' challenge" that the government "is failing to follow the [] Regulations" or challenge to "unwritten" "policies and procedures that have resulted from the regulations" is barred).

---

Supp. 2d at 59, *aff'd*, 199 F.3d 1352; *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) (Congress "could have created an expedited removal scheme based entirely on the [Secretary's] discretion"); *cf. Zakonaite v. Wolf*, 226 U.S. 272, 275 (1912) (explaining it is "entirely settled" that the "inquiry" concerning an alien's admissibility "may be properly devolved upon an executive department or subordinate officials thereof, and that the findings of fact reached by such officials, after a fair though *summary hearing*, may constitutionally be made conclusive.").  Thus, Plaintiffs' due process claim turns entirely on whether the *statute* authorizes the fraud detection directive.  *Knauff*, 338 U.S. at 544.  Given that absence of any freestanding liberty interest or constitutional right at issue, the due process claim cannot exist separate from the APA claim, and fails for the same reasons.

Congress emphasized the "written" requirement because it sought to shield such *ad hoc* implementation decisions (such as those presented here) from judicial review.  *See AILA*, 199 F.3d at 1354, 1356 ("affirm[ing]" the district court's decision that "there was no jurisdiction to challenge the particular practices of immigration officials"); 18 F. Supp. 2d at 58 (noting that "discretion[ary] [decisions] placed in the hands of individual INS agents" are not subject to judicial review under section 1252(e)(3)).

<blockquote>

a. *Limit Fact-Finding Relevant to a Significant possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture (2d Am. Compl. ¶ 150)*

</blockquote>

Plaintiffs allege that "[i]nterviewers now improperly limit questions, so they fail to elicit testimony necessary to develop all facts relevant or supportive of an asylum-seeker's eligibility for asylum[.]"  2d Am. Compl. ¶ 150.  However, no such "written policy directive, written policy guideline, or written procedure" exists.  *See* Caudill-Mirillo Decl. ¶ 27.

<blockquote>

b. *Make Interviews Adversarial (2d Am. Compl. ¶ 151-52)*

</blockquote>

Plaintiffs allege that, contrary to 8 C.F.R. § 208.30(d), Defendants have conducted credible fear interviews in an adversarial fashion.  2d Am. Compl. ¶ 151.  Plaintiffs allege that they were interviewed three or more times by multiple officers.  *Id.*  Plaintiffs also allege that CBP agents have conducted interviews instead of "trained asylum officers[.]  *Id.*  However, no such "written policy directive, written policy guideline, or written procedure" exists.  *See* Caudill-Mirillo Decl. ¶ 28.

<blockquote>

c. *Do Not Apply the Most Favorable Precedent in CFI Proceedings (2d Am. Compl. ¶ 156)*

</blockquote>

Plaintiffs allege that Defendants' interviews are not rejecting the most favorable case law in credible fear proceedings" in violation of the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018).  2d Am. Compl. ¶ 156.  However, USCIS remains in compliance with the

permanent injunction issued in *Grace*, which requires the asylum officer to apply the most

favorable circuit court precedent in credible fear proceedings, regardless of where an asylum-

seeker is detained.  *See* Caudill-Mirillo Decl. ¶ 31.  And Plaintiffs suggestion that this Court

should review whether the government is in compliance with another court's injunction is

especially misplaced where that court retains exclusive jurisdiction to enforce the terms of its

injunction.

> d.  *Withholding Facts Relied Upon in Issuing the Credible Fear Determination (2d Am. Compl. ¶ 158)*

Plaintiffs allege that "interviewers now withholding critical information relied upon when

issuing a negative fear determination" and that Plaintiffs are not informed of the basis for their

denials.  2d Am. Compl. ¶ 158.  Plaintiffs allege that this policy is contrary to 8 C.F.R.

§ 208.30(e)(1), which requires an asylum officer to create a written record of his or her credible

fear determination.  *Id.*  However, no such "written policy directive, written policy guideline, or

written procedure" exists.  Caudill-Mirillo Decl. ¶ 33.

> e.  *Abandon Child-Sensitive Treatment in Credible Fear Proceedings (2d Am. Compl. ¶ 159)*

Plaintiffs allege that Defendants require telephonic interviews for families detained at the

South Texas Family Residential Center.  2d Am. Compl. ¶ 159.  Plaintiffs allege that these

telephonic interviews are not "child-friendly" and have been conducted in an adversarial fashion.

*Id.*  However, no such "written policy directive, written policy guideline, or written procedure"

exists.  *See* Caudill-Mirillo Decl. ¶ 34.  As explained by Ms. Caudill-Mirillo, credible fear

interviews may be conducted either in person or telephonically.  The determination as to how

interviews will be conducted is driven by a range of operational factors, including but not limited

to, the physical interview space available at the detention facilities, the availability of officers to

travel to the detention facilities, and the number of interviews that must be conducted within a

prescribed time period.  No new directives or policies have been issued restricting the ability to conduct in person or telephonic interviews.

## CONCLUSION

For these reasons, as well as those reasons advanced by Defendants in their opening brief and during the December 18, 2019, hearing, Plaintiffs' TRO motion for a stay of removal should be denied.

Further, pursuant to Federal Rule of Civil Procedure 12(h)(3), the Court should dismiss Plaintiffs' lawsuit in light of the clear absence of jurisdiction under the 60-day limit for all claims (except for their claim regarding USCIS's fraud detection policy).  For that claim, the Court should dismiss for lack of standing as to all Plaintiffs (and additionally for lack of jurisdiction under the 60-day limit for those Plaintiffs added after the initial complaint was filed).

Dated: December 27, 2019          Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar #472845

DANIEL F. VAN HORN
Chief, Civil Division
D.C. Bar #924092

/s/   *Christopher C. Hair*
CHRISTOPHER C. HAIR, PA Bar #306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

*Counsel for Defendants*