# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

M.M.V., *et al.*,                    )
      *Plaintiffs,*              )
                    )
                    )
v.                                   )                    No. 1:19-cv-2773
                    )
Chad F. Wolf, *et al.*,              )
      *Defendants.*              )
———————————————)

## DECLARATION OF ASHLEY B. CAUDILL-MIRILLO

     I, Ashley B. Caudill-Mirillo, pursuant to 28 U.S.C. § 1746, and based upon personal knowledge and information made known to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.  I am currently the Deputy Chief of the Asylum Division with U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS).  I have held this position since February 2019.  Prior to becoming the Deputy Chief of the Asylum Division, I served as the Management Branch Chief at Asylum Division since 2015, where I was responsible for overseeing the Division's resource management and strategic planning, as well as its contracts, performance management initiatives, and labor-management obligations among other duties.  I joined USCIS as an Asylum Officer in the New York Asylum Office in 2008 and, in 2011, I became a Supervisory Asylum Officer.  In 2012, I was selected to be the Deputy Director of the New York Asylum Office.  In my current position as Deputy Chief of the Asylum Division, I oversee all Asylum Offices nationwide as well as

the Asylum Division's headquarters component, which is involved in policy development, quality assurance, and overall management of the asylum program.

2.  The Asylum Division is a component of USCIS that: adjudicates applications for asylum pursuant to 8 U.S.C. § 1158; adjudicates applications for relief under section 203 of the Nicaraguan Adjustment and Central American Relief Act (NACARA), enacted as title 2 of Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997) (as amended by Technical Corrections to the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-139, 111 Stat. 2644 (1997)); makes non-refoulement assessments under the Migrant Protection Protocols, which implement 8 U.S.C. § 1225(b)(2)(C); determines threshold protection screening under "Implementation of the Agreement Between the Government of the United States of America and the Government of Canada Regarding Asylum Claims Made in Transit and at Land Border Ports-of-Entry," 69 FR 69479, and "Implementing Bilateral and Multilateral Asylum Cooperative Agreements Under the Immigration and Nationality Act," 84 FR 63994; conducts reasonable fear screening determinations regarding whether particular aliens have a reasonable fear of persecution or torture pursuant to the regulations at 8 C.F.R. § 208.31; and, conducts credible fear screening determinations regarding whether particular aliens have a credible fear of persecution or torture upon return to their countries of origin pursuant to 8 U.S.C. § 1225(b)(2)(B) and the regulations at 8 C.F.R. § 208.30.

## Information on the Credible Fear Legal Framework

3.  Aliens subject to expedited removal pursuant to 8 U.S.C. § 1225(b), and who indicate an intention to apply for asylum or who express a fear of persecution, torture, or return to their country of nationality, receive a credible fear determination from an Asylum Officer. 8 U.S.C. § 1225(b)(1)(B)(i); 8 C.F.R. §§ 235.3(b)(4), 1235.3(b)(4).  A credible fear of

persecution or torture is established when the alien establishes either eligibility for asylum under 8 U.S.C. § 1158, eligibility for statutory withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal under the Convention Against Torture pursuant to 8 C.F.R. §§ 208.16–.17 using the appropriate legal standard.

4. Prior to the July 16, 2019, a credible fear of persecution or torture was established when there was a significant possibility, taking into account the credibility of the statements made by the alien in support of his or her claim and such other facts as are known to the asylum officer, that the alien could establish eligibility for asylum under 8 U.S.C. § 1158, eligibility for statutory withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal under the Convention Against Torture pursuant to 8 C.F.R. §§ 208.16–.17.

5. On July 16, 2019, USCIS began implementing "Asylum Eligibility and Procedural Modifications," 84 FR 33829 (July 16, 2019), commonly referred to as the Third-Country Transit Bar Interim Final Rule (IFR), which was codified at 8 C.F.R. § 208.13(c)(4) and 8 C.F.R. § 1208.13(c)(4). The Third-Country Transit Bar IFR provides (with limited exceptions) that "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be ineligible for asylum . . ." 84 FR at 33,843.

6. Written implementation guidance was sent via email on July 15, 2019 to all USCIS Asylum Division staff regarding the IFR to be published the following day. To comply with judicial orders stemming from various legal challenges to the Third-Country Transit Bar IFR, and given the technical nature of the rule, updated guidance was issued on a rolling basis to Asylum Division staff and any DHS officials conducting fear interviews on July 19, 2019; July 24, 2019; August 17, 2019; August 19, 2019; September 9, 2019; September 11, 2019;

and September 12, 2019.  EX. 3 USCIS Third-Country Transit Bar IFR Training and Guidance.

7.   Upon implementation, the legal standard applied in an alien's case depends on whether he or she is subject to the Third-Country Transit Bar IFR or whether he or she can establish an exception to the Third-Country Transit Bar IFR. Aliens who are subject to the Third-Country Transit Bar IFR and as a result are barred from asylum eligibility, will be screened for persecution or torture under the reasonable fear legal standard. The reasonable fear standard in this context is used, not as part of an eligibility determination for asylum, but rather as a screening mechanism to determine whether there is a reasonable possibility he or she can establish eligibility for statutory withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal pursuant to 8 C.F.R. §§ 208.16–.17, implementing the U.S. obligations under Article 3 of the Convention against Torture.  All DHS officials conducting fear interviews for individuals subject to the Third-Country Transit Bar IFR have been trained on the applicable reasonable fear standard. EX. 3 USCIS Third-Country Bar IFR Training and Guidance.

8.   Aliens who are not subject to the Third-Country Transit Bar IFR or who otherwise establish an exception to it are screened for persecution or torture under the significant possibility standard. 8 C.F.R. 208.30(e)(3).

**Information on the Credible Fear Interview Process and Procedure**

9.   When an alien expresses a fear or intention to apply for asylum, he or she receives a copy of the credible fear orientation Form M-444, Information about Credible Fear.  Aliens are oriented on the process and standards for credible fear interviews. An asylum officer cannot proceed with a credible fear interview unless a Form M-444 is signed and dated by the alien, or a notation that the alien refused to sign the form has been completed. Asylum officers are

required to verify at the interview that the alien received Form M-444 and has an

understanding of the credible fear determination process. 8 CFR § 208.30(d)(2).

10. As outlined in Form M-444, aliens in the credible fear process are also provided with a

consultation period to allow the alien an opportunity to consult with a relative, representative,

attorney, friend or any other person of their choosing prior to the credible fear interview. 8

C.F.R. § 208.30(d)(4).  On July 8, 2019, the USCIS Asylum Division notified its staff,

detailees, and DHS officials conducting credible fear interviews that the minimum timeframe

for consultation prior to a credible fear interview at all detention facilities, including family

residential centers, would be one full calendar day. EX. 1, Memorandum for the Acting

Secretary, Reduction of Credible Fear Consultation Period. ("A minimum of one full

calendar day is to transpire between the arrival of an alien at a detention site or initial receipt

of Form M-444 (whichever is later), and any credible fear interview.")  USCIS also, on July

8, 2019, established "a new policy that requires that an alien who is requesting to reschedule

a set day and time for the CF interview must show extraordinary circumstances warranting

approval of such a request so that USCIS can ensure, consistent with the statute, that the

consultation period provided does not unreasonably delay the overall CF process."  Ex. 2,

Timing of the CF Interview After Arrival at a Detention Facility + Handling of Requests to

Reschedule CF Interviews.

11. Each officer conducting a credible fear interview creates a written record of his or her

determination, including a summary of the material facts as stated by the alien, any additional

facts relied on by the officer, and the officer's determination of whether, in light of such

facts, the alien has established a fear of persecution or torture under the relevant standard. 8

C.F.R. § 208.30(e)(1).

12. After implementation of the Third-Country Transit Bar IFR, an asylum officer must determine whether the Third-Country Transit Bar IFR applies and whether any exceptions to the bar are applicable. *See* "Asylum Eligibility and Procedural Modifications," 84 FR 33829, 33837-8 (July 16, 2019); 8 CFR 208.13(c)(4); 8 CFR 208.30(e)(5)(iii). If the asylum officer determines that the bar applies and no exceptions are applicable, the officer must explain to the alien that he or she is ineligible for asylum and must therefore establish a fear of persecution or torture under the reasonable possibility standard. The implementation guidance requires that this explanation must be documented in an orientation memo to the file. EX. 3, USCIS Third-Country Transit Bar IFR Training and Guidance.

13. Consistent with existing credible fear procedures, the individual being interviewed does not receive a determination on his or her screening for withholding or CAT protection, positive or negative, during the interview. This information is communicated via a written decision notice that is served on the alien after supervisory review has been completed.

14. All credible fear determinations must be reviewed and concurred upon by a supervisory asylum officer prior to issuance, and are not considered final until supervisory review occurs. 8 C.F.R. § 208.30(e)(7).

15. Generally, while most credible fear claims require only one interview, certain cases may have multiple interviews for various reasons, including but not limited to, the need for further questions on the substance of a claim necessary to meet legal sufficiency standards, interpreter availability, attorney reschedule requests, or other operational necessities.

16. As a general matter, USCIS conducts reviews of cases to analyze fraud trends and identify potential areas of inquiry for officers. These reviews are conducted by USCIS Fraud Detection and National Security (FDNS) immigration officers. FDNS immigration officers do not conduct credible fear screenings or adjudicate asylum applications. For example,

from August 30, 2019 to November 7, 2019, cases at the South Texas Family Residential Center in Dilley, Texas that were interviewed and initially screened in as positive fear determinations were reviewed by FDNS officers.  Written guidance was disseminated on September 5, 2019.   EX. 5, "FDNS Review of Cases at Dilley FRC".  After completion of post-interview FDNS review, the asylum officer would consider the FDNS officer's review and then proceed with making the fear determination.  Ultimately, however, the final decision on the case rested with the asylum officer and/or the asylum officer's chain of command. Since November 7, 2019, FDNS officers generally only conduct review of South Texas Family Residential Center cases prior to an interview by an asylum officer.  FDNS review procedures are regularly assessed and updated to reflect operational efficiencies.

17. These procedures have included FDNS review of cases both prior to interview and after an interview with an asylum officer.

**Information on Credible Fear Staffing**

18. USCIS has utilized many resources to assist with the surge of credible fear cases, while attempting to minimize the adverse impact this caseload has on the affirmative asylum backlog.  This effort includes the training and detailing of refugee officers to assist with Asylum Division caseloads, including credible fear.  USCIS has also re-trained and detailed former asylum officers and refugee officers who are working in other parts of USCIS to assist with the credible fear caseload.  For each of these groups, the Asylum Division has developed and deployed trainings consistent with that cohort's prior training history and experience, such that the trained officers meet the statutory definition of an asylum officer under 8 U.S.C. § 1225(b)(2)(E).

19. U.S. Border Patrol agents (BPAs) on assignment to USCIS who meet the statutory definition of an asylum officer under 8 U.S.C. 1225(b)(2)(E), have been delegated authority to perform

credible fear interviews.  EX. 4 Memorandum of Agreement between USCIS and Border

Patrol.  BPAs may conduct credible fear interviews following successful completion of

training led by the USCIS Asylum Division.  The training includes approximately 80 hours

of distance training, up to 120 hours of face-to-face training, and additional on-the-job

training.  Distance training consists of self-study of lesson plans and other written materials,

webinars, and exercises.  The face-to-face training consists of classroom lectures, practical

exercises, interview observations, written practicums, mock interviews, and observed

interviews.  On-the-job training consists of sessions on local procedures, interview

observations, and observed interviews. The training program of BPAs is modeled on in-

house trainings that have been provided to USCIS asylum officers for varying reasons when

needed.

20. As is the case with all individuals conducting credible fear interviews, the above referenced

laws, policies, and procedures are all binding.

