UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.M.V., *et al.*,

　　　　　　　　　Plaintiffs,

v.

WILLIAM BARR, in his official capacity as
Attorney General of the United States, *et al.*,

　　　　　　　　　Defendants.

Civil Action No. 19-2773 (ABJ)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and this Court's Minute Order dated

January 30, 2020, Defendants respectfully move to dismiss Plaintiffs' second amended

complaint, in part, for lack of jurisdiction.  Plaintiffs in this action are aliens seeking asylum in

the United States.  They seek declaratory and injunctive relief based on their collective challenge

to 11 alleged non-public regulations, directives, guidance and procedures that have altered the

credible-fear determination process for aliens in expedited removal.  *See generally* 2d Am.

Compl. (ECF No. 54).  Plaintiffs bring their claims under the Immigration and Nationality Act

("INA"), Administrative Procedure Act ("APA"), and the First and Fifth Amendments of the

U.S. Constitution.

Title 8 U.S.C. Section 1252(e)(3), which authorizes judicial review over systemic

challenges to changes in the expedited removal system in this court, limits the Court's review to

determinations of—"(i) whether [section 1225(b)], or any regulation issued to implement such

section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written

policy guideline, or written procedure issued by or under the authority of the Attorney General

[or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). Such suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." *Id.* § 1252(e)(3)(B).

Plaintiffs' lawsuit falls squarely within the ambit of section 1252(e)(3) as it purports to challenge Defendants' implementation of Plaintiffs' expedited removal from the United States based on 11 alleged challenged actions. But, for the vast majority of these alleged actions, Plaintiffs have failed to identify any regulation, written policy directive, written policy guideline, or written procedure that this Court may review under section 1252(e)(3). Indeed, as Defendants' declarant has established, these actions do not exist. Moreover, for any regulation, policy directive, policy guideline, or procedure that *does* exist, Plaintiffs have failed to timely file their claims, save for one, pursuant to the INA's 60-day jurisdictional bar for their programmatic challenges to expedited removal proceedings. Finally, for the remaining challenged action that exists and is not otherwise time-barred (which involves the government's review of credible fear cases for potential fraud), all but 26 Plaintiffs lack standing to bring their challenge. Therefore, the remaining Plaintiffs must be dismissed.

In support of their motion, Defendants attach the supplemental declaration of Ashley B. Caudill-Mirillo, Deputy Chief of the Asylum Division[1] with U.S. Citizenship and Immigration

---

[1] USCIS's Asylum Division is a component of USCIS that, among other things, adjudicates applications for asylum pursuant to 8 U.S.C. § 1158; makes non-refoulement assessments under Migrant Protection Protocols (which implement 8 U.S.C. § 1225(b)(2)(C)); conducts reasonable fear screening determinations regarding whether particular aliens have a reasonable fear of persecution or torture pursuant to the regulations at 8 C.F.R. § 208.31; and, conducts credible fear screening determinations regarding whether particular aliens have a credible fear of persecution or torture upon return to their countries of origin pursuant to 8 U.S.C. § 1225(b)(2)(B) and the regulations at 8 C.F.R. § 208.30. *See* Caudill-Mirillo Decl. ¶ 2.

Services ("USCIS"), and incorporate by reference Ms. Caudill-Mirillo's prior declaration filed in

support of Defendants' opposition to Plaintiffs' motion for a temporary restraining order

("TRO") in this action, *see* ECF No. 59-1.

## BACKGROUND

### *Expedited Removal*

Congress has authorized the U.S. Department of Homeland Security ("DHS") to

summarily remove from the United States certain inadmissible aliens who are arriving in the

United States or who recently illegally entered the country without inspection and admission and

who have no legal basis to remain here. *See* 8 U.S.C. § 1225(b)(1); Notice Designating Aliens

Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and

Nationality Act, 67 Fed. Reg. 68,924, 68,925 (Nov. 13, 2002); Designating Aliens for Expedited

Removal, 69 Fed Reg. 48,877 (Aug. 11, 2004). Under this summary-removal mechanism—

known as "expedited removal"—an alien "who is arriving in the United States" or "certain other

aliens" as designated by the Secretary of Homeland Security, who has not been admitted or

paroled into the United States and who lacks valid entry documentation or makes material

misrepresentations shall be "order[ed] . . . removed from the United States without further

hearing or review unless the alien indicates either an intention to apply for asylum under [8

U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C),

(a)(7).

If an alien makes no such indication, a final order of expedited removal can be entered

against the alien. *See id.* § 1225(b)(1)(A)(i). But if the alien "indicates an intention to apply for

asylum" or expresses a fear of persecution or torture, the immigration officer inspecting the alien

must "refer the alien for" an interview conducted by an asylum officer. *Id.* § 1225(b)(1)(A)(ii).

By regulation, aliens are also screened for eligibility for withholding of removal and protection under the regulations implementing U.S. obligations under Article 3 of the Convention Against Torture ("CAT").  8 C.F.R. §§ 208.30(e)(2), and (3), 235.3.  In such an interview, an asylum officer assesses whether the alien has a "credible fear" of persecution or torture.  8 U.S.C. § 1225(b)(1)(B)(v); 8 C.F.R. § 208.30(e)(3).  A "credible fear of persecution" means "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]" or eligibility for withholding of removal under 8 U.S.C. § 1231(b)(3).  *Id.* § 1225(b)(1)(B)(v).  A "credible fear of torture" means "the alien shows that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under the Convention Against Torture, pursuant to [8 C.F.R.] § 208.16 or § 208.17."  8 C.F.R. § 208.30(e)(3).  A credible-fear interview thus assesses whether the alien has a plausible basis to pursue asylum, which would allow the alien to temporarily remain in the United States for that purpose despite his inadmissibility.  *See* 8 U.S.C. §§ 1158, 1225(b)(1)(B)(v).

If the asylum officer determines that the alien "has a credible fear of persecution," or torture, the officer refers the alien to removal proceedings under 8 U.S.C. § 1229a.  *Id.* § 1225(b)(1)(B)(ii).  Removal proceedings under section 1229a provide more extensive procedures than those available in expedited removal.  *Compare, e.g.*, *id.* § 1229a *with id.* § 1225(b)(1).  In section 1229a removal proceedings, an alien may apply for asylum or other relief or protection from removal.  *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).  An alien can also appeal an adverse decision to the Board of Immigration Appeals ("Board") and can, in turn,

obtain judicial review of an adverse Board decision by filing a petition for review within the relevant U.S. Court of Appeals.  8 U.S.C. § 1252(a)(1).