**Plaintiffs' Allegations**

21. Plaintiffs' Second Amended Complaint alleges that eleven USCIS policies may exist, and

created their own names and titles for the purported policies as follows:

A.  Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures
B.  Proceed Without Required Staffing, Training, or Guidance
C.  Issue Summary Negative Determinations to Eliminate Supervisory Review and
    Concurrence and to Avoid Developing a Complete Written Record
D.  Limit Fact-Finding Relevant to a Significant Possibility of Eligibility for Asylum,
    Withholding of Removal, and Relief Under the Convention Against Torture
E.  Make Interviews Adversarial
F.  Limit Migrants' Right to Meaningful Consultation
G.  Apply RFI Standards Without RFI Protections
H.  Do Not Apply the Most Favorable Precedent in CFI Proceedings
I.  Mandatory Concurrence Review by the Fraud Detection Unit
J.  Withholding Facts Relied Upon in Issuing the Credible Fear Determination
K.  Abandon Child-Sensitive Treatment in Credible Fear Proceedings

22. USCIS does not use any of the names or titles that Plaintiffs assigned for any policy, process, or action.

23. What Plaintiffs refer to as "A. Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures" could be construed to refer to USCIS's reduction of the minimum timeframe for consultation prior to a credible fear interview and changes to what is required to reschedule an interview. EX. 1, Memorandum for the Acting Secretary; EX. 2, Timing of the CF Interview After Arrival at a Detention Facility + Handling of Requests to Reschedule CF Interviews.  On July 8, 2019, the minimum timeframe for consultation was reduced from 48 hours to one full calendar day.   EX. 2, Timing of the CF Interview After Arrival at a Detention Facility + Handling of Requests to Reschedule CF Interviews.  USCIS also, on July 8, 2019, established "a new policy that requires that an alien who is requesting to reschedule a set day and time for the CF interview must show extraordinary circumstances warranting approval of such a request so that USCIS can ensure, consistent with the statute, that the consultation period provided does not unreasonably delay the overall CF process." *Id*.

24. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "B. Proceed Without Required Staffing, Training, or Guidance." As noted above, USCIS issued guidance beginning on July 15, 2019, through at least September 2019, on the Third-Country Transit Bar IFR and subsequent judicial orders. EX. 3 USCIS Third-Country Bar IFR Training and Guidance; "Asylum Eligibility and Procedural Modifications," 84 FR 33829 (July 16, 2019).

25. Additionally, on September 11, 2019, USCIS entered into a Memorandum of Agreement with U.S. Border Patrol on the training and use of Border Patrol Agents for credible fear interviews. EX. 4 Memorandum of Agreement between USCIS and Border Patrol.

26. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "C. Issue Summary Negative Determinations to Eliminate Supervisory Review and Concurrence and to Avoid Developing a Complete Written Record." Rather, "[a]n asylum officer's determination shall not become final until reviewed by a supervisory asylum officer." 8 C.F.R. § 208.30(e)(8).

27. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "D. Limit Fact-Finding Relevant to a Significant Possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture."

28. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "E. Make Interviews Adversarial."

29. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "F. Limit Migrants' Right to Meaningful Consultation" at the South Texas Family Residential Center in Dilley, Texas, but this could potentially be construed to refer to USCIS's reduction of the minimum timeframe for consultation prior to a credible fear interview. EX. 1, Memorandum for the Acting Secretary.  On July 8, 2019, the minimum timeframe for consultation was reduced from 48 hours to one full calendar day.   EX. 2, Timing of the CF Interview After Arrival at a Detention Facility + Handling of Requests to Reschedule CF Interviews. USCIS also, on July 8, 2019, established "a new policy that requires that an alien who is requesting to reschedule a set day and time for the CF interview must show extraordinary circumstances warranting approval of such a request so that USCIS can ensure, consistent with the statute, that the consultation period provided does not unreasonably delay the overall CF process."  *Id.*

30. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "G. Apply RFI Standards Without RFI Protections." USCIS is bound by its regulation to apply the reasonable fear standard in accordance with the Third-Country Transit Bar IFR under 8 CFR 208.30(e)(5).

31. As to what plaintiffs refer to as "H. Do Not Apply the Most Favorable Precedent in CFI Proceedings," USCIS remains in compliance with the permanent injunction issued in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018). The *Grace* decision requires asylum officers to apply the most favorable circuit court precedent in credible fear proceedings, regardless of where an asylum-seeker is detained.

32. What plaintiffs refer to as "I. Mandatory Concurrence Review by the Fraud Detection Unit" may refer to a program at the South Texas Family Residential Center in Dilley, Texas. EX. 5, "FDNS Review of Cases at Dilley FRC". From August 30, 2019 to November 7, 2019, cases at the South Texas Family Residential Center in Dilley, Texas that were interviewed and initially screened in as positive fear determinations were reviewed by FDNS officers. After completion of post-interview FDNS review, the asylum officer would consider the FDNS officer's review and then make the fear determination. Ultimately, however, the final determination rested with the asylum officer and/or the asylum officer's chain of command. Since November 7, 2019, FDNS officers generally only conduct review of South Texas Family Residential Center cases prior to an interview by an asylum officer.

33. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "J. Withholding Facts Relied Upon in Issuing the Credible Fear Determination."

34. No written policy directive, written policy guideline, or written procedure exists regarding what plaintiffs refer to as "K. Abandon Child-Sensitive Treatment in Credible Fear

Proceedings," including any requirement to use telephonic interviews for any particular interview. Credible fear interviews are conducted either in person or telephonically. The determination as to how interviews will be conducted is driven by a range of operational factors, including but not limited to, the physical interview space available at the detention facilities, the availability of officers to travel to the detention facilities, and the number of interviews that must be conducted within a prescribed time period. *See e.g.* Ex. 6 – Telephonic Interviews in Negative Credible Fear Determinations. No new directives or policies have been issued restricting the ability to conduct in person or telephonic interviews.

I, Ashley B. Caudill-Mirillo, declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of December, 2019.

Ashley B. Caudill-Mirillo
Deputy Chief, Asylum Division
U.S. Citizenship and Immigration Services
Department of Homeland Security

# EXHIBIT 1

PRE-DECISIONAL/DELIBERATIVE



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director* (MS 2000)
Washington, DC  20529-2000

**U.S. Citizenship
and Immigration
Services**

July 2, 2019

**INFORMATION**

MEMORANDUM FOR THE ACTING SECRETARY

FROM:        Ken Cuccinelli II
             Director

SUBJECT:        **Reduction of Credible Fear Consultation Period**

---

**Purpose:** To inform you that effective July 8, 2019, USCIS is reducing the credible fear (CF) consultation period to one full calendar day from the date of arrival at a detention facility (including at the Family Residential Centers) and will deny requests for extensions, as unreasonably delaying the process, except in the most extraordinary circumstances.

**Background:** The Immigration and Nationality Act (INA) § 235(b)(1)(B)(iv) provides the right for aliens in the credible fear process to consult with a person(s) of their choosing, as long as the consultation is at no expense to the government and does not unreasonably delay the process. The regulations at 8 C.F.R. § 235.3(b)(4)(ii) require that aliens be given time to contact and consult such person(s).  Under present practice:
- At the Family Residential Centers (FRCs), the alien is given <u>72 hours</u> after arrival at the facility and re-orientation by USCIS to seek and receive consultation.  The CF interview is scheduled after this period.
- At all other detention facilities, single adults are generally not interviewed until at least <u>48 hours</u> after arrival at the detention facility in order to seek and receive consultation before the interview takes place.

**Considerations:**   USCIS provides a consultation period as the governing statute expressly provides. INA § 235(b)(1)(B)(iv).   However, USCIS can choose to modify the consultation period as a matter of policy.  The current 72-hour (FRC) and 48-hour (non-FRC) consultation timeframes were established by policy in March 2015 and March 1997, respectively.

Importantly, on June 6, 2019, USCIS completed revisions to the Form M-444, *Information About Credible Fear Interview*.  As required by statute and regulation, the M-444 must be provided to an alien in Expedited Removal who has made a fear/asylum claim in order to provide the alien information about the credible fear interview process, the right to consult with other persons prior to the interview, and the right to seek review by an immigration judge of any negative credible fear determination made by an asylum officer.   The form was recently revised using

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

Reduction of Credible Fear Consultation Period
Page 2

plain language principles in order to provide greater clarity to the alien during the consultation process.

USCIS must do its part to ensure the processing of aliens is not unduly delayed in light of the situation at the Southwest Border.  Given this critical need, coupled with the improvements made to the M-444 which makes the process easier for aliens to understand, I have decided to reduce the timeframe for consultation to one full calendar day at both FRCs and all other facilities.  In practice, this means individuals will have longer than 24 hours to consult depending on when they arrive at the facility. Reducing the time period for consultation could lead to longer delays at a later point in the process for some cases, as USCIS may receive more frequent requests to reschedule interviews.  However, USCIS is also establishing a new policy of requiring extraordinary circumstances warranting approval of a request to reschedule so that USCIS can ensure, consistent with the statute, that the consultation period does not unreasonably delay the overall process.

PRE-DECISIONAL/DELIBERATIVE

# EXHIBIT 2

| | |
|---|---|
| **From:** | ████████████████ |
| **To:** | ████████████████ |
| **Cc:** | ████████████████ |
| **Subject:** | Immediate implementation - Timing of the CF interview after arrival at a detention facility + Handling of requests to reschedule CF interviews |
| **Date:** | Monday, July 08, 2019 6:37:06 PM |
| **Attachments:** | Waiver of the Consultation Period (Rev. 7-8-19).docx |
| | Updated CFPM Sections (Consultation) 7.8.19 .docx |

Asylum colleagues,

Effective immediately, the Asylum Division will implement consistent approaches to 1) the minimum amount of time USCIS will wait after an alien's arrival at a detention facility before conducting the credible fear (CF) interview, and 2) the consideration of requests to reschedule a CF interview. These changes are outlined in revisions to Sections III.D. and III.E. of the Credible Fear Procedures Manual, which are included in the attachment.

The USCIS Acting Director has decided to set the minimum timeframe that an alien will have for consultation to one full calendar day after the time of arrival at all detention facilities, including the Family Residential Centers (FRCs).  In practice, given USCIS business hours for conducting CF interviews, individuals will have longer than 24 hours to consult, depending on when they arrive at the facility.  For instance, if an alien arrives at a facility at 11 AM on a Tuesday, USCIS would not conduct the CF interview on the Tuesday or Wednesday (the full calendar day), but USCIS could proceed to scheduling the alien for a CF interview as early as any available interview time on that Thursday. If the interview was scheduled to take place before 11 AM, the alien would be interviewed in just under 48 hours after arrival at the facility.  If the interview is at 11 AM or later, the alien would be interviewed 48 hours or more after arrival.

The updated Form M-444, Information About Credible Fear Interview, continues to correctly inform the alien that his or her credible fear interview "will usually occur at least 48 hours after [the aliens] arrive at the detention facility." Presently, at nearly all facilities where USCIS is asked to interview aliens being detained while awaiting CF processing, the alien's CF interview is taking place well after the passage of 48 hours from the alien's arrival at the facility. When USCIS is able to proceed to an interview with an alien a bit more quickly than 48 hours after the alien's arrival, and the alien has had a full calendar day at the facility to seek to exercise his or her statutory right to consult with a person of his or her choosing, USCIS may proceed with scheduling and conducting the interview under this new guidance.

Also, please remember that an alien referred to USCIS for a credible fear interview can request to be interviewed even earlier if the alien is prepared to discuss his or her case immediately with us.  A new Appendix F to the CFPM, Waiver of the Consultation Period, is attached for use.

**Requests to Reschedule CF Interviews**

In conjunction with the decision on the timing of the CF interview, USCIS is also establishing a new policy that requires that an alien who is requesting to reschedule a set day and time for the CF interview must show extraordinary circumstances warranting approval of such a request so that USCIS can ensure, consistent with the statute, that the consultation period provided does not unreasonably delay the overall CF process.  If USCIS has already provided the alien a full calendar day, as outlined above, to consult, USCIS will normally deny requests for extensions, as unreasonably delaying the process, except in the most extraordinary circumstances.

Asylum HQ is informing our ICE and CBP HQ contacts of these changes. Each office is asked to similarly notify your local government partners and other impacted entities.

Please submit any questions about these changes to the Asylum HQ Operations team.