If, however, the interviewing asylum officer (after review by a supervisor) determines that the alien does not have a credible fear of persecution or torture, the alien is not entitled to be placed into section 1229a removal proceedings.  However, the alien may seek review of the negative credible-fear determination before an IJ.  *Id.* § 1225(b)(1)(B)(iii)(I), (III).  If, after review, the IJ concludes that the alien has established a credible fear, the IJ will vacate the asylum officer's negative determination and DHS will place the alien in section 1229a removal proceedings for adjudication of the alien's asylum claim (and any other removal-related claims the alien chooses to bring).  8 C.F.R. § 1003.42(f).  If the IJ agrees with the asylum officer's determination that the alien lacks a credible fear, however, the alien may be "removed from the United States without further hearing or review."  8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A).  The INA precludes further review by the Board or any court of the credible-fear determination.  8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

***Third-Country Transit Rule***

On July 16, 2019, the Attorney General and the Acting Secretary issued the Third-Country Transit Rule, *see* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019), which provides that "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum[.]"  84 Fed. Reg. at 33,843.  The Rule does not apply to an alien who shows that he or she applied for and was

denied protection in a third country through which the alien traveled en route to the United

States.  *Id.* at 33,843.  Nor does it apply to an alien who is a victim of a severe form of trafficking

or who traveled exclusively through countries that, at the time of transit, were not parties to

certain international agreements.  *Id.*

    After reviewing the existing framework for adjudicating claims for asylum and other

forms of protection from removal as part of the credible fear process, 84 Fed. Reg. at 33,832-37.

the rule explained that the "screening process established by the [Rule] will proceed as

follows[:]"

> For an alien subject to expedited removal, DHS will ascertain whether the alien seeks protection, consistent with INA 235(b)(1)(A)(ii), 8 U.S.C. 1225(b)(1)(A)(ii). All such aliens will continue to go before an asylum officer for screening, consistent with INA 235(b)(1)(B), 8 U.S.C. 1225(b)(1)(B). The asylum officer will ask threshold questions to elicit whether an alien is ineligible for a grant of asylum pursuant to the third-country-transit bar. If there is a significant possibility that the alien is not subject to the eligibility bar (and the alien otherwise demonstrates that there is a significant possibility that he or she can establish eligibility for asylum), then the alien will have established a credible fear.

> If, however, an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative credible-fear finding. The asylum officer will then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection.

> An alien subject to the third-country transit asylum eligibility bar who clears the reasonable-fear screening standard will be placed in section 240 proceedings, just as an alien who clears the credible-fear standard will be. In those proceedings, the alien will also have an opportunity to raise whether the alien was correctly identified as subject to the third-country-transit ineligibility bar to asylum, as well as other claims. If an immigration judge determines that the alien was incorrectly identified as subject to the third-country-transit bar, the alien will be able to apply for asylum. Such aliens can appeal the immigration judge's decision in these proceedings to the Board and then seek review from a Federal court of appeals.

> Conversely, an alien who is found to be subject to the third-country-transit asylum eligibility bar and who does not clear the reasonable-fear screening standard can obtain review of both of those determinations before an immigration judge, just as immigration judges currently review negative credible-fear and reasonable-fear

determinations. If the immigration judge finds that either determination was incorrect, then the alien will be placed into section 240 proceedings. In reviewing the determinations, the immigration judge will decide de novo whether the alien is subject to the third country-transit asylum eligibility bar. If, however, the immigration judge affirms both determinations, then the alien will be subject to removal without further appeal, consistent with the existing process under section 235 of the INA. In short, aliens subject to the third country-transit asylum eligibility bar will be processed through existing procedures by DHS and EOIR in accordance with 8 CFR 208.30 and 1208.30, but will be subject to the reasonable-fear standard as part of those procedures with respect to their statutory withholding and CAT protection claims.

84 Fed. Reg. at 33,837-38.

Multiple organizations have challenged the Rule. On July 24, 2019, another Court in this District denied a request for a temporary restraining order enjoining operation of the rule, concluding that "plaintiffs [had] not shown a likelihood of irreparable harm entitling them to a temporary restraining order," and further conveying "strong doubts that the plaintiffs will be able to successfully show that the . . . Rule exceeds the Attorney General's authority." *Capital Area Immigrants' Rights Coal. v. Trump*, No. Civ. A. No. 19-2117 (TJK), 2019 WL 3436501, at *4 (D.D.C. July 24, 2019). That same day, a Court in the Northern District of California enjoined the Rule nationwide. *See East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019). The Ninth Circuit stayed the injunction as to all jurisdictions but its own, ruling that the record did not support the injunction's nationwide scope. 934 F.3d 1026 (9th Cir. 2019). The District Court nonetheless restored the nationwide scope of the injunction. 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, 2019, the Supreme Court stayed the District Court's injunctive orders "in full," allowing the Rule to go into effect nationwide. *Barr v. East Bay Sanctuary Covenant*, No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019). That stay remains in effect "pending disposition of the Government's appeal . . . and disposition of the Government's petition for a writ of certiorari, if such writ is sought." *Id.*

## PROCEDURAL HISTORY

On September 16, 2019, Plaintiffs—aliens who were apprehended by U.S. Customs and Border Protection ("CBP") officers—filed their initial complaint in this action. *See* ECF No. 1. Plaintiffs were placed (at least initially) into expedited removal proceedings, given credible fear interviews and received negative credible fear determinations, and (for those families that have not been paroled) are currently detained at the South Texas Family Residential Center in Dilley, Texas. *See generally id.* On September 25, 2019, Plaintiffs filed a motion for a TRO requesting that this Court stay their removal until the Court decides the merits of their case. *See* ECF No. 13. In an Order dated September 25, 2019, the Court issued a temporary stay to preserve the status quo during the pendency of the TRO motion. *See* ECF No. 16.

On October 17, 2019, Plaintiffs filed their first amended complaint in this action, which added several additional families seeking asylum who have received negative credible-fear determinations. *See* Am. Compl., ECF No. 28. Subsequent to their amended complaint, Plaintiffs filed a motion on October 17, 2019, requesting this Court to issue a TRO barring the government from removing the newly-added Plaintiffs from the United States. On December 5, 2019, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, *see* ECF No. 46, and Motion to Add Plaintiffs, *see* ECF No. 47, which the Court granted via a Minute Order dated December 16, 2019.