John

# EXHIBIT 3

| From: | |
|---|---|
| To: | |
| Cc: | |
| Subject: | Interim Final Rule - Asylum Eligibility and Procedural Modifications |
| Date: | Monday, July 15, 2019 8:38:38 PM |
| Attachments: | Third Country Asylum Bar Training 2019-07-16.pptx |
| | Orientation memo to file July 16 2019.docx |
| | I-870 Annotated 7.16.19.doc |
| | Form I-869A July 16 2019.docx |
| | 208.13(c)(4) Mandatory Bar Worksheet 7.16.19.docx |
| | CF Checklist 3 (effective 7.16.19).docx |

Asylum Division colleagues,

Earlier today, a joint Department of Justice and Department of Homeland Security Interim Final Rule (IFR) titled, *Asylum Eligibility and Procedural Modifications*, was posted by the Federal Register for public inspection.  The new rule is scheduled to be officially published in the Federal Register and go into effect tomorrow, July 16, 2019.  Below is a summary of what the regulation says and how it will impact our work going forward:

- 

Aliens covered by the IFR

Under the new 8 CFR § 208.13(c)(4), any alien who enters, attempts to enter, or arrives in the US across the southern land border on or after **July 16, 2019**, is ineligible for asylum, unless the alien

- Demonstrates that he or she applied for protection from persecution or torture in at least one country outside his or her country of nationality or last habitual residence through which he or she transited in route to the US, and the alien received a final judgement denying the alien protection in such country,
- Demonstrates that he or she satisfies the definition of victim of a severe form of trafficking in persons provided in 8 CFR 214.11 (everyone should have received training on this during your initial officer training; please refer to your *Detecting Possible Victims of Trafficking* RAIO Combined Training Course training module for guidance), or
- The only countries through which the alien transited in route to the US, at the time of transit, were not parties to the 1951 United Nations Convention relating to the Status of Refugees, the 1967 Protocol Relating to the Status of Refugees, or the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (at present, those countries would be Bhutan, Grenada, Kiribati, Malaysia, Micronesia, Myanmar, North Korea, Oman, Singapore, and Tonga)

Nothing in the IFR limits an alien from being considered for withholding of removal or protection under CAT, or limits the processes applied to UACs pursuant to TVPRA.

Revised CF screening for aliens subject to the new asylum bar

In addition, under the newly amended regulation at 8 CFR § 208.30(e)(5)(iii), any alien placed into expedited removal who is referred to us for a credible fear screening and who is determined to be ineligible for asylum under the new 8 CFR § 208.13(c)(4) shall

- Receive a negative credible finding as to any asylum claim under INA Section 208; and
- Have any claim to eligibility for withholding of removal or protection under the Convention Against Torture considered under the "reasonable possibility" reasonable fear screening

standard **instead of** the "significant possibility" credible fear screening standard.

Besides this changed screening standard for withholding and CAT, all the other usual CF screening procedures and rules apply to these cases, including issuing someone who receives a positive fear finding a Notice to Appear (NTA) to place the person into INA Section 240 removal proceedings.

Below you will find some more detailed "nuts and bolts" instructions for how to handle CF cases impacted by these changes. Further instructions for how we will process affirmative asylum claims impacted by these changes will be forthcoming.

Finally, let me give you a few key takeaways:

- No changes are being made at this time to our processing and screening of Reasonable Fear referrals under 8 CFR § 208.31;
- No changes are being made at this time to our processing and screening of Credible Fear referrals for those aliens who are not impacted by the new asylum bar;
- We have been doing Reasonable Fear screenings for years; conducting RF screenings for aliens impacted by the new asylum bar should be no different;
- The new bar to asylum will apply to affirmative asylum applications, but only for individuals who entered, attempted to enter, or arrived in the US across the southern land border on or after July 16, 2019.  It will likely be several weeks or months before we interview and adjudicate any affirmative asylum cases that are impacted by this bar.

We are once again being asked to adapt, and to do so with very little time to train and prepare.  If I didn't know that we have some of the most dedicated, most adaptable, and most talented public servants presently serving in the federal government, I would be concerned about being able to implement these changes on such short notice.  Fortunately, each of you are all of those things and much, much more.

I fully expect there to be many questions as this is implemented in the coming days and weeks. Please bring those questions forward to your office leadership so that we can attempt to respond as quickly as possible, and share those responses with the other offices.

Thanks!

John


SUBJECT:        Updated Procedures for Implementing the Interim Final Rule

Effective beginning July 16, 2019, and pursuant to 8 CFR 208.13(c)(4) , this message provides updated procedures for the processing of Credible Fear cases. In particular, this guidance modifies the Credible Fear of Persecution and Torture Determinations Lesson Plan ("Credible Fear Lesson Plan"), the Credible Fear Procedures Manual, and all other prior guidance documentations and memorandums that are inconsistent with the Interim Final Rule published on July 16, 2019.

Instructions on the impact of this IFR on affirmative asylum processing will be forthcoming. To be subject to the bar the alien must enter, attempt to enter, or arrive in the US across the southern land border on or after July 16, 2019.

These updated procedures are effective immediately and apply to any APSO screening determination issued after July 15, 2019.  All asylum offices are responsible for conducting field training for staff on these updated procedures as soon as practicable, no later than one week from today. A PowerPoint training is attached.

Officers **must be trained on reasonable fear** to adjudicate cases subject to the IFR.

Aliens placed in the expedited removal process under INA §235(b)(1) must be referred to USCIS for a credible fear screening if they express a fear of returning to their country.  These new procedures only apply to aliens who enter, attempt to enter, or arrive in the US across the southern land border. Cases where aliens enter or attempt to enter or arrive in other locations should follow current Asylum Division Credible Fear Procedures.

Jurisdiction

The Interim Final Rule does not alter the referral process. The Asylum Office must receive all the jurisdictional documents listed at III.B. of the Credible Fear Procedures Manual prior to adjudicating the case.  The AO and SAO must confirm that the asylum division has proper jurisdiction in each case.

Interview

Prior to interviewing a case, the asylum officer should review jurisdictional documents (such as the I-213, I-860, I-867A and B) to ascertain the alien's date and manner of entry into the United States.

Jurisdictional documents alone are not enough to establish the application of the bar.  An asylum officer must also elicit information regarding potential exceptions and complete the Third-Country Transit Bar Worksheet.

If the officer establishes that the bar applies and that no exceptions to the bar are applicable, the officer should inform the alien that the reasonable possibility standard will apply to the claim.  This explanation should be documented in an orientation memo to file (see attached memo).

Once the officer establishes that the bar applies, the officer will make a negative credible fear finding as to asylum and interview the alien to determine if he or she meets the reasonable possibility standard for persecution and the Convention Against Torture.  Please see the Reasonable Fear of Persecution and Torture Determinations Lesson Plan for more information on this standard.

Case Processing

1. **Third-Country Transit Bar Worksheet**: Must be completed for all individuals who entered,

attempted to enter, or arrived in the US across the southern land border on or after **July 16, 2019.**

2. **Orientation Memo to File:** When the AO determines that the bar applies, the adjudicator must explain to the alien that he or she will be screened according to the reasonable possibility standard and complete a memo to file.  The memo is not required if the alien is not subject to the bar or if he or she establishes that the bar does not apply.

3. **I-870:** Use I-870 dated 7/11/19 for all cases.

4. **CF Checklist**: For applicants barred for asylum, please use the "Credible Fear Determination Checklist and Written Analysis for Applicants in Expedited Removal Found Barred from Asylum Pursuant to 208.13(c)(4)." (Checklist 3). Checklist 3 contains instructions regarding the applicable legal standard.

5. **I-869A:** Use I-869A instead of I-869 to document negative determinations for applicants who are barred and are screened using the reasonable fear standard.

6. **Global**: Only for cases subject to IFR, offices select special group code "**bar - 13(c)(4)**." If the individual establishes an exception to the bar, offices select special group code "**no bar - 13(c)(4)**." Officers, SAOs and all involved in case processing are reminded to make sure that one of these special group codes **must be selected** whenever the individual interviewed is comes within the scope of this new IFR bar.

If you have any questions concerning the procedures contained in this memorandum, please contact the headquarters APSO point or points of contact.  We will be updating the Credible Fear Lesson Plan and Credible Fear Procedures Manual in the future.


Attachments:     Third-Country Transit Bar Worksheet
                  Orientation memo to file
                  I-870, dated 7/11/19
                  CF Checklist 3
                  I-869A
                    PPT

**From:**
**To:**
**Subject:**     RE: URGENT - IFR data input, prioritization and scheduling instructions to immediately implement
**Date:**        Friday, July 19, 2019 5:01:50 PM

On the interview piece, if you have receipted an IFR-impacted CF referral prior to today or today, you must be prepared to interview that case no later than Sunday.  No exceptions.

**From:**
**Sent:** Friday, July 19, 2019 5:00 PM
**To:**

**Subject:** URGENT - IFR data input, prioritization and scheduling instructions to immediately implement
**Importance:** High

Folks,

I need everyone to implement the following changes in your CF processing **immediately:**

- Each office MUST monitor the CF submissions received from ICE or CBP (whether by e-mail, hard copy file drop box, whatever the method) over the weekend;
- Each office MUST review CF submissions to see if the person came to the US through the SW border and entered the US on July 16th or later;
- Each office MUST take steps to complete data entry into GLOBAL of IFR-impacted CF (non-Mexican, came across the SWB on or after 7/16) cases as soon as possible after receipt; and
- MPP cases are first priority for interview, but IFR-impacted cases are second priority for data entry and interview scheduling, over RF and non-IFR CF cases.  Please take steps to schedule them as soon as possible, under the terms of the recently issued new consultation period policy.

The data reporting requests are coming fast and furious, so we need the cases put into GLOBAL as soon as possible, and we need the cases interviewed and processed as quickly as possible (consistent with our consultation period policy).

We cannot, repeat cannot, have anything happen where we have a large group of cases go unreceipted, unreported, or uncompleted, like we had on July 4th.

Please let me know if you have any questions.

John

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Subject:** | Updated IFR materials |
| **Date:** | Friday, July 19, 2019 4:44:42 PM |
| **Attachments:** | Third Country Asylum Bar Training 2019-07-16 updated.pptx |
| | 208.13(c)(4) Mandatory Bar Worksheet 7.16.19 Updated.docx |
| | I-870 Annotated 7.16.19.doc |

Everyone,

In response to some items that were raised by your eagle-eyed colleagues since I first sent out these documents on Monday, we have made some minor changes to three of the IFR documents.

These are the changes:
1. Updated training powerpoint
   a. Slide 6 – errant "and" deleted.
   b. Slide 18 – I-870 instruction added to only keep the paragraph under "additional information / continuation" (on p. 5) when the individual is barred and no exceptions apply.  Delete it for all other situations.
   c. Slide 20 – date corrected to 7.16.19
2. I-870 with 7/16/2019 in the footer on each page.  No other changes.
3. Third-Country Transit Bar Worksheet (8 CFR 208.13(c)(4)) – 7/16/2019 added in box A.

Please do not hesitate to raise any additional concerns or suggested changes up your chain, and let us know if you have any questions.

Thanks!

John

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Cc:** | |
| **Subject:** | Court Actions today related to the Interim Final Regulation |
| **Date:** | Wednesday, July 24, 2019 11:11:42 PM |
| **Attachments:** | Preliminary Injunction - IFR.pdf |
| **Importance:** | High |

Asylum Division staff,

Per the attached order just issued by the U.S. District Court for the Northern District of California, the Interim Final Rule (IFR) entitled "Asylum Eligibility and Procedural Modifications" was just temporarily enjoined. Separately, you may be aware that this morning, the U.S. District Court for the District of Columbia denied a similar request for an injunction related to the same IFR.  However, despite the contradictory rulings, at the present time USCIS personnel must not rely upon the IFR in the course of conducting credible fear screenings or adjudicating asylum applications. USCIS personnel should revert back to the processes employed prior to the implementation of the IFR. We will keep you informed of any changes to these instructions.