The Court held a hearing regarding Plaintiffs' TRO motions on December 18, 2019. During the hearing, the Court ordered the Parties to file supplemental briefs to assist the Court in deciding Plaintiffs' pending TRO motion, which the Parties filed on December 27, 2019 (Defs.' Supp. TRO Mem., ECF No. 59) and January 13, 2020 (Pls.' Supp. TRO Mem., ECF No. 65), respectively. Plaintiffs' TRO motions remain pending with the Court.

## LEGAL STANDARDS

**Dismissal Pursuant to Rule 12(b)(1) for Lack of Jurisdiction**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction, *see, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

## ARGUMENT

Plaintiffs' lawsuit presents a so-called "programmatic" challenge to Defendants' alleged expedited removal policies. 8 U.S.C. § 1252(e)(3); *see* 2d Am. Compl. (ECF No. 54) ¶ 9. Specifically, Plaintiffs' second amended complaint proffers 11 "challenged actions," which pertain to "directives, guidelines, policies, actions, and procedures to credible fear screenings" that (in Plaintiffs' view) are contrary to existing law. *See* 2d Am. Compl. ¶¶ 141-46. Before addressing the merits of Plaintiffs' claims, the Court must evaluate whether it has jurisdiction to review the alleged "challenged actions." As discussed below, such review is limited under section 1252(e) of the INA.

***Judicial Review Under Section 1252(e)(3)***

Section 1252(e)(3) of the INA permits challenges to the "validity of the system" codified

at 8 U.S.C. § 1225(b)(1) and specific types of "procedures" implementing section 1225(b)(1).

*See* H.R. Rep. 104-828 (Sept. 24, 1996) (conference report), at 220 ("Section [1252](e)(3)

provides for limited judicial review of the validity of *procedures* under section [1225](b)(1).")

(emphasis added).  *See Am. Immigration Lawyers Ass'n v. Reno* (*"AILA"*), 18 F. Supp. 2d 38, 45

(D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) (adjudicating claims under section

1252(e)(3) of aliens already removed prior to initiation of the lawsuit).  However, such systemic

challenges are not unbounded.  The statute specifically limits such challenges to determinations

of:

> (i)    whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii)   whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

In order to bring an action under section 1252(e)(3)(A), a plaintiff must adhere to the

INA's jurisdictional review period for judicial relief.  Specifically, section 1252(e)(3)(C)

provides that "[a]ny action instituted under this paragraph must be filed no later than 60 days

after the date the challenged section, regulation, directive, guideline, or procedure described in

clause (i) or (ii) of subparagraph (A) is first implemented."

Notably, section 1252 provides careful limitations on federal-court jurisdiction.  Section

1252(a)(2), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to

section 1225(b)(1)," "[n]otwithstanding any other provision of law . . . no court shall have

jurisdiction to review . . . except as provided in subsection (e) [*i.e.*, section 1252(e)(3)]" "a decision by the Attorney General to invoke the provisions of such section," or "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title."  8 U.S.C. § 1252(a)(2)(A)(ii), (iv).  Section 1252(a)(2)(A) squarely removes from federal courts any jurisdiction to review issues "relating to section 1225(b)(1)" other than as explicitly permitted by section 1252(e)(3), and thus eliminates, for example 28 U.S.C. § 1331 as a basis for district-court jurisdiction.  *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331).

### I.    The Majority of Plaintiffs' "Challenged Actions" Do Not Relate to Any Regulation, Written Policy Directive, Written Policy Guideline, or Written Procedure.

First, in order to establish jurisdiction under section 1252(e)(3), Plaintiffs must first identify the regulations, written policy directives, written policy guidelines, or written procedures they seek to challenge here.  8 U.S.C. § 1252(e)(3)(A).  Although Plaintiffs' second amended complaint alleges the existence of 11 non-public "challenged actions" that Plaintiffs describe under "temporary names", Plaintiffs admit that no "official policy directive, guidance, or procedure names" could be identified.  2d Am. Compl. ¶ 147, n.10 (requesting discovery).  As discussed below, Plaintiffs have failed to satisfy their burden to establish the Court's jurisdiction over all but one of the alleged policies.  And, for that one existing policy, there are other jurisdictional defects to Plaintiffs' claim.

Indeed, in response to Plaintiffs' complaint, USCIS has taken significant efforts to identify any of the "challenged actions" alleged by Plaintiffs.  *See* Supp. Caudill-Mirillo Decl. ¶ 3.  In so doing, Ms. Caudill-Mirillo consulted with USCIS's Asylum Division's Operations,

Training, and Fraud Detection and National Security ("FDNS") branches, which oversee and implement the Asylum Division's training and operations that were relevant to the challenged actions as described in Plaintiffs' second amended complaint. *Id.* Moreover, she consulted the Houston Asylum Office, which oversees the South Texas Family Residential Center in Dilley, Texas. *Id.* And she oversaw a search and review of the Asylum Division's shared drives and e-mail records for any relevant policies and guidance. *Id.* Finally, she verified dates, polices, and procedures relating to USCIS Asylum Division policies that affect how credible fear determinations were made at the South Texas Family Residential Center.[2] *Id.*

USCIS does not use any of the "temporary names" for any of its policies, processes, or actions. *See* Caudill-Mirillo Decl. ¶ 22. As a result of her review, Ms. Caudill-Mirillo has concluded that the "challenged actions" alleged in the second amended complaint, save for one, do not exist as alleged. This conclusion remains unchanged, even in light of Plaintiffs' clarification of their claims in their second amended complaint and the multi-pronged efforts of USCIS to identify any relevant policy directives, policy guidelines, or procedures. *See* Supp. Caudill-Mirillo Decl. ¶ 4. As noted above, section 1252(e)(3) limits the Court's jurisdiction over Plaintiffs' claims solely to review "procedures and policies adopted" "to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A). And section 1252(e)(3)(A) authorizes a court to review, as relevant here, only "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or the Secretary of Homeland Security to implement [section 1225(b)]."

_____

[2] Additionally, in response to Plaintiffs' allegations that Defendants had withheld documents referenced in Ms. Caudill-Mirillo's declaration, her supplemental declaration attaches several referenced documents identified by Plaintiff. *See* Supp. Caudill-Mirillo Decl. ¶¶ 4-11 (with exhibits).