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Cc:** | |
| **Subject:** | FW: Asylum transit IFR -- NDCAL |
| **Date:** | Wednesday, July 24, 2019 10:43:41 PM |
| **Attachments:** | show_temp.pl.pdf |
| | ATT00001.htm |
| **Importance:** | High |

Asylum Division staff,

Per the attached order just issued by the U.S. District Court for the Northern
District of California, the Interim Final Rule (IFR) entitled "Asylum Eligibility
and Procedural Modifications" was just temporarily enjoined. Separately, you
may be aware that this morning, the U.S. District Court for the District of
Columbia denied a similar request for an injunction related to the same IFR.
However, despite the contradictory rulings, at the present time USCIS
personnel must not rely upon the IFR in the course of conducting credible fear
screenings or adjudicating asylum applications. USCIS personnel should revert
back to the processes employed prior to the implementation of the IFR. We will
keep you informed of any changes to these instructions.

| | |
|---|---|
| **From:** | ███████████████ |
| **To:** | |
| **Cc:** | █████████████████████████████████ |
| **Subject:** | Re: URGENT - IFR data input, prioritization and scheduling instructions to immediately implement |
| **Date:** | Saturday, August 17, 2019 6:03:53 AM |

Folks,

As we work to get out guidance to everyone this morning about CF processing under the IFR, for those jurisdictions not impacted by the continued Ninth Circuit injunction of the IFR, just wanted to resend you the message from Beth regarding the special group codes that you need to use for initially labeling CF cases subject to the IFR because they came to the US across the southern border on or after July 16th, plus the special group codes to use when an exception to the IFR is determined to be applicable in a particular case. We will need to go back and apply the BAR -13(c)(4) special group code to cases that we have already data entered into Global as we prepare to conduct their interviews.

Thanks!

John

---

**From:** ████████████████

**Sent:** Saturday, July 20, 2019 12:07 PM

**To:** ██████████████████████████████
████████████████████████████████████████
███████████████████████████████
███████████████████

**Subject:** RE: URGENT - IFR data input, prioritization and scheduling instructions to immediately implement

Good afternoon,

See the following specific instructions for Global data-entry as we have created different codes to track exceptions to the bar.

<!--[if !supportLists]-->1.    <!--[endif]-->On the Entry card, select special group code **BAR – 13(c)(4)** as soon as possible after referral as described in the 3<sup>rd</sup> bullet below.

<!--[if !supportLists]-->2.    <!--[endif]-->As soon as possible after the interview, if the individual establishes an exception, edit the Entry card with the applicable new special group code:

<!--[if !supportLists]-->a.    <!--[endif]-->**NO BAR – Protection Denied**

<!--[if !supportLists]-->**b.**   <!--[endif]-->**NO BAR – Trafficking**

Please let the Operation Branch APSO team know if you have any questions.

Thank you!
Beth

███████████
Operations Branch Chief - Asylum Division
Refugee, Asylum and International Operations Directorate
Dept. of Homeland Security/U.S. Citizenship & Immigration Services
███████████████████
███████████████
████████████

---

**From:** ██████████████████████>
**Sent:** Friday, July 19, 2019 5:02 PM
**To:** ████████████████████
███████████████████████████████
█████████████████████████
**Subject:** RE: URGENT - IFR data input, prioritization and scheduling instructions to immediately implement

On the interview piece, if you have receipted an IFR-impacted CF referral prior to today or today, you must be prepared to interview that case no later than Sunday.  No exceptions.

---

**From:** █████████████
**Sent:** Friday, July 19, 2019 5:00 PM
**To:** ████████████████████
██████████████████████████ HQ Leadership <RAIO-AsylumHQLeadership@uscis.dhs.gov>
**Subject:** URGENT - IFR data input, prioritization and scheduling instructions to immediately implement
**Importance:** High

Folks,

I need everyone to implement the following changes in your CF processing **immediately:**

<!--[if !supportLists]-->●   <!--[endif]-->Each office MUST monitor the CF submissions received from ICE or CBP (whether by e-mail, hard copy file drop box, whatever the method) over the weekend;

<!--[if !supportLists]-->●   <!--[endif]-->Each office MUST review CF submissions to

see if the person came to the US through the SW border and entered the US on July 16th or later;

<!--[if !supportLists]-->•    <!--[endif]-->Each office MUST take steps to complete data entry into GLOBAL of IFR-impacted CF (non-Mexican, came across the SWB on or after 7/16) cases as soon as possible after receipt; and

<!--[if !supportLists]-->•    <!--[endif]-->MPP cases are first priority for interview, but IFR-impacted cases are second priority for data entry and interview scheduling, over RF and non-IFR CF cases.  Please take steps to schedule them as soon as possible, under the terms of the recently issued new consultation period policy.

The data reporting requests are coming fast and furious, so we need the cases put into GLOBAL as soon as possible, and we need the cases interviewed and processed as quickly as possible (consistent with our consultation period policy).

We cannot, repeat cannot, have anything happen where we have a large group of cases go unreceipted, unreported, or uncompleted, like we had on July 4th.

Please let me know if you have any questions.

John

| | |
|---|---|
| **From:** | ███████████████ |
| **To:** | ██████████████████████████████████ |
| **Subject:** | Amended Guidance on the Interim Final Rule and the 9th Circuit Injunction |
| **Date:** | Tuesday, August 20, 2019 9:30:16 AM |
| **Attachments:** | 9 East Bay Covenant (Aug 16 2019).pdf |
| **Importance:** | High |

## FOR INTERNAL USE ONLY

Asylum Division Staff,

As you know, the Ninth Circuit issued the attached decision in *East Bay v. Barr*, No. 19-16487 (9th Cir. Aug. 16, 2019) (*East Bay II*) partially granting and partially denying the Government's motion to stay the district court's preliminary injunction of the DOJ/DHS joint interim final rule, "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019), i.e., the third country transit asylum bar IFR.  The Ninth Circuit denied the motion for a stay pending appeal insofar as the injunction applies within the Ninth Circuit, but granted the motion for a stay pending appeal insofar as the injunction applies outside the Ninth Circuit. The initial guidance disseminated on August 17, 2019, is withdrawn and replaced by this guidance.  Additional updates will be provided as necessary.

The third country transit asylum bar IFR remains preliminarily enjoined in the Ninth Circuit and therefore USCIS personnel still cannot rely on the third country transit asylum bar IFR when conducting credible fear screening interviews for cases arising in the Ninth Circuit, or when adjudicating asylum applications within the Ninth Circuit.  USCIS personnel should continue to follow the processes in place prior to implementation of the IFR for credible fear screenings and asylum adjudications in the Ninth Circuit.  However, because the court granted a stay of the preliminary injunction outside of the Ninth Circuit, the third country transit asylum rule is effective as to:

     (1)  All credible fear screenings that are conducted or remain pending after August 16, 2019, for cases arising outside the Ninth Circuit, and

     (2)  All asylum applications filed on or after July 16, 2019, that remain pending after August 16, 2019, outside of the Ninth Circuit. **As a reminder, for asylum applications that are pending after August 16, 2019 outside of the Ninth Circuit, the IFR would apply, but the bar at 8 CFR 208.13(c)(4) only applies to an alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of last citizenship, nationality, or last habitual residence en route to the United States, unless an exception applies.

For purposes of determining whether the injunction applies, the IFR should not apply to any CF determination or asylum adjudication in which: (1) the alien was apprehended in the jurisdiction of the Ninth Circuit (California, Arizona, Nevada, Oregon, Washington, Idaho, Montana, Alaska, Hawaii, Guam, Northern Mariana Islands) or (2) the alien is in the jurisdiction of the Ninth Circuit when the credible fear screening is conducted or the claim is adjudicated.

Should you have any questions or concerns, please direct through your chain of command.  It is also recommended you consult the guidance attached to the e-mail from Asylum Division

Chief John Lafferty on July 15, 2019 entitled *Interim Final Rule – Asylum Eligibility and Procedural Modifications.*

Thanks,

Ashley

Ashley Caudill-Mirillo
Deputy Chief
Asylum Division
Refugee, Asylum, and International Operations

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Cc:** | |
| **Subject:** | IFR Reminders from Ops & QA |
| **Date:** | Tuesday, September 03, 2019 9:15:01 AM |
| **Importance:** | High |

Good morning,

Please see the below updates from the Asylum Operations and QA Branches and share with all staff and detailees, as appropriate.  Direct any questions about 1-4 to "Asylum Ops APSO" and questions about 5-13 to "Asylum QA APSO" in the Global Address Book.  Thanks, Beth

**Third-Country-Transit Asylum Bar ("IFR") Reminders**

1. **I-870**: Offices should use the IFR specific I-870 (2019 ver.) only for cases <u>outside</u> the Ninth Circuit, and should use the pre-IFR I-870 (2017 ver.) for cases <u>within</u> the Ninth Circuit.
2. **NTAs:** Please mark NTAs in cases subject to the IFR with the letters "IR" in the upper right hand corner.
3. **Hints for GLOBAL data entry for CF cases**:

   Staff data entering the cases need to determine:
   1) Is the individual other than Mexican?
   2) Did the individual enter, attempt to enter, or arrive in the US across the southern land border on or after July 16, 2019?
   3) Does the case arise outside of the 9th Circuit?

   > a) Was the individual apprehended outside of the 9th Circuit?
   >
   > b)  Is the individual detained or physically residing outside of the 9th Circuit at   the time the credible fear screening is conducted?

   **If yes to all of these questions**, the individual is subject to the IFR.  The offices should select special group code "BAR – 13(c)(4)" as soon as possible after referral where the credible fear case was pending (not served) after **August 16, 2019**.  If the individual is subject to the IFR but establishes an exception to the bar, offices should select the appropriate special group code, either "NO BAR – Protection Denied" or "NO BAR – Trafficking."

   **If no to any of these questions**, the individual is not subject to the IFR and offices should not select a special group code.

   *Offices should also indicate whether the individual arrived at a POE (by selecting the appropriate POE) or was apprehended INL (by selecting "UNK – Unknown" in the POE field).
   *The MPP special group codes <u>do not apply</u> to these cases.
   *APSOs and SAPSOs should be checking to make sure the cases are updated in

GLOBAL appropriately.

4.  **Credible Fear Procedures in IFR Cases:** For purposes of cases subject to the IFR, when someone is found barred as to asylum, the case continues to be processed under 8 CFR 208.30 but using the reasonable possibility standard.  In other words, but for guidance on the significant possibility standard, other guidance provided in the Credible Fear Lesson Plan and Credible Fear Procedures Manual continue to apply.

5.  **Standard of Proof and Burden of Proof for Exception Determination:** Where there is evidence that the third-country-transit asylum bar applies, the individual must show a significant possibility that they are not subject to the asylum eligibility bar.

6.  **Exceptions to the Asylum Bar**: For cases where there is evidence that the asylum bar may apply, the officer must consider whether the individual applied for protection in at least one country he/she transited through and the outcome of that application. Officers should also explore whether they are a victim of a severe form of trafficking in persons as defined by 8 CFR 214.11(a), which includes sex and labor trafficking.  *See* 8 CFR 214.11(a) definition of sex trafficking.

7.  **Reasonable Possibility Standard:** The reasonable possibility standard is the same standard required to establish a "well-founded fear" of persecution in the asylum context.  Therefore, officers should be asking themselves whether they have elicited sufficient testimony such that they would be able to make a decision if this were in the affirmative context.  Although credible fear is a screening, and thus individuals might not present a written personal statement or other supporting documentation, the individual must still meet the higher standard, which they may do through testimony alone.

8.  **Credibility and Burden:** The record needs to be sufficiently developed to make a credibility determination as well as determine whether the individual can provide specific facts to meet their burden.  This requires an individualized inquiry into the facts of each specific case as it relates to all required elements of the persecution and/or torture analysis.  It is not enough to elicit generalized testimony about past harm.  What occurred during specific incidents of past harm should be on the record for purposes of making a credibility determination, in light of the totality of the circumstances, and determining if the individual can meet their burden.