Moving on to the specific challenged actions, to the extent that Plaintiffs seek to challenge any *unwritten* actions, section 1252 "bar[s] the unwritten actions of the agency from judicial review." *Khan v. Holder*, 608 F.3d 325, 331 (7th Cir. 2010); *AILA*, 18 F. Supp. at 58 ("[B]ased on the clear language of the jurisdictional provision of [section 1252(e)(3)(A)(ii)], this Court cannot review unwritten policies or practices."). Indeed, Congress emphasized the "written" requirement because it sought to shield such *ad hoc* implementation decisions (such as those presented here) from judicial review. *See AILA*, 199 F.3d at 1354, 1356 ("affirm[ing]" the district court's decision that "there was no jurisdiction to challenge the particular practices of immigration officials"); 18 F. Supp. 2d at 58 (noting that "discretion[ary] [decisions] placed in the hands of individual INS agents" are not subject to judicial review under section 1252(e)(3)). Just as the plaintiffs in *AILA* failed to establish the court's jurisdiction over the "alleged serious failures by the [Immigration and Naturalization Services] to follow its own regulations in the treatment of aliens arriving in the United States[,]" Plaintiffs here cannot ground the Court's jurisdiction on their as-applied challenges to Defendants' adherence to the law.

Moreover, as discussed below, the "challenged actions" regarding Plaintiffs' expended removal in this lawsuit do not appear in any regulation, written policy directive, written guideline, or written procedure; therefore, section 1252(e)(3) therefore does not authorize this Court to address them. Notably, in light of Plaintiffs' disclaimed intent to challenge the Transit Rule, Defendants have excluded any "challenged actions" that appear to relate solely to that rule.

*See* 2d Am. Compl. ¶ 6, n. 4.  Accordingly, the following "challenged actions" should be

dismissed:

| Challenged Action | Complaint Paragraph |
|---|---|
| Limit Fact-Finding Relevant to a Significant possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture | ¶ 150 |
| Make Interviews Adversarial | ¶ 151-52 |
| Do Not Apply the Most Favorable Precedent in CFI Proceedings | ¶ 156 |
| Withholding Facts Relied Upon in Issuing the Credible Fear Determination | ¶ 158 |
| Abandon Child-Sensitive Treatment in Credible Fear Proceedings | ¶ 159 |
| Apply RFI Standards Without RFI Protections | ¶ 155 |
| Issue Summary Negative Determinations to Eliminate Supervisory Review and Concurrence and to Avoid Developing a Complete Written Record | ¶ 149 |

   a.  *Limit Fact-Finding Relevant to a Significant possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture (2d Am. Compl. ¶ 150)*

   Plaintiffs allege that "[i]nterviewers now improperly limit questions, so they fail to elicit

testimony necessary to develop all facts relevant or supportive of an asylum-seeker's eligibility

for asylum[.]"  2d Am. Compl. ¶ 150.  Here, Plaintiffs' allegation that Defendants are

intentionally limiting their consideration of facts based on an alleged non-public policy directive,

policy guideline, or procedure would appear to be a thinly-veiled as-applied challenge to the

conduct of specific asylum officers.  In her prior declaration, Ms. Caudill-Mirillo noted that

"[g]enerally, while most credible fear claims require only one interview, certain cases may have

multiple interviews for various reasons, including but not limited to, the need for further

questions on the substance of a claim necessary to meet legal sufficiency standards, interpreter

availability, attorney reschedule requests, or other operational necessities."  *See* Caudill-Mirillo

Decl. ¶ 15.  However, as explained by Ms. Caudill-Mirillo, no such "written policy directive, written policy guideline, or written procedure" exists.  *Id.* ¶ 27.  Therefore, section 1252(e)(3) does not permit review of this challenged action.

> b. *Make Interviews Adversarial (2d Am. Compl. ¶ 151-52)*

Plaintiffs allege that, contrary to 8 C.F.R. § 208.30(d), Defendants have conducted credible fear interviews in an adversarial fashion.  2d Am. Compl. ¶ 151.  Plaintiffs allege that they were interviewed three or more times by multiple officers.  *Id.*  Plaintiffs also allege that CBP agents have conducted interviews instead of "trained asylum officers[.]  *Id.*  Defendants acknowledge that certain individuals may have more than one interview for multiple reasons, and, as noted below, trained Border Patrol agents acting in the capacity of asylum officers do conduct interviews.  *See* Caudill-Mirillo Decl. ¶¶ 15, 19.  Indeed, these allegations appear to undercut Plaintiffs' other claims regarding Defendants' alleged limitations on fact-finding.  However, as to the notion of conducting credible fear interviews in an adversarial fashion, no such "written policy directive, written policy guideline, or written procedure" exists.  *See* Caudill-Mirillo Decl. ¶ 28.

> c. *Do Not Apply the Most Favorable Precedent in CFI Proceedings (2d Am. Compl. ¶ 156)*

Plaintiffs allege that Defendants' interviews are not applying the most favorable case law in credible fear proceedings" in violation of the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018).  2d Am. Compl. ¶ 156.  However, Plaintiffs have failed to proffer a cognizable challenge under section 1252(e)(3) here as there is no written policy directive, written policy guideline, or written procedure that instructs asylum officers to violate, or otherwise circumvent, the court's injunction in *Grace*.  While Plaintiffs might allege bad faith here, the government officials responsive for conducting credible fear interviews should be presumed to

15

execute their duties in good faith.  *See Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) (citing *Thomas v. Baker*, 925 F.2d 1523, 1525 (D. C. Cir. 1991)).

Nevertheless, USCIS remains in full compliance with the permanent injunction issued in *Grace*, which requires the asylum officer to apply the most favorable circuit court precedent in credible fear proceedings, regardless of where an asylum-seeker is detained.  *See* Caudill-Mirillo Decl. ¶ 31.  And Plaintiffs suggestion that this Court should review whether the government is in compliance with another court's injunction is especially misplaced where that court retains exclusive jurisdiction to enforce the terms of its injunction.  Therefore, this challenged action is not subject to review under section 1252(e)(3).