9.  **Timeline:** As with all cases, officers should understand the timeline of events and gather detailed testimony about past harm as well as the fear of future harm.  For example, if the harm occurred months or years prior to travel to the United States, what happened in the intervening time period?

10. **Nexus:** The record should be developed as to whether there is a reasonable possibility of harm on account of a protected ground in the persecution context.  Both direct and circumstantial evidence, including country conditions, are relevant to determining a persecutor's motive. Testimony about what was said to the individual during past instances

of harm can be useful information when making this determination.

11. **Convention Against Torture:** For CAT claims, there should be record development as to whether the feared torturer is a government official or a non-government official acting with the consent or acquiescence of a public official or other person acting in an official capacity. For purposes of consent or acquiescence, helpful lines of questioning can include whether the person ever reported past harm to authorities and whether they know of any similarly-situated person who may have done so.  If they did report harm, what information did they provide to the police, what did the police say and do when the incident was reported?  In a couple recent cases, we have seen fact patterns that involve family members who may be involved with the police or military and developing the record as to their relationship with the feared torturer has been helpful in making a determination in these cases.

12. **Internal Relocation and COI:** Per the July 26, 2019 Asylum and Internal Relocation Guidance Memorandum from the Acting Director, officers should be addressing country condition information both in the interview as well as in the credible fear checklist when determining whether internal relocation is possible and, if possible, reasonable under the circumstances. As with all cases, officers should make use of the RAIO Research Unit (RU) resources available to them and work with the RU to gather additional COI as needed.

13. **Reasonableness of Relocation:** The record should be developed as to potential internal relocation, including the specific applicant's ability to relocate to avoid harm as well as whether such relocation is reasonable for that applicant, in both persecution and CAT claims.  8 CFR 208.13 sets forth a non-exhaustive list of issues to consider in the context of reasonableness.  It is not enough to stop the inquiry when an individual testifies that they cannot relocate because of a generalized fear of harm (for example, "gangs are everywhere").  Officers should be following up on such statements to determine how they know this and why they think there is a likelihood of harm to them if they were to move elsewhere in their country.  As for reasonableness, again, the record should be developed as to the specific reasons that would make it difficult for the individual to relocate within their home country.

Elizabeth E. Mura
Operations Branch Chief - Asylum Division
Refugee, Asylum and International Operations Directorate
Dept. of Homeland Security/U.S. Citizenship & Immigration Services

| | |
|---|---|
| **From:** | ███████████████████ |
| **To:** | ████████████████████████████████████████████ |
| **Subject:** | Asylum Eligibility and Procedural Modifications IFR - Nationwide Injunction Restored (FOR INTERNAL USE ONLY) |
| **Date:** | Monday, September 09, 2019 2:26:08 PM |
| **Attachments:** | 73, Order Restoring Nationwide PI.pdf |
| **Importance:** | High |

**<u>FOR INTERNAL USE ONLY</u>**

Asylum Division Staff,

Per the attached order, the U.S. District Court for the Northern District of California has restored the nationwide injunction of the Interim Final Rule (IFR) entitled "Asylum Eligibility and Procedural Modifications."  In light of this ruling, USCIS personnel must not rely upon the IFR in the course of conducting credible fear screenings or adjudicating affirmative asylum applications.  USCIS personnel should immediately revert back to the processes employed prior to the implementation of the IFR.  We will keep you informed of any changes to these instructions.

Sincerely,
Ashley

Ashley Caudill-Mirillo
Deputy Chief
Asylum Division
Refugee, Asylum, and International Operations

| | |
|---|---|
| **From:** | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **To:** | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **Cc:** | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **Subject:** | RE: Amended Guidance on the Interim Final Rule and the 9th Circuit Injunction |
| **Date:** | Wednesday, September 11, 2019 11:25:31 AM |

**<u>FOR INTERNAL USE ONLY</u>**

Asylum Division Staff,

Last evening, the Ninth Circuit granted an administrative stay of the District Court's order of September 9, 2019, which had reinstated the nationwide injunction of the asylum transit IFR.  As such, the previously reinstated <u>nationwide</u> injunction is no longer in effect.  The initial injunction as modified by the Ninth Circuit on August 16, 2019, is now in effect.  The IFR must not be applied in the Ninth Circuit but should be applied outside of the Ninth Circuit.  **Effective immediately, please ensure you are following the previously issued guidance below.**

Sincerely,
Ashley

Ashley Caudill-Mirillo
Deputy Chief
Asylum Division
Refugee, Asylum, and International Operations

---

**From:** Caudill-Mirillo, Ashley B ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Tuesday, August 20, 2019 9:30 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Amended Guidance on the Interim Final Rule and the 9th Circuit Injunction
**Importance:** High

**<u>FOR INTERNAL USE ONLY</u>**

Asylum Division Staff,

As you know, the Ninth Circuit issued the attached decision in *East Bay v. Barr*, No. <u>19-16487</u> (9th Cir. Aug. 16, 2019) (*East Bay II*) partially granting and partially denying the Government's motion to stay the district court's preliminary injunction of the DOJ/DHS joint interim final rule, "Asylum Eligibility and Procedural Modifications," 84 Fed. Reg. 33,829 (July 16, 2019), i.e., the third country transit asylum bar IFR.  The Ninth Circuit denied the motion for a stay pending appeal insofar as the injunction applies within the Ninth Circuit, but granted the motion for a stay pending appeal insofar as the injunction applies outside the Ninth Circuit. The initial guidance disseminated on August 17, 2019, is withdrawn and replaced by this

guidance.  Additional updates will be provided as necessary.

The third country transit asylum bar IFR remains preliminarily enjoined in the Ninth Circuit and therefore USCIS personnel still cannot rely on the third country transit asylum bar IFR when conducting credible fear screening interviews for cases arising in the Ninth Circuit, or when adjudicating asylum applications within the Ninth Circuit.  USCIS personnel should continue to follow the processes in place prior to implementation of the IFR for credible fear screenings and asylum adjudications in the Ninth Circuit.  However, because the court granted a stay of the preliminary injunction outside of the Ninth Circuit, the third country transit asylum rule is effective as to:

(1)   All credible fear screenings that are conducted or remain pending after August 16, 2019, for cases arising outside the Ninth Circuit, and

(2)   All asylum applications filed on or after July 16, 2019, that remain pending after August 16, 2019, outside of the Ninth Circuit. **As a reminder, for asylum applications that are pending after August 16, 2019 outside of the Ninth Circuit, the IFR would apply, but the bar at 8 CFR 208.13(c)(4) only applies to an alien <u>who enters, attempts to enter, or arrives in the United States across the southern land border</u> <u>on or after July 16, 2019</u>, after transiting through at least one country outside the alien's country of last citizenship, nationality, or last habitual residence en route to the United States, unless an exception applies.

For purposes of determining whether the injunction applies, the IFR should not apply to any CF determination or asylum adjudication in which: (1) the alien was apprehended in the jurisdiction of the Ninth Circuit (California, Arizona, Nevada, Oregon, Washington, Idaho, Montana, Alaska, Hawaii, Guam, Northern Mariana Islands) or (2) the alien is in the jurisdiction of the Ninth Circuit when the credible fear screening is conducted or the claim is adjudicated.

Should you have any questions or concerns, please direct through your chain of command.  It is also recommended you consult the guidance attached to the e-mail from Asylum Division Chief John Lafferty on July 15, 2019 entitled *Interim Final Rule – Asylum Eligibility and Procedural Modifications.*

Thanks,

Ashley

Ashley Caudill-Mirillo
Deputy Chief
Asylum Division
Refugee, Asylum, and International Operations

| | |
|---|---|
| **From:** | ███████████████ |
| **To:** | ███████████████████████████████████ |
| **Cc:** | ██████████████████ |
| **Subject:** | Status of the Asylum Eligibility and Procedural Modifications IFR Following SCOTUS Decision - FOR INTERNAL USE ONLY |
| **Date:** | Thursday, September 12, 2019 10:18:07 AM |
| **Importance:** | High |

**FOR INTERNAL USE ONLY**

Asylum Division Staff,

Yesterday, the Supreme Court of the United States lifted the injunction of the Interim Final Rule (IFR) titled, _Asylum Eligibility and Procedural Modifications_.  As such, Asylum Division staff should immediately implement the IFR to all pending cases nationwide as described below.

Specifically, the third-country-transit rule now applies nationwide to:

- (1) All credible-fear screenings, or immigration-judge reviews of such screenings, that are either conducted after or remain pending after September 11, 2019 (for individuals who entered, attempted to enter or arrived in the United States on or after July 16, 2019); and
- (2) All asylum applications filed by aliens who entered, attempted to enter, or arrive in the United States on or after July 16, 2019—whether filed affirmatively with USCIS or defensively in removal proceedings—that remain pending (whether before USCIS, before an immigration judge, or before the Board of Immigration Appeals) after September 11, 2019.

Three additional points:  First, the rule should not be applied to any alien who has been granted asylum on or before September 11, 2019.  Second, if an alien was previously found to satisfy the credible-fear standard because the third-country-transit rule had been enjoined, that alien should not be placed back into expedited removal proceedings for a new credible-fear interview; rather, the rule may be applied to such an alien in removal proceedings.  Third, as has been true since the rule was issued, the rule applies only to an alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019.

**Effective immediately, please ensure you are following this directive and previously issued operational guidance.**  Thank you for your hard work and dedication.

Sincerely,

Ashley

Ashley Caudill-Mirillo
Deputy Chief
Asylum Division
Refugee, Asylum, and International Operations

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Record of Determination/Credible Fear Worksheet

| | | | |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/ Family Name |

| | | |
|---|---|---|
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality |

## *All statements in italics must be read to the applicant*

## SECTION I:                    INTERVIEW PREPARATION

1.1 ___ ___ / ___ ___ / ___ ___     1.2 _____
    Date of arrival [MM/DD/YY]              Port of arrival

1.3 ___ ___ / ___ ___ / ___ ___     1.4 _____
    Date of detention [MM/DD/YY]            Place of detention

1.5 ___ ___ / ___ ___ / ___ ___     1.6 _____
    Date of AO orientation [MM/DD/YY]       If orientation more than one week from date of detention, explain delay

1.7 ___ ___ / ___ ___ / ___ ___   1.8 _____
    Date of interview [MM/DD/YY]            Interview site

1.9 ☐ Applicant received and signed **Form M-444** and relevant *pro bono* list on     ___ ___ / ___ ___ / ___ ___
                                                                              Date signed [MM/DD/YY]

1.10 Does applicant have consultant(s)?     ☐ Yes     ☐ No

    1.11 If yes, consultant(s) name, address, telephone number and relationship to applicant
    _____
    _____

1.12 Persons present at the interview (check which apply)

    1.13 ☐ Consultant(s)

    1.14 ☐ Other(s), list: _____

    1.15 ☐ No one other than applicant and asylum officer

1.16 Language used by applicant in interview: _____

1.17 _____     ☐ Yes   ☐ No     _____   _____
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.18 _____     ☐ Yes   ☐ No     _____   _____
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.19 _____     ☐ Yes   ☐ No     _____   _____
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.20 ☐ Interpreter **was not changed** during the interview

1.21 ☐ Interpreter **was changed** during the interview for the following reason(s):

    1.22 ☐ Applicant requested a female interpreter replace a male interpreter, or *vice versa*

    1.23 ☐ Applicant found interpreter was not competent     1.24 ☐ Applicant found interpreter was not neutral

    1.25 ☐ Officer found interpreter was not competent     1.26 ☐ Officer found interpreter was not neutral

    1.27 ☐ Bad telephone connection

1.28 ☐ Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

| Alien's File Number: |
|---|

**SECTION II:**                    **BIOGRAPHIC INFORMATION**

2.1 _____

Last Name/ Family Name [ALL CAPS]

2.2 _____    2.3 _____

First Name                                  Middle Name

2.4 ___ ___/___ ___/___ ___    2.5 Gender    ☐ Male    ☐ Female

Date of birth [MM/DD/YY]

2.6 _____

Other names and dates of birth used

2.7 _____    2.8 _____

Country of birth                            Country (countries) of citizenship (list all)

2.9 _____

Address prior to coming to the U.S. (List Address, City/Town, Province, State, Department and Country).