> d.   *Withholding Facts Relied Upon in Issuing the Credible Fear Determination (2d Am. Compl. ¶ 158)*

Plaintiffs allege that "interviewers now withholding critical information relied upon when issuing a negative fear determination" and that Plaintiffs are not informed of the basis for their denials.  2d Am. Compl. ¶ 158.  Plaintiffs allege that this policy is contrary to 8 C.F.R. § 208.30(e)(1), which requires an asylum officer to create a written record of his or her credible fear determination.  *Id.*  This claim appears to be another as-applied challenge to Defendants' adherence to the law.  In any event, as explained by Ms. Caudill-Mirillo based on her review of relevant policies and guidance, no such "written policy directive, written policy guideline, or written procedure" exists.  Caudill-Mirillo Decl. ¶ 33.

> e.   *Abandon Child-Sensitive Treatment in Credible Fear Proceedings (2d Am. Compl. ¶ 159)*

Plaintiffs allege that Defendants require telephonic interviews for families detained at the South Texas Family Residential Center.  2d Am. Compl. ¶ 159.  Plaintiffs allege that these telephonic interviews are not "child-friendly" and have been conducted in an adversarial fashion. *Id.*  As explained by Ms. Caudill-Mirillo, credible fear interviews may be conducted either in

16

person or telephonically. *See* Caudill-Mirillo Decl. ¶ 34. The determination as to how interviews will be conducted is driven by a range of operational factors, including but not limited to, the physical interview space available at the detention facilities, the availability of officers to travel to the detention facilities, and the number of interviews that must be conducted within a prescribed time period. *Id.* However, Ms. Caudill-Mirillo did not locate any directives or policies that have been issued restricting the ability to conduct in person or telephonic interviews. *Id.* Indeed, she affirms that no such "written policy directive, written policy guideline, or written procedure" exists. *Id.* Therefore, section 1252(e)(3) does not permit review of this challenged action.

### f. *Apply RFI Standards Without RFI Protections (2d Am. Compl. ¶ 155)*

Plaintiffs allege that, after Plaintiffs were informed that they were ineligible for asylum, Defendants "did not offer or facilitate the protections required by law for [Reasonable Fear Interview] interviewees while evaluation Plaintiffs under the heightened RFI standard." 2d Am. Compl. ¶ 155. Defendants, however, deny that any "written policy"—as alleged by Plaintiffs— exists. *See* Caudill-Mirillo Decl. ¶ 30.

Defendants note that USCIS is bound by regulation to apply the reasonable fear standard in accordance with the Third-Country Transit Bar Interim Final Rule. *See id.*; 8 C.F.R. § 208.30(e)(5)(iii); *see also* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019). Pursuant to 8 C.F.R. § 208.30(e)(5)(iii), aliens who are subject to the Third-Country Transit Bar and as a result are barred from asylum eligibility under 8 C.F.R. § 208.13(c)(4), will be screened for persecution or torture under the reasonable fear legal standard. And, as noted above, the rule itself provides for the very process Plaintiffs purport to challenge. *See* 84 Fed. Reg. at 33,838 ("If, however, an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative

credible-fear finding.  The asylum officer will then apply the reasonable-fear standard to assess

the alien's claims for statutory withholding of removal or CAT protection.); *see also id.* at

33,837-38.  As noted above, because Plaintiffs have disclaimed any intent to challenge the third-

country transit bar, they have failed to identify any written policy directive, written policy

guideline, or written procedure that may be challenged separately; therefore, section 1252(e)(3)

does not permit review here.

> g.  *Issue Summary Negative Determinations to Eliminate Supervisory Review and
>     Concurrence and to Avoid Developing a Complete Written Record (2d Am.
>     Compl. ¶ 149)*

Plaintiffs allege that Defendants "have truncated the fact development and discussion of

the merits in Plaintiffs' fears in interviews" and "summarily announce negative asylum

determinations[.]"  2d Am. Compl. ¶ 149.  Accordingly, Plaintiffs allege that they "are denied

the right to a meaningful supervisory review of credible fear determinations[.]"  *Id.*  According

to Ms. Caudill-Mirillo, no such "written policy directive, written policy guideline, or written

procedure" exists.  *See* Caudill-Mirillo Decl. ¶ 26.

Once again, Defendants note that Plaintiffs' allegations may refer to the implementation

of the third-country transit bar.  Those individuals who are subject to the third-country transit bar

would be barred from asylum eligibility under 8 C.F.R. § 208.13(c)(4).  In the credible fear

context, under 8 C.F.R. § 208.30(e)(5)(iii), when an individual is barred from asylum eligibility

under § 208.13(c)(4), "the asylum officer shall enter a negative credible fear determination with

respect to the alien's application for asylum."  8 C.F.R. § 208.30(e)(5)(iii).  Thereafter, the

agency must determine whether this same individual, who is barred from asylum under the third-

country transit bar, has established "a reasonable fear of persecution or torture."  *Id.*  As

previously noted, the rule itself requires the asylum officer to make an initial determination if the

alien is eligible for asylum, and if found to be barred by the rule, to then make an assessment concerning reasonable fear. *See* 84 Fed. Reg. at 33,838 ("If, however, an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative credible-fear finding. The asylum officer will then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection."); *see also id.* at 33,837-38. Additionally, as Ms. Caudill-Mirillo notes, *see* Caudill-Mirillo Decl. ¶ 14, consistent with regulations that the transit rule did not alter, "[a]n asylum officer's determination shall not become final until reviewed by a supervisory asylum officer." 8 C.F.R. § 208.30(e)(8).

   USCIS sent written implementation guidance on July 15, 2019, to all Asylum Division staff regarding an interim final rule set to be published the following day. *See* Caudill-Mirillo Decl. ¶ 6. Thereafter, in order to comply with judicial orders stemming from various legal challenges to the Third-Country Transit Bar IFR, and given the technical nature of the rule, USCIS issued updated guidance on a rolling basis to Asylum Division staff and any U.S. Department of Homeland Security ("DHS") officials conducting fear interviews on July 19, 2019; July 24, 2019; August 17, 2019; August 19, 2019; September 9, 2019; September 11, 2019; and September 12, 2019. *Id.* But, again, Plaintiffs expressly disclaim any challenge to the transit rule, and so cannot challenge the guidance issued to implement that rule, including that issued July 16 and 19, 2019.