2.10 _____    2.11 _____    2.12 _____

Applicant's race or ethnicity        Applicant's religion              All languages spoken by applicant

2.13 Marital status:    ☐ Single    ☐ Married    ☐ Legally separated    ☐ Divorced    ☐ Widowed

    2.14   Did spouse arrive with applicant?        ☐ Yes    ☐ No

    2.15   Is spouse included in applicant's claim?    ☐ Yes    ☐ No

    2.16   If currently married (including common law marriage) list spouse's name, citizenship, and present location **(if with applicant, provide A-Number)**:

        _____

        _____

2.17   Children:    ☐ Yes    ☐ No

2.18   List any children (*Use the continuation section to list any additional children*):

| Date of birth (MM/DD/YY) | Name | Citizenship | Present location **(if w/PA, list A-Numbers)** | Did child arrive with PA? | | Is child included in PA's claim? | |
|---|---|---|---|---|---|---|---|
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| _____ | _____ | _____ | _____ | ☐ Yes | ☐ No | ☐ Yes | ☐ No |

| Alien's File Number: |
| --- |

2.19   Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication(s) that a medical condition exists? If YES, answer questions 2.20 and 2.21 and explain below.   ☐ Yes   ☐ No

_____

    2.20   Has applicant notified the facility of medical condition?   ☐ Yes   ☐ No

    2.21   Does applicant claim that the medical condition relates to torture?   ☐ Yes   ☐ No

2.22   Does the applicant have a relative, sponsor or other community ties, including spouse or child already listed above?   ☐ Yes   ☐ No

    2.23   If YES, provide information on relative or sponsor (use continuation section, if necessary):

_____         _____
Name         Relationship

_____         _____
Address         Telephone Number

☐ Citizen         ☐ Legal Permanent Resident         ☐ Other

## SECTION III:         CREDIBLE FEAR INTERVIEW
**The following notes are not a verbatim transcript of this interview.**
**These notes are recorded to assist the individual officer in making a credible fear determination**
**and the supervisory asylum officer in reviewing the determination.**
**There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.**

The asylum officer must elicit sufficient information related to both credible fear of persecution and credible fear of torture to determine whether the applicant meets the threshold screening. Even if the asylum officer determines in the course of the interview that the applicant has a credible fear of persecution, the asylum officer must still elicit any additional information relevant to a fear of torture. Asylum officers are to ask the following questions and may use the continuation sheet if additional space is required. If the applicant replies YES to any question, the asylum officer must ask follow-up questions to elicit sufficient details about the claim in order to make a credible fear determination.

3.1   a.   *Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned?*

    ☐ Yes   ☐ No   _____

_____
_____
_____
_____
_____

    b.   *Do you have any reason to fear harm from anyone in any country to which you may be returned?*

    ☐ Yes   ☐ No

_____
_____
_____

_____

    c.   If YES to questions *a* and/or *b*, was it or is it because of any of the following reasons? (Check each of the following boxes that apply).

☐ Race   ☐ Religion   ☐ Nationality   ☐ Membership in a particular social group   ☐ Political Opinion

_____
_____
_____
_____

| Alien's File Number: |
|---|

3.2 ☐ At the conclusion of the interview, the asylum officer must read the following to applicant:

*If the Department of Homeland Security determines you have a credible fear of persecution or torture, or, where applicable, a reasonable fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Field Office Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. If the asylum officer determines that you do not have a credible fear of persecution or torture, and, where applicable, you do not have a reasonable fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and, where applicable, you do not have a reasonable fear of persecution or torture, you do not request review, you **may be removed** from the United States as soon as travel arrangements can be made. Do you have any questions?*

_____

3.3 ☐ At the conclusion of the interview, the asylum officer must read a summary of the claim, consisting of the responses to Questions 3.1 a-c and information recorded in the Additional Information/Continuation section, to applicant.

****Typed Question and Answer (Q&A) interview notes and a summary and analysis of the claim must be attached to this form for all negative credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issues and that the applicant was given every opportunity to establish a credible fear.

## SECTION IV:                    CREDIBLE FEAR FINDINGS

**A.     Credible Fear Determination (and reasonable fear determination, where applicable):**

Credibility

4.1 ☐ Applicant found credible.

4.2 ☐ Applicant found **not** credible.

Nexus

4.3 ☐ Race   4.4 ☐ Religion   4.5 ☐ Nationality   4.6 ☐ Membership in a Particular Social Group

(Define the social group): _____

4.7 ☐ Political Opinion   4.8 ☐ Coercive Family Planning [CFP]   4.9 ☐ No Nexus

Credible Fear Finding

4.10 ☐ Credible fear (or in the case of an alien determined to have no credible fear of persecution because he or she is barred from asylum pursuant to 8 CFR 208.13(c)(4), reasonable fear) of **persecution** established.

**OR**

4.11 ☐ Credible fear (or in the case of an alien determined to have no credible fear of persecution because he or she is barred from asylum pursuant to 8 CFR 208.13(c)(4), reasonable fear) of **torture** established.

**OR**

4.12 ☐ No fear of persecution or torture established.

**B.     Possible Bars:**

4.13 ☐ Applicant could be subject to a bar(s) to asylum or withholding of removal (check the box(es) that applies and explain on the continuation sheet):

4.14 ☐ Particularly Serious Crime   4.15 ☐ Security Risk   4.16 ☐ Aggravated Felon

4.17 ☐ Persecutor   4.18 ☐ Terrorist   4.19 ☐ Firmly Resettled

4.20 ☐ Serious Non-Political Crime Outside the United States

4.21 ☐ Applicant does **not** appear to be subject to a bar(s) to asylum or withholding of removal.

| Alien's File Number: |
|---|

**C.**      **Identity:**

4.22  ☐  Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

    4.23  ☐  Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty).

    4.24  ☐  Passport which appears to be authentic.

    4.25  ☐  Other evidence presented by applicant or in applicant's file (List): _____

        _____

4.26  ☐  Applicant's identity was **not** determined with a reasonable degree of certainty.  (Explain on the continuation sheet.)

**SECTION V:**                **ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

5.1  _____  5.2  _____  5.3  ____ ___/___ ___/___ ___
    Asylum officer name and ID CODE (print)      Asylum officer's signature      Decision date

5.4  _____  5.5  _____  5.6  ____ ___/___ ___/___ ___
    Supervisory asylum officer name      Supervisor's signature      Date supervisor approved decision

**ADDITIONAL INFORMATION/CONTINUATION**

| |
|---|
| Alien is barred from asylum pursuant to 8 CFR 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and has received a negative credible fear of persecution determination. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a "reasonable possibility of persecution" and "reasonable possibility of torture" standard. |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

**Memo to File**

**For Alien**

**Barred From Asylum Pursuant to 8 CFR 208.13(c)(4)**


From:   **[Asylum Office Name]**

RE:      **[Alien name, A#]**

         **[Dependent name, A#]**


At the interview:

- The Asylum Officer informed the individual that the officer had determined, based upon the individual's testimony and the other evidence in the record, that the individual is barred from asylum under 8 CFR § 208.13(c)(4), and therefore unable to establish a credible fear with respect to his or her application for asylum.

- As a result of the above determination, the Asylum Officer read the following paragraph to the individual:

    The purpose of the remainder of the interview is to determine if you have a reasonable fear of persecution or torture. If it is determined that you have a reasonable possibility of being persecuted or tortured in the country to which you will be ordered removed, you will receive a Notice to Appear for a hearing in immigration court for consideration of your claim for withholding of removal under section 241(b)(3) of the Act, or for withholding or deferral of removal under the Convention Against Torture. If it is determined that you do not have a reasonable possibility of being persecuted or tortured, then you may ask to have an immigration judge review that decision.  During that immigration judge review, you may also request review of the determination that you do not have a credible fear of persecution because you are barred from asylum under 8 CFR § 208.13(c)(4).



# Third-Country Transit bar

## Guidance for Asylum Officers and Asylum Office Staff

07/16/2019



U.S. Citizenship
and Immigration
Services

# Roadmap

- Background/Legal Framework

- Overview of Third-Country Transit Bar

- Exceptions to Bar

- Revised Credible Fear Process

- Mandatory Bar Determination

- Screening Interview and Evidence

- Case Processing

- Post-Decision and Service

FOUO

2



U.S. Citizenship
and Immigration
Services

# Background/Legal Framework

- INA §§ 208(b)(2)(C), (d)(5)(B) – Delegation of authority to Attorney General and Secretary of Homeland Security ("Secretary") to promulgate regulations establishing additional bars to asylum

- 8 CFR § 208.13(c)(4) – "Notwithstanding the provisions of 8 CFR 208.15, any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or **after July 16, 2019, shall be found ineligible for asylum**

- 8 CFR § 208.30(e)(5) – "If the alien is found to be an alien described as ineligible for asylum in 8 CFR 208.13(c)(4), then the asylum officer shall enter a negative credible-fear determination with respect to the alien's application for asylum. The Department shall nonetheless place the alien in proceedings under section 240 of the Act for consideration of the alien's claim for withholding of removal under section 241(b)(3) of the Act, or for withholding or deferral of removal under the Convention Against Torture, if the alien establishes, respectively, a reasonable fear of persecution or torture."

FOUO

3



U.S. Citizenship
and Immigration
Services

4

# Overview of Bar

- With limited exceptions, aliens who enter or attempt to enter the United States across the southern border after failing to apply for protection in a country through which they transited en route to the United States are ineligible for asylum.

- Applies to affirmative asylum applications and credible fear screenings

- Does not modify withholding or deferral of removal proceedings

- Applies only prospectively to aliens who enter or arrive in the United States on or after effective date of this rule.

- Exceptions may apply

FOUO



# Exceptions to Bar

- A) Applied for protection in at least one country en route to the United States and received final judgment denying protection in such country

- B) Found to be a "victim of a severe form of trafficking in persons" (8 CFR § 214.11)

- C) En route to the United States only transited through countries were, at the time of transit, not a party to the Refugee Convention/Protocol, or the Convention Against Torture (CAT)

FOUO

5



# Exception A: Application for Protection

- The alien demonstrates that:

  – He or she applied for protection from persecution or torture in at least one country outside of the alien's country of nationality or last habitual residence through which the alien transited en route to the U.S., *and*

  – The alien received a final judgment denying the alien protection in such country.

FOUO

6



U.S. Citizenship
and Immigration
Services

7

# Exception B: Trafficking

■ The alien demonstrates that:

- He or she satisfies the definition of "victim of a severe form of trafficking in persons" provided by 8 CFR 214.11

FOUO



# Exception C: Non-Party Transit Countries

- The alien demonstrates that:

    - The only transit countries through which the alien transited en route to the U.S., at the time of transit, were not parties to the

        – 1951 UN Convention Relating to the Status of Refugees;

        – 1967 Protocol Relating to the Status of Refugees; or

        – UN Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.

- Note: Mexico is a party to the Conventions and Protocol

FOUO



## Revised CF Screening for Aliens Subject to the New Asylum Bar

- Under amended 8 CFR 208.30(e)(5), any alien placed into expedited removal who is referred for a CF screening and who is determined to be ineligible for asylum under the new 8 CFR 208.13(c)(4) shall

  - Receive a negative credible fear determination with respect to the alien's intention to apply for asylum; and

  - Have any claim to eligibility for withholding of removal or protection under CAT considered under the reasonable possibility reasonable fear standard **instead of** the significant possibility credible fear standard

9

FOUO



# Credible Fear Process – Jurisdiction and Family Cases

■ Jurisdiction: no change

- Interim Final Rule does not alter the referral process

- Asylum Office must receive all jurisdictional documents listed at CFPM III.B. prior to adjudicating the case

- AO and SAO must confirm that the Asylum Division has proper jurisdiction in each case

■ Family Cases: no change

10

FOUO



## Credible Fear Process–Application of Bar

- Determine if bar applies by completing Third-Country Transit Bar Worksheet
  - *Note: If alien did not enter or attempt to enter the United States across the southern border on or after implementation date, then bar does not apply. Do not fill out a Third-Country Transit Bar Worksheet.*

- If entered by land from Mexico, bar applies unless exception found

- Ensure record supports determination alien entered, attempted to enter, or arrived in the United States *across the southern land border*

- Will need to elicit testimony to determine if bar applies and if there is exception

- Elicit enough testimony to make a determination whether the applicant is a trafficking victim if bar applies and no other exception available to alien

11



U.S. Citizenship
and Immigration
Services

# Credible Fear Process – Application of Bar - Worksheet

- ■ Did alien enter or attempt to enter the United States across the southern border on or after implementation date?
    - *I-213, I-867A/B, other documents*
    - *Interview*

- ■ Did the individual transit through any country apart from his or her country of nationality (or last habitual residence) en route to the United States?
    - *I-213, I-867A/B, other documents*
    - *Interview*



U.S. Citizenship
and Immigration
Services

13

# Credible Fear Process– Application of Bar - Worksheet

■ If alien transited through at least one country en route that is a party to the Refugee Convention/Protocol or CAT, did alien apply for and was s/he denied protection in at least one such country?