   Moreover, the guidance instructing asylum officers at USCIS how to apply the different injunctions that limited the operation of the transit rule between July 24, 2019 and September 12, 2019, implement those *injunctions,* and do not implement section 1225(b)(1), and so cannot be subject to review under 8 U.S.C. § 1252(e)(3). Section 1252(e)(3), by its terms, provides for

jurisdiction—assuming the other statutory pre-requisites are satisfied—to make "determinations" of whether "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General *to implement such section* [*i.e.,* 8 U.S.C. § 1225(b)(1)], is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."[3]  8 U.S.C. § 1252(e)(3)(ii).  But guidance implementing *injunctions* issued by the federal courts in no sense "implements" section 1225(b)(1).  An implementation involves intentional action to accomplish a specific obligation, not a collateral consequence of actions taken to accomplish a different goal.  *See* Webster's Third International Dictionary (1987) (defining "implement" as "to give practical effect to and ensure of actual fulfillment by concrete measures").  The USCIS guidance issued on July 24, 2019; August 17, 2019; August 19, 2019; September 9, 2019; September 11, 2019, and September 12, 2019—in response to the injunction issued by the Northern District of California, the partial stay of that injunction by the Ninth Circuit, the renewed injunction issued by that same district court, the partial stay of that injunction by the Ninth Circuit, and the full nationwide stay of that injunction by the Supreme Court—does not complete, perform, or carry into effect or fulfill any "authority" of the Secretary under section 1225(b), or specifically his authority under section 1225(b)(1) governing expedited removal, 8 U.S.C. § 1252(e)(3)(A).  In no sense is guidance issued to comply with federal court orders "issued by or under the authority of the [Secretary] to implement such section."  *Id.* § 1252(e)(3)(A)(ii).  If Congress had thought to provide federal courts authority to review guidance issued by an agency to implement injunctions issued by *other federal courts*—a

---

[3] Under the Homeland Security Act of 2002, many immigration functions of the Immigration and Naturalization Service ("INS") were transferred from the Department of Justice to DHS.  *See* 6 U.S.C. § 557.  Therefore, for credible-fear proceedings—outside of IJ review of negative credible-fear findings, 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1208.30(g)(2)— implementation of section 1225(b)(1) procedures now is entrusted to the Secretary.

dubious proposition placing co-equal district courts in the position of reviewing the import of other court's injunctions—it would have provided for such review explicitly in section 1252(e)(3) by stating that courts may review "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section," *and* "written guidance issued to implement injunctions issued by Article III courts." Congress, of course, did no such thing.  Rather, as explained in the Conference Report, "Section [1252](e)(3) provides for limited judicial review of the validity of *procedures* under section [1225](b)(1)."  *See* H.R. Rep. 104-828 (Sept. 24, 1996).  The necessary predicate for review—an implementation "issued by or under the authority of the [Secretary] to implement" section 1225(b)(1), 8 U.S.C. § 1252(e)(3)(A)(ii)—is completely lacking, and so this Court lacks jurisdiction to review USCIS guidance implementing the various injunctions against the transit rule issued between July 24, 2019, and September 11, 2019.

For the foregoing reasons, none of above-described challenged actions are written policy directives, written policy guidelines, or written procedures; therefore section 1252(e)(3) therefore does not authorize this Court to address them.

## II.    To The Extent Any Regulations, Written Policy Directives, Written Policy Guidelines, or Written Procedures Do Exist, Most Plaintiffs Are Barred By the 60-Day Statutory Deadline.

Aside from the Transit Rule, Defendants have identified several written policy directives, written policy guidelines, or written procedures that appear to correspond with the allegations in Plaintiffs' second amended complaint.  These actions, which potentially fall within the ambit of section 1252(e)(3), include (1) the reviews of credible fear determinations by USCIS's Fraud Detection and National Security ("FDNS") officers; (2) the reduction of the credible fear consultation period from 48 hours to one full calendar day; and (3) Defendants' use of Border

Patrol Agents from U.S. Customs and Border Protection ("CBP"), to conduct credible fear interviews. However, to the extent that Plaintiffs' challenged actions actually match up with the actions identified by Defendants, the majority of Plaintiffs have failed to demonstrate that they satisfy the jurisdictional requirement that their programmatic challenges be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . *is first implemented*." 8 U.S.C. § 1252(e)(3)(B) (emphasis added). Indeed, only one challenged action (*i.e.*, the FDNS review) is not time-barred here.

***The 60-day Bar Is Jurisdictional***

In *AILA*, this Circuit affirmed the district court's holding that section 1252's 60-day bar is jurisdictional. Specifically, the district court in *AILA* noted that the use of the phrase "is first implemented . . . so that the 60 days ran from a fixed point," rather than a phrase like 60 days "from the date of application of [the challenged procedures] to a particular alien" makes clear that the 60-day limitation "is jurisdictional rather than a traditional limitations period," such that when an alien's claims "arise" is irrelevant. *See AILA*, 18 F. Supp. 2d at 47. Indeed, for that reason, the District Court in *AILA* concluded that aliens who have had the regulation applied to them outside a specific regulation or policy's relevant 60-day period may not invoke section 1252(e)(3), *id.*, a conclusion the D.C. Circuit affirmed in full. 199 F.3d 1352, 1357 (D.C. Cir. 2000).

Likewise, another Court in this District recently rejected constitutional challenges filed by other plaintiffs because "the 60-day limit on [such] review has long since expired." *Dugdale v. CBP*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015). "[T]he constitutionality of the sixty-day limit" is now settled law. *AILA*, 199 F.3d at 1356; *see Dugdale*, 88 F. Supp. 3d at 8 (rejecting argument that 60-day limit may be circumvented because the court must "leave it to higher authorities to

determine whether grounds exist to depart from these holdings"); *Dugdale*, Civ. A. No. 14-1175 (CRC), 2015 WL 2124937, at *1 (D.D.C. May 6, 2015), *aff'd Dugdale v. Lynch*, 672 F. App'x 35 (D.C. Cir. 2016) ("*AILA* remains binding precedent").  Accordingly, notwithstanding Plaintiffs' prior arguments challenging the jurisdictional nature of the 60-day period, *see* Pls.' Supp. TRO Mot. at 12-14, where (as here) Plaintiffs have failed to file their claims prior to the expiration of the relevant 60-day period, they are barred from pursuing their claims.  *See AILA*, 18 F. Supp. 2d at 45.

Moreover, Plaintiffs' fail to provide any support for their claim that the 60-day bar should be calculated based on the "publication" of the relevant regulation, written policy directive, written policy guideline, or written procedure, *see* Pls.' Supp. TRO Mem. at 11.  This cannot be the case.  Pursuant to the express language of the statute, the relevant inquiry is when the challenged action was "first implemented."  8 U.S.C. § 1252(e)(3)(B) (emphasis added).  As discussed below, Plaintiffs' have failed to establish that their claims were brought prior to the implementation of any existing challenged actions.