  – *If yes → Exception A found*

■ Did the alien establish that s/he meets the definition of "victim of a severe form of trafficking in persons"?

  – *If yes → Exception B found*

■ The only countries through which the alien transited en route to the United States, at the time of the transit, were not parties a party to the Refugee Convention/Protocol or CAT?

  – *If yes → Exception C found*

FOUO



# Credible Fear Process– Application of Bar - Worksheet

- Conduct interview to determine if bar applies and whether there is an exception

- Complete Third-Country Transit Bar Worksheet

- If no exception applies, complete Orientation Memo to File and proceed with RF interview

- Complete applicable CF Checklist

14

FOUO



# Credible Fear Process – CF Checklist

- If bar does not apply because the alien is eligible for exception

  - → use Credible Fear Checklist 1 (dated 5.6.19)

- If bar does apply because no exception is available

  - → use Credible Fear Checklist 3 (Where a determination is made that the bar applies, limits screening to solely determine eligibility for withholding of removal and protection under the Convention Against Torture using the "reasonable possibility" standard)

- Note: Credible Fear Checklist 2 relates to 8 CFR 208.13(c)(3) (EWI proclamation)

15



# Screening Interview and Evidence

- As always, will need to determine if applicant is credible as to both bar determination and screening determination

- If bar applies → reasonable possibility standard

- If bar does not apply or bar applies and there is an exception → significant possibility standard

16



U.S. Citizenship
and Immigration
Services

# Case Processing

- Orientation Memo to File: When the AO determines that the bar applies, the adjudicator must explain to the alien that he or she will be screened according to the reasonable possibility standard and complete and memo to file.

- Note: Orientation Memo to File is not required if the alien is not subject to the bar or if the individual establishes an exception to the bar.

17



# Case Processing

- **Forms:**
  - Use I-870 dated 7.16.19 for all cases
    - On p. 5, only keep the paragraph under "additional information / continuation" when the individual is barred and no exceptions apply. Delete it for all other situations.
  - Orientation Memo to File for individuals who are subject to the bar
  - When the bar applies, use I-869A instead of I-869 to document negative determinations
  - NTA for all positive determinations, regardless of whether bar applies

- **Global:**
  - If individual is barred: select special group code "bar - 13(c)(4)"
  - If individual establishes an exception to the bar: select special group code "no bar - 13(c)(4)"
  - NOTE: if individual is not subject to the bar do not select either special group code

18

FOUO



# Post-Interview and Service

- Include in File
  - *Third-Country Transit Bar Worksheet should be placed in the file*
  - *Orientation Memo to File should be placed in the file*
- No change to service of determination otherwise
- Additional guidance
  - *Check box 1 on I-863*

19

FOUO



U.S. Citizenship
and Immigration
Services

20

| NOT SUBJECT TO 208.13(c)(4) Bar | SUBJECT TO 208.13(c)(4) Bar |
|---|---|
| M-444 | M-444 + Memo to File |
| I-870 dated 7.16.19 | I-870 dated 7.16.19 |
| Global: If individual is subject to the bar but establishes an exception, select special group code "no bar - 3(c)(4)" | Global: Select special group code "bar - 13(c)(4)" |
| Credible Fear Standard | Reasonable Fear Standard (no Chen/OSH) |
| Screen for asylum, withholding, CAT | Screen for withholding and CAT |
| Checklist 1 | Checklist 3 |
| Positive Determination: I-862 (NTA) | Positive Determination: I-862 (NTA) |
| Negative Determination: I-869 + I-863 | Negative Determination: I-869A + I-863 |
| Flag other possible mandatory bars | Flag other possible mandatory bars |



21

# Additional Resources

■ Trafficking Lesson Plan

■ RAIO Research Unit ECN country pages

■ Other Asylum and RAIO Lesson Plans

# EXHIBIT 4

**MEMORANDUM OF AGREEMENT BETWEEN
U.S. CUSTOMS AND BORDER PROTECTION (CBP)
AND
U.S. CITIZENSHIP & IMMIGRATION SERVICES (USCIS)**

1.   **PARTIES.**  The parties to this Agreement are U.S. Customs and Border Protection (CBP) and U.S. Citizenship & Immigration Services (USCIS).

2.   **AUTHORITY.**  This Agreement is entered into by USCIS and CBP pursuant to Part IV of Department of Homeland Security Delegation 0150.1 (June 5, 2003), as set forth in Department of Homeland Security Delegation 2019-001, "Delegation to the Commissioner of U.S. Customs and Border Protection Regarding Credible Fear Determinations."

3.   **PURPOSE.**  The purpose of this Memorandum of Agreement (MOA) is to set forth terms under which USCIS and CBP can foster collaboration through a Task Force (TF) assignment for the purposes of training and hearing credible fear (CF) claims and making determinations through the interview process.  This pilot program is named "Credible Fear for USBP."

Under this agreement, USCIS will benefit by being able to adjudicate the backlog of asylum cases.  Overall, this partnership will increase efficiency and effectiveness for DHS.

4.   **RESPONSIBILITIES.**  The following section details both USCIS and CBP responsibilities for the duration of this MOA.

    A.  USCIS shall:
       i.   Assign contacts at Asylum Headquarters, including other designees, to coordinate Credible Fear for USBP.
      ii.   Pay to CBP the actual costs of Border Patrol Agents (BPAs) and Supervisory Border Patrol Agents (SBPAs) performing credible fear interviews and work related to those interviews.
     iii.   Provide BPAs and SBPAs with work assignments, laptop computers, and other reasonable equipment to complete assigned tasks.
     iv.   Assign, in coordination with CBP, the weekly schedules of the designated BPAs and SBPAs for their pilot program responsibilities. USCIS will coordinate the BPA and SBPA schedules for required CBP trainings and qualifications as necessary.
      v.   Coordinate any physical or electronic access requirements and appropriate information technology support.
     vi.   Upon request, provide feedback to CBP regarding the BPAs' and

1

SBPAs' performance within 30 days before the end of the pilot program. USCIS may request that CBP reassign BPAs and SBPAs who are not performing at an acceptable level of competence.

   vii.   Fund all related travel for DHS/CBP pilot program responsibilities.

  viii.   Consult with CBP with respect to any assignment of FEPA overtime, i.e., regularly scheduled overtime in advance of the workweek, as necessary and in accordance with regulatory requirements for the period of time BPAs and SBPAs are performing work for USCIS. It is possible, but not expected, that BPAs and SBPAs will work more than their current BPAPRA schedule. USCIS shall fund all approved FEPA overtime for time spent performing credible fear interviews and work related to those interviews. No USCIS funds will be spent to fund any activities not directly related to credible fear interviews.

   ix.   Schedule BPAs for tours of duty consistent with their elected BPAPRA Levels and rates of pay, and comply with all provisions of BPAPRA regarding regularly-scheduled overtime and substitution of hours for absences during obligated overtime hours.

   x.   Consult with CBP with respect to any BPAPRA compensatory time being accrued by individual agents in performance of their TF duties, i.e,, irregular overtime at the end of the BPA's or SBPA's shift. It is possible, but not expected, that BPAs and SBPAs will work more than their current BPAPRA schedule.

B. CBP shall:

   i.   Identify up to 50 additional BPAs and SBPAs (60 total) to participate in CF for USBP training.

   ii.   Process time and attendance records for personnel designated to participate in the TF assignment under this MOA.

  iii.   Return the BPAs and SBPAs to their permanent CBP positions of record upon expiration of the TF assignment.

   iv.   Ensure that BPAs and SBPAs are not exercising their law enforcement officer duties while on the TF assignment.

   v.   CBP will activate the USCIS laptop on the CBP system.

   vi.   Upon notice from USCIS, reassign BPAs or SBPAs who are not performing credible fear interviews at an acceptable level of competence.

C. Designated SBPAs and BPAs during this TF assignment shall:

   i.   Receive CF for USBP training, conducted by USCIS, to satisfy the statutory definition of "asylum officer";

   ii.   Use USCIS-contracted telephonic services for conducting interviews, and maintain records of use of telephonic interpreters;

2

iii.   Conduct non-adversarial CF interviews, eliciting all relevant and useful information related to the applicant's claimed fear of return to his/her home country;

iv.   Take notes that accurately reflect the applicant's testimony;

v.   Prepare a summary of the material facts stated by the applicant and review that summary with the applicant, providing the applicant with the opportunity to correct any errors;

vi.   Detect and report possible victims of trafficking;

vii.   Be prepared to work their BPAPRA schedules and any necessary additional hours, including the possibility of overtime on regular days off in various locations, as needed;

viii.   Document each CF determination in conformance with the applicable statutes, regulations, policies and USCIS procedures;

ix.   Update the USCIS case management system with appropriate findings;

x.   Coordinate with the designated USCIS Supervisory Asylum Officers (SAOs) on assignments for review and completion of all Asylum Officer (AO)-related CF work;

xi.   Handle time-sensitive tasks;

xii.   Maintain applicant confidentiality;

xiii.   Conduct all relevant security checks;

xiv.   Wear business attire (non-uniform) when conducting in-person CF interviews, depending upon the office;

xv.   Attend meetings and trainings as required by the USCIS field office;

xvi.   Prepare required documents to ensure legally sufficient determinations;

xvii.   Maintain USCIS equipment according to USCIS protocols;

xviii.   Take necessary steps to return USCIS equipment to USCIS when the equipment is no longer needed for completion of CF cases;

xix.   Maintain non-adversarial liaison with nongovernmental organizations and/or private sector stakeholders; and

xx.   Perform other duties as assigned by USCIS/Asylum Division, with the prior written approval of CBP.

5.  **POINTS OF CONTACT.**

    A.  CBP/United States Border Patrol

        ███████████

        Acting Associate Chief
        U.S. Border Patrol HQ
        Operational Requirements Management Division
        ████████████████████████

        Washington, DC 20229

3



Phone:

@cbp.dhs.gov

B.  USCIS

Chief
Asylum Division
US Citizenship and Immigration Services

Washington, DC 20529
Phone:

@uscis.dhs.gov

6.  **OTHER PROVISIONS.**  Nothing in this Agreement is intended to conflict with
current law or regulation or the directives of the DHS.  If a term of this agreement is
inconsistent with such authority, then that term shall be invalid, but the remaining
terms and conditions of this agreement shall remain in full force and effect. This
agreement is based on the availability of funds.

7.  **EFFECTIVE DATE.**  This agreement is effective upon signature by both Parties.
The terms of this agreement shall apply to all cooperative activities between CBP and
USCIS to facilitate the processing of credible fear claims under this MOA and any
prior assignments of CBP personnel for these purposes shall be considered to be
covered under the terms of this MOA, including but not limited to, any credible fear
determinations made by a CBP officer prior to the date of the agreement.

8.  **DURATION.**  This MOA will remain in effect until the end of the pilot program or
until terminated by the Parties.  This agreement must be renewed through a signed
extension after 180 days from the effective date.  This agreement can be extended
indefinitely in 180 day increments, or less thereafter.