> a. *Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures (2d Am. Compl. ¶ 147) & Limit Migrants' Right to Meaningful Consultation (2d Am. Compl. ¶ 154)*

Plaintiffs claim that Defendants have "failed to inform Plaintiffs of the standards and process by which Plaintiffs' claims would be judged" in violation of their due process rights and 8 C.F.R. §§ 235.3(b)(4), 208.30(d)(2).  2d Am. Compl. ¶ 147.  In addition, Plaintiffs allege that Defendants "schedule interviews on unnecessarily truncated scheduling without sufficient advance written notice" in violation of 8 U.S.C. § 1225(b)(1)(B)(iv), 8 C.F.R. § 208.30(d)(4),

and the First Amendment (among other cited authorities).[4]  2d Am. Compl. ¶ 154.  Plaintiffs do

not offer any further explanation of this alleged policy, except to conclude that it allegedly

negatively impacts Plaintiffs' access to counsel.  *Id.*  Defendants continue to deny the existence

of any such policies, as alleged.  *See* Caudill-Mirillo Decl. ¶¶ 23, 29.

Defendants note, however, that these alleged policies may relate to policies that *do* exist

and are currently at issue in *L.M.-M. v. Cuccinelli*, Civil A. No. 19-2676-RDM (D.D.C.,

Complaint filed on Sept. 6, 2019).  That lawsuit involves a challenge to a July 2, 2019, USCIS

guidance memorandum entitled "Reduction of Credible Fear Consultation Period."  *See* Caudill-

Mirillo Decl., Ex. 1.  The Memorandum observed that asylum seekers have a statutory and

regulatory right to consult with persons of their choosing prior to a credible-fear interview, and

reduced the minimum consultation period from 48 hours to "one full calendar day from the date

of arrival at a detention facility."[5]  *See id.*  In addition, USCIS changed the process that applies to

requests to postpone a credible-fear interview.  *See id.*, Ex. 2.  Before the issuance of the new

directive, USCIS considered continuance requests on a case-by-case basis so long as they did not

unreasonably delay the credible-fear process.  Under the new directive, USCIS "require[s]

extraordinary circumstances warranting approval of a request to reschedule so that USCIS can

ensure, consistent with the statute, that the consultation period does not unreasonably delay the

overall process."  *Id.*

Here, USCIS does not dispute that the agency reduced of the minimum timeframe for

consultation prior to a credible fear interview from 48 hours to one full calendar day.  *See*

---

[4] Plaintiffs also cite 5 U.S.C. § 555(b); 8 C.F.R. § 292.5(b).

[5] Defendants note that neither the INA nor any implementing regulations require or provide for
any timeframe with respect to these consultations.

Caudill-Mirillo Decl. ¶ 23.  However, the implementation date of that policy was July 8, 2019.

*Id.*  Accordingly, in order to challenge these policies, Plaintiffs must have filed their lawsuit on

or before September 6, 2019.  Because this action was not filed until September 16, 2019 (*see*

ECF No. 1), Plaintiffs—to the extent they would actually seek to challenge this action here—are

barred by the 60-day jurisdictional limitation in section 1252.[6]

   b.  *Proceed Without Required Staffing, Training, or Guidance (2d Am. Compl. ¶ 148)*

Plaintiffs allege that Defendants have implemented "a new policy of proceeding with fear

interviews absent necessary staffing, training, and direction for those conducting them."  2d Am.

Compl. ¶ 148.  Plaintiffs allege that Defendants "have conspired to limit the information they put

forth in writing, impeding necessary training opportunities and direction for front-line

adjudicators."  *Id.*  Plaintiffs further allege that credible-fear interviewers did not receive

adequate training and that officers from CBP have been used to conduct credible-fear interviews.

*Id.*  However, no such written policy exists as to "proceeding with fear interviews absent

necessary staffing, training, and direction for those conducting them."  *See* Caudill-Mirillo Decl.

¶ 24.

However, Defendants have again identified a potential action based on Plaintiffs'

allegations in the second amended complaint.  Indeed, as Ms. Caudill-Mirillo noted, some

Border Patrol Agents from CBP, who have been appropriately trained by USCIS, are on

assignment to USCIS to conduct credible fear interviews.  *See* Caudill-Mirillo Decl. ¶ 24.

Specifically, on July 11, 2019, USCIS entered into a Memorandum of Agreement ("MOA") with

CBP regarding assigning some CBP agents to USCIS, where they would receive training and

---

[6] Moreover, as the government has demonstrated in the *L.M.-M.* action, USCIS's policy is fully consistent with the requirements of the Administrative Procedure Act ("APA").  *See L.M.-M. v. Cuccinelli*, Civil A. No. 19-2676-RDM (D.D.C., Dkt. Entry 17 at 31 (Defendants' Memorandum in Opp'n to Pls.' Mot for Prelim. Inj.))

subsequently conduct credible fear interviews under the supervision of a supervisory asylum officer. *Id.* ¶ 25. According to Ms. Caudill-Mirillo, USCIS has been utilizing many resources to assist with the ongoing surge of cases arising out of the southwest border, while minimizing the adverse impact as much as possible this caseload has on the affirmative asylum backlog. *See* Caudill-Mirillo Decl. ¶ 18. In addition to using re-trained and detailed former asylum officers and refugee officers who are working in other parts of USCIS to assist with the credible fear caseload, USCIS has been using CBP agents on assignment to USCIS who meet the statutory definition of an asylum officer under 8 U.S.C. § 1225(b)(1)(E). *See id.* ¶ 19.

As explained in her supplemental declaration, Ms. Caudill-Mirillo notes that the implementation of the MOA actually began prior to the date it was signed. Supp. Caudill-Mirillo Decl. ¶ 5. Indeed, Border Patrol agents have been conducting credible fear interviews as far back as June 5, 2019. *Id.* Moreover, while the MOA was initially signed on July 11, 2019, Border Patrol agents resumed conducting interviews on July 15, 2019. *Id.* Therefore, in order to challenge the use of Border Patrol agents under the MOA or otherwise. Even conservatively assuming that the date by which Defendants first *resumed* the use of Border Patrol agents pursuant to the MOA was the relevant trigger for the 60-day bar, Plaintiffs must have filed their challenge by September 13, 2019. Because Plaintiffs waited until September 16, 2019, to file their lawsuit, their claims regarding CBP agents on assignment to USCIS conducting asylum officers' duties are time-barred.