9.  **FUNDING.**  This MOA does not obligate funds or create a financial obligation
between the Parties.  No provision of this MOA shall be interpreted to require the
obligation or payment of funds in violation of the Anti-Deficiency Act, 31 U.S.C.
§ 1341, or any other applicable law.  All activities contemplated by this MOA are
subject to availability of funds and other necessary resources to the Parties.  An
Interagency Agreement will be established between USCIS and CBP to obligate
funds related to this MOA.

10. **MODIFICATION.**  This agreement may be modified upon the written consent of
both parties. This agreement may be reviewed at the request of either party to
determine if any changes or amendments will be made or incorporated. Such changes

4

or amendments shall be signed by the original signatories of the agreement, their representatives, or their successors.

11. **TERMINATION.**  Either party wishing to terminate this agreement may do so upon 30 days written notice.

12. **APPROVALS.**

Mark A. Morgan
Acting Commissioner
U.S. Customs and Border Protection
Department of Homeland Security

Ken Cuccinelli II
Acting Director,
U.S. Citizenship & Immigration
Services
Department of Homeland Security

7/10/19
Date

7/3/2019
Date

5

# EXHIBIT 5

| | |
|---|---|
| **From:** | ███████████████ |
| **To:** | ██████████████████████████████ |
| **Cc:** | ████████████████████████████████████ |
| **Subject:** | Process for FDNS Review of Cases at Dilley |
| **Date:** | Thursday, September 5, 2019 10:32:00 AM |

FOR OFFICIAL USE ONLY

ASM FDNS Colleagues:

As you know, we have begun FDNS review of all cases with a positive determination at the Dilley Family Residential Center.  Below are some procedural instructions to make the process as smooth and as consistent as possible.  This will be the first in a series of procedural guidance to be developed and distributed by HQ ASM FDNS for this review process.

Dilley Duty Officer Coverage

To provide coverage of cases, each Asylum Office is required to assign one officer every other week who will serve as one of four Dilley FDNS Duty Officers.  As often as possible, the IO assigned should have previous experience adjudicating APSO cases. The schedule will begin as follows:

- Week 1 (September 8 – 14): One officer each from: ZAR, ZHN, ZLA, ZNK
- Week 2 (September 15 – 21): One officer each from: ZCH, ZMI, ZNY, ZSF
- All subsequent odd weeks: ZAR, ZHN, ZLA, ZNK
- All subsequent even weeks: ZCH, ZMI, ZNY, ZSF

Once an SIO has selected an IO to serve as the Dilley Duty Officer for a specific week, the SIO should type the officer name in the Dilley Duty Officer spreadsheet in the FRC shared drive.  This will provide visibility to both HQ ASM FDNS and the SAOs working at Dilley.  Individual Asylum Offices are responsible for providing coverage for each week assigned to them.  In the event that one office cannot cover a certain week, the SIO may reach out to another Asylum Office to request assistance.

Individual Case Assignment and Tracking

Dilley FDNS Duty Officers should monitor the FDNS folder on the Dilley shared drive for new cases to be reviewed.  Wherever possible, FDNS Duty Officers should avoid reviewing cases where the interviewing officer comes from the same home office as the Duty Officer.  Duty Officers should endeavor to review all cases within 24 hours of submission to the FDNS folder for review.  The Duty Officer should select a case for review from the folder and then update the Dilley Tracking Tool, also located in the FDNS folder, to indicate that the case has been assigned and is being worked.  Upon completion of the case, the Duty Officer will update the Dilley Tracking Tool to show the case has been sent back to the SAO.  HQ ASM FDNS staff will monitor the Tracking Tool regularly to ensure that case review is completed in a timely manner and to determine if additional officers should be assigned during weeks with larger than average workloads.

Movement of Case Files

1. Each SAO scans each complete service packet and save it to ██████████████████
   ███████████

==Packets Pending FDNS== using the standard naming convention. (DIL XXX XXX XXX); I-870, CF decision sheet, Security checks; etc.

2. Each FDNS Duty Officer opens an Request for Assistance (RFA) in FDNS DS to cover all CF filings assigned for the day. The RFA should be named: Dilley Case Review MM-DD-YYYY First Initial Last Name (e.g. Dilley Case Review 09-03-2019 JKliska)

3. Each FDNS Duty Officer selects a file to review and updates the Dilley Tracking Tool (also in the shared Dilley FDNS folder) to show that the case is being reviewed. The FDNS Duty Office also updates the name of the case file in the shared drive folder with the officers initials (JK DIL XXX XXX XXX).

4. The FDNS Duty Officer creates and attaches a Form to the RFA using the receipt number. Example: Obtain the Receipt Number from Global, (i.e. ZHN194200000) and enter into the DS under the Forms tab with I870 selected in Form Type dropdown.

5. The FDNS Duty Officer reviews the file, conducts research, and memorializes the findings in a Record of Action (ROA). In the text of the ROA, the FDNS Duty Office will concur or non-concur with the positive determination. In most cases, a 'non-concur' will include a recommendation for a re-interview and will specify what information should be sought during the re-interview.

6. The FDNS Duty Officer will upload a completed PDF of the ROA to the RFA attachment and track time spent in the Activities tab in FDNS DS.

7. The FDNS Duty Officer will email a PDF of the completed ROA to the Dilley Intake mailbox at: ███████████████████, copying the SAO who signed off on the case, ██████████ ███████████████████████ and ████████████████████████

8. The SAO will review the ROA and determine next steps. The SAO may choose to consult with the FDNS Duty Officer to discuss any information included in the ROA.

As noted above, this email is the first in a series of procedural guidance to be developed by HQ ASM FDNS for this review process. We welcome your input on additional areas of instruction. Please send any questions or comments to me.

Many thanks for your assistance,

Jennifer Kliska
Chief, Fraud Detection and National Security Branch
Asylum Division, RAIO
U.S. Citizenship and Immigration Services
Department of Homeland Security
████████████████████
████████████
████████████████████████

FOR OFFICIAL USE ONLY

| From: | |
|---|---|
| To: | |
| Cc: | |
| Subject: | Decision Process for FDNS Review of Cases at Dilley FRC |
| Date: | Wednesday, September 11, 2019 8:43:00 AM |

FOR OFFICIAL USE ONLY

ASM FDNS Colleagues:

The guidance below describes the procedures for conducting a review of cases from the Dilley Family Residential Center with a positive determination. This guidance supplements the email entitled "Process for FDNS Review of Cases at Dilley" that I sent to all SIOs on 9/5/19.

After the initial review of a case with a positive determination, the FDNS Immigration Officer (IO) selects one of three options:

**Concur**: The IO identifies no concerns with the original positive determination.

*Next Step*: The IO notes his or her concurrence in the Record of Action (ROA) and sends it back to the appropriate inbox(es). The IO should fully document in the ROA additional issues that do not rise to the level of a non-concurrence but that could apply to future adjudicative decisions. The decision is served.

**Non-Concur with a Request for Re-Interview**: The IO identifies concerns with the original positive determination and believes that additional re-interview questions are warranted to resolve those concerns.

*Next Step*: The IO fully documents non-concurrence in the ROA, explains the reason(s) for the non-concurrence and fully identifies additional areas and potential lines of questioning to be addressed during a re-interview. A re-interview is scheduled.

**Non-Concur without a Request for Re-Interview**: The IO identifies concerns with the original positive determination and believes that a re-interview would not serve to resolve those concerns.

*Next Step*: The IO fully documents the non-concurrence on the ROA and explains the reason(s) for the non-concurrence. The IO contacts the SAO to discuss the identified concerns to see if the two can reach a consensus on next steps. Upon conclusion of the discussion, the IO drafts a Summary of Findings (SOF) to be sent to the appropriate inbox(es) and then uploaded to FDNS-DS. The SOF (and any possible resulting TECS records) should be reviewed by the Supervisory Immigration Officer and properly documented in FDNS-DS. The SAO makes the decision on the case and

the decision is served.

After the re-interview has taken place, the SAO will send the case back to the IO with one of three options:

**Negative Determination**: The SAO has determined that the new information elicited in the re-interview demonstrates that the case does not warrant a positive determination. The FDNS IO should review the new information obtained during the re-interview, and determine whether or not further FDNS specific action is warranted. The decision service should not be delayed on account of further FDNS actions.

*Next Step*: The decision is served.

**Positive Determination where the IO <u>agrees</u> that the information gained in the re-interview resolves all remaining concerns.**

*Next Step*: The decision is served.  The IO updates the ROA to reflect this determination. The FDNS IO closes any associated FDNS-DS CMEs.

**Positive Determination where the IO <u>disagrees</u> that the information gained in the re-interview resolves all remaining concerns.**

*Next Step*: The IO raises the issue with his or her SIO and the SIO consults with the SAO to discuss the case.  The SAO and SIO should work to the greatest extent possible to reach consensus on the determination. If consensus is not reached the SAO will consult with the Section Chief to determine the final decision.  The resulting decision will be served.  The IO drafts an SOF to be uploaded to FDNS-DS, and creates any warranted TECS records.

Many thanks for your assistance,

Jennifer Kliska
Chief, Fraud Detection and National Security Branch
Asylum Division, RAIO
U.S. Citizenship and Immigration Services
Department of Homeland Security



FOR OFFICIAL USE ONLY

# EXHIBIT 6

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Refugee, Asylum and Int'l Operations Directorate*
Washington, DC  20529



**U.S. Citizenship and Immigration Services**

JUN 0 4 2013                    HQRAIO 120/9.15a

# Memorandum

TO:         ASYLUM OFFICE DIRECTORS
            ASYLUM OFFICE DEPUTY DIRECTORS
            SUPERVISORY ASYLUM PRE-SCREENING OFFICERS
            ASYLUM PRE-SCREENING OFFICERS
            QUALITY ASSURANCE/TRAINING ASYLUM OFFICERS

FROM:       Ted H. Kim
            Acting Chief, Asylum Division

SUBJECT:    Telephonic Interviews in Negative Credible Fear Determinations

## I.   Purpose

This memorandum suspends the requirement to terminate the telephonic credible fear
interview and conduct a follow-up interview in-person or by video-teleconference (VTEL), if
the Asylum Pre-Screening Officer (APSO) finds that the alien does not have a credible fear of
persecution or torture.  Until further notice, these guidelines supersede the procedures
contained in Section III.E.1 of the draft Credible Fear Procedures Manual (CFPM).

## II.   Background

Under current credible fear procedures, Asylum Office Directors are authorized to exercise
their discretion to choose the mode of interview—in-person, telephonic, or VTEL—after
considering a number of factors.  If the telephonic mode is chosen, however, current
procedures require the APSO to terminate the telephonic interview and conduct an interview
in-person or by VTEL if there is any indication that the alien does not understand the process,
or if the APSO finds that the alien does not have a credible fear of persecution or torture.  This
procedure typically requires rescheduling the interview and therefore delays case processing
times.

In order to address the recent surge in credible fear referrals, which have nearly tripled over the
last three years, and support current Department of Homeland Security efforts to relieve

pressure on the detention system, the Asylum Division has been implementing measures to gain efficiencies in the credible fear process.  To this end, over the last year, Asylum Offices have been expanding the use of telephonic interviewing so that they can reach more credible fear applicants more quickly while also minimizing travel costs.  To maximize the efficiency of telephonic interviewing, the Asylum Division is suspending the procedural requirement for APSOs to switch from the telephonic mode to an in-person or VTEL mode if they do not find a credible fear of persecution or torture.

**III.    Implementation**

Effective immediately, where credible fear interviews are initiated over the telephone[1], APSOs should complete their interviews over the telephone, including those that may lead to a negative determination.  In such instances, APSOs should no longer terminate the telephonic interview in order to schedule a live or VTEL follow-up interview.

Asylum Office Directors or their management designee(s) may exercise their discretion to authorize exceptions to this new policy on a case-by-case basis.

Questions regarding the contents of this memorandum may be directed to the HQASM Operations Branch, Credible Fear Program Manager.

---

[1] The APSO should still terminate the telephone or VTEL interview and schedule an in person interview if there is any indication that the alien does not understand the process.