### c. *Mandatory Concurrence Review by the Fraud Detection Unit (2d Am. Compl. ¶ 157)*

Plaintiffs allege that Defendants now "require any cases that have received a positive fear finding by the interviewer, and positive fear concurrence by the supervisory asylum officer, to then be further reviewed by USCIS's Fraud Detection and National Security Directorate." 2d

Am. Compl. ¶ 157.  Plaintiffs allege that "[u]pon information and belief," this policy has resulted in the "mandatory rescission of the overwhelming majority of cases sent for review[.]"  *Id*.

This "challenged action" refers to a specific program at the South Texas Family Residential Center whereby cases that were interviewed and initially screened in as positive fear determinations were reviewed by Fraud Detection and National Security ("FDNS") officers.  *See* Caudill-Mirillo Decl. ¶ 32.  This policy was implemented from August 30, 2019, to November 7, 2019.  *Id*.  Specifically, after completion of post-interview FDNS review, the asylum officer would consider the FDNS officer's review and then proceed with making the fear determination. *Id*.  Ultimately, however, the final decision on the outcome rested with the asylum officer and/or the asylum officer's chain of command.  *Id*.  Since November 7, 2019, FDNS generally only conducts review of South Texas Family Residential Center cases prior to an interview by an asylum officer.  *Id*.

According to Ms. Caudill-Mirillo, the FDNS review was first implemented on August 30, 2019.  Therefore, Plaintiffs must have brought their challenge before October 29, 2019, in order to bring a viable challenge to the FDNS review.  Plaintiffs filed their complaint and first amended complaint in this action on September 16, 2019, and October 17, 2019, respectively. However, Plaintiffs did not file their Motion for Leave to File a Second Amended Complaint, *see* ECF No. 46, and Motion to Add Plaintiffs, *see* ECF No. 47, until December 5, 2019.[7]  The Court granted these motions in an Order dated December 16, 2019.  Therefore, none of the Plaintiffs added in the second amended complaint have timely challenged this policy, which was implemented from August 30, 2019, to November 7, 2019, with written guidance disseminated

---

[7] In an apparent calculation error, Defendants incorrectly argued that the Plaintiffs added in the first amended complaint were time barred.  *See* Defs.' Supp. TRO Mem. at 20.

on September 5, 2019. *Id*. ¶ 16. This timeline is of no significance, however, because (as discussed below) only a subset of the Plaintiffs that have presented a timely challenge were actually subject to the FDNS review. And none of the Plaintiffs added in the second amended complaint were subject to FDNS review.

### III.    Only A Subset of Plaintiffs Have Standing to Challenge the Single Remaining Claim Regarding USCIS's Fraud Review.

Setting aside any alleged regulations, written policy directives, written policy guidelines, or written procedures that do not exist, are otherwise not at issue, or are time-barred, the sole remaining challenge in this action is the fraud review conducted by USCIS's Fraud Detection and National Security ("FDNS") officers regarding credible fear determinations. As noted by Ms. Caudill-Mirillo, pursuant to this policy asylum officer incorporates input from FDNS officers prior to a making final credible fear screening determination. Caudill-Mirillo Decl. ¶ 32. Although Plaintiffs may properly challenge this policy under section 1252(e), only a subset of Plaintiffs have standing to do so.

To establish Article III standing, Plaintiffs must demonstrate an (1) "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The key word is 'likely,' and thus, 'the prospect of obtaining relief from the injury as a result of a favorable ruling' cannot be 'too speculative.'" *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Thus, if "the challenged conduct is at best an indirect or contributing cause of the plaintiff's injury," "the plaintiff faces an uphill climb in pleading and proving redressability." *West v. Lynch*, 845 F.3d 1228, 1236 (D.C. Cir. 2017).

After consulting with USCIS's Fraud Detection and National Security Branch, Ms. Caudill-Mirillo has determined that, of the named plaintiffs, FDNS review was involved in the credible fear screening for only 9 family units, constituting 20 individual Plaintiffs[8] in this action (specifically, N.C.A., and minor child, M.P.C.; I.A.D., and minor child C.L.A.; S.A.C., and minor child V.H.A.; Y.E.S. and minor child M.I.E.; A.C.B. and minor child A.C.B.; D.G.A., and minor children E.P.G. and M.P.G., C.P.G. and minor child M.B.P., W.P.R. and minor children H.C.P. and J.C.P., M.C.D. and minor child E.E.C). *Id.* Although Defendants reserve their right to raise any relevant defenses regarding the fraud review that pertained to these 26 plaintiffs, their claim does not fall outside of section 1252's jurisdiction. However, the remaining Plaintiffs, who did not have their credible fear determination subject to any FDNS fraud review, have failed to allege any injury-in-fact with respect to this challenged action. Therefore, they lack standing to challenge it and should be dismissed from this action. *Spokeo*, 136 S. Ct. at 1547.

## CONCLUSION

For the reasons discussed above, Defendants' respectfully request the Court to dismiss Plaintiffs' second amended complaint, in part, pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, the Court should dismiss all claims related to the non-existent or time-barred challenged actions, except for the sole claim related to the 26 plaintiffs whose credible fear determinations were subject to USCIS's fraud review.

Dated February 14, 2020          Respectfully submitted,

                                 TIMOTHY J. SHEA, D.C. Bar. No. 437437

---

[8] Although Ms. Caudill-Mirillo's supplemental declaration describes a larger number of Plaintiffs subject to FDNS's fraud review, six of these Plaintiffs were previously dismissed from this action (*i.e.*, former plaintiffs D.V.R, A.V.R., I.S.R., and J.A.S (dismissed on October 3, 2019, *see* ECF No. 25); and D.S.P. and V.V.P. (dismissed on December 2, 2019, *see* ECF No. 44).

United States Attorney

DANIEL VAN HORN, D.C. Bar # 924092
Chief, Civil Division

/s/ *Christopher Hair*
CHRISTOPHER HAIR, PA Bar # 306656
Assistant United States Attorney
Civil Division
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Telephone:  (202) 252-2541
Email:  christopher.hair@usdoj.gov

*Counsel for Defendants